ORIGINAL

David E. Ross (dross@kasowitz.com)
Brian S. Kaplan (bkaplan@kasowitz.com)
Daniel Turinsky (dturinsky@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

Attorneys for Plaintiff
MMC Energy, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
MMC ENERGY, INC.,                                            :    08 Civ 4353 (DAB)
                              Plaintiff,                      :
                                                             :    AFFIDAVIT OF BRIAN S.
              vs.                                            :    KAPLAN IN SUPPORT OF
                                                             :    DEFAULT JUDGMENT
KARL W. MILLER,                                              :
                              Defendant.                      :
                                                             :
-------------------------------------------------------------X

STATE OF NEW YORK          )
                           )    : ss
COUNTY OF NEW YORK         )

          Brian S. Kaplan, being duly sworn, deposes and says:

          1.       I am a member of the Bar of this Court and am a member of the firm

Kasowitz, Benson, Torres & Friedman LLP, counsel for plaintiff MMC Energy, Inc. in the

above-captioned matter, and am fully familiar with the facts and circumstances set forth

herein.

          2.       I submit this affidavit pursuant to Rule 55.1 and 55.2(a) of the Civil Rules for

the Southern District of New York, in support of plaintiff's application for the entry of a

default judgment against defendant Karl W. Miller.

          3.       This is an action to recover actual and compensatory damages in an amount of

not less than $1,121,762 on each of the first through third causes of action, and punitive

damages in an amount of not less than $3,000,000 on each of the second and third causes of

action, plus costs, attorneys' fees, and pre-judgment and post-judgment interests, no part of

which has been paid.

4.      This Court has jurisdiction under 28 U.S.C. § 1332(a)(2) inasmuch as the

matter in controversy is between citizens of different states and exceeds the sum or value of

$75,000.

5.      This action was commenced on May 8, 2008 by the filing of the Summons

and Complaint. (A true and correct copy of the Summons and Complaint is attached hereto

as Exhibit A). A copy of the Summons and Complaint was served on the defendant on June

4, 2008 by Auria Tellechea of Cape Fear Investigative Services, by leaving a copy of the

Summons and Complaint at the Defendant's dwelling with Joe Hearne, a co-resident of the

Defendant and a person of suitable age and discretion. A courtesy copy of the Summons and

Complaint was also sent to Defendant's counsel, Thomas J. Hall of Chadbourne & Parke

LLP, by hand delivery and email on May 8, 2008, and another courtesy copy was mailed by

first class mail to Defendant on June 16, 2008. Proof of service was filed on June 23, 2008.

(A true and correct copy of the Affidavit of Service is attached hereto as Exhibit B).

6.      More than 20 days have passed since service was effected on defendant Karl

W. Miller. The defendant has not answered the Complaint, filed motions in connection with

the Complaint or otherwise appeared in this action, and the time for the defendant to answer

the Complaint has expired.

7.      The defendant is not a minor, mentally incompetent, or in the military service

of the United States.

WHEREFORE, plaintiff requests the entry of judgment on liability by default against

Karl W. Miller and the setting of a hearing to determine the amount of damages.

_____
Brian S. Kaplan

Sworn to before me this
3rd day of July, 2008.

_____
Notary Public

MARY A. O'CONNELL
Notary Public, State of New York
No. 01OC6023427
Qualified in Queens County
Commission Expires April 19, 20 11

# EXHIBIT A

AO 440 (Rev. 8/01) Summons in a Civil Action

JUDGE BATTS

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

MMC ENERGY, INC.
Plaintiff

**SUMMONS IN A CIVIL ACTION**

V.
KARL W. MILLER
Defendant

CASE NUMBER:

**08 CIV 4353**

TO: (Name and address of Defendant)

Karl W. Miller
411 Bradley Creek Point Road
Wilmington, North Carolina 28403

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

MAY 0 8 2008

| CLERK | | DATE |
|---|---|---|
| (By) DEPUTY CLERK | | |

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

      I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                Date                     *Signature of Server*

                                      _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

David E. Ross (dross@kasowitz.com)
Brian S. Kaplan (bkaplan@kasowitz.com)
Daniel Turinsky (dturinsky@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

Attorneys for Plaintiff
MMC Energy, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

MMC ENERGY, INC.,                            :      Civil Action No.: 08 Civ. _____
                              Plaintiff,     :
                                             :
          vs.                                :      **COMPLAINT**
                                             :
KARL W. MILLER,                              :      **Jury Trial Demanded**
                              Defendant.     :
                                             :
--------------------------------------------------------------X

        Plaintiff MMC Energy, Inc. ("MMC" or the "Company"), by and through its attorneys,

Kasowitz, Benson, Torres & Friedman LLP, as and for its Complaint against Defendant Karl W.

Miller ("Miller"), alleges as follows:

<u>**Preliminary Statement**</u>

        1.      This action arises from Miller's fraud, breach of contract and other intentional and

malicious misconduct committed following the termination of his employment as Chief

Executive Officer of MMC, an energy company which acquires and manages electric generation

and infrastructure-related assets.  Among other things, Miller fraudulently induced MMC to pay

him $1,121,762 in cash severance benefits in addition to payments for continued medical

coverage for 18 months.  Then, as he had planned all along, Miller flagrantly disparaged the

business, Board of Directors and management of MMC, and interfered with, impaired and

1

disrupted MMC's normal operations -- and continues to do so -- all in breach of his Separation Agreement with MMC dated as of February 7, 2008 (the "Separation Agreement").

2.    Miller was removed from his position as MMC's Chief Executive Officer by its Board of Directors (the "MMC Board") in December 2007 because of numerous deficiencies in his performance as Chief Executive Officer, which demonstrated that Miller was no longer suitable for his position.  Miller could no longer successfully lead the Company because, among other things, Miller would not and could not effectively implement the business strategies that he and the MMC Board had agreed were necessary for the Company's continued growth and success and he demonstrated a pattern of conduct that threatened to damage MMC's standing with regulators and others.

3.    Though the MMC Board had more than sufficient grounds to terminate Miller for "cause" under his Employment Agreement, the MMC Board chose not to do so to avoid the cost of litigation and significant disruption to the business.  Instead, MMC entered into the Separation Agreement, which prohibited Miller from, among other things, interfering with MMC's business operations or disparaging the Company, its Board of Directors or its management.

4.    In consideration for his obligations and promises under the Separation Agreement -- which it is now clear Miller never intended to honor -- Miller received severance pay and benefits in excess of $1.1 million.

5.    Within days after signing the Separation Agreement, and just after pocketing his severance pay -- which Miller demanded be paid in a lump sum -- Miller willfully and brazenly breached the Separation Agreement, through a planned campaign of public and private statements disparaging the Company's performance, disparaging the MMC Board and Company management, and disparaging and interfering with the Company's operations.

6.      Miller's campaign of disparagement and interference is ongoing and includes unsolicited communications and press releases widely circulated by Miller to the Company's shareholders, key investors, advisors, lenders and/or vendors.  According to Miller, such communications are an attempt to replace MMC's existing Board of Directors with a new slate of directors and an executive team that is, in Miller's words, "clearly superior to the existing MMC board and management."  In furtherance of this goal, on April 16, 2008, Miller filed with the Securities and Exchange Commission a preliminary proxy statement on Schedule 14A (the "Proxy Statement"), which is replete with disparaging statements concerning MMC's business, Board of Directors and management.

7.      Prior to the filing of the Proxy Statement, Miller attempted to conduct his campaign in part through an entity called Energy Holdings Limited LLC ("EHL").

8.      In a Joint Filing Agreement attached as an exhibit to Form 13D, which was filed by EHL and Miller with the Securities and Exchange Commission in connection with their solicitation of proxies from the Company's shareholders, EHL appointed "Miller as his/its true and lawful attorney-in-fact and agent. . . ."  EHL and Miller are represented by the same attorney in connection with their ongoing proxy solicitation and Miller was also represented by this same attorney in negotiating the terms of his Separation Agreement.

9.      In connection with Miller's proxy solicitation, Miller, acting through EHL, issued press releases and authored letters in which EHL details its strategy for operating MMC if Miller were to succeed in replacing its existing board of directors.  According to its public filings, EHL's managing member and by far its largest equity holder, is a radiologist who makes no claims in Miller's recently filed proxy statement to any relevant energy industry experience. Two of EHL's other principal members, both of whom (together with the radiologist) are

3

proposed as nominees to MMC's Board of Directors in Miller's proxy statement, are real estate developers, one of whom is Miller's father-in-law.

10.    Miller's continuing breaches have caused and continue to cause severe damage to MMC. Moreover, by fraudulently inducing MMC to enter into the Separation Agreement, while intending all along to seek to bring down MMC's Board and management and disrupt its business, Miller extracted for himself from the Company's coffers more than $1.1 million.

11.    Accordingly, MMC is entitled to an award requiring Miller to return the severance payments he fraudulently extracted from MMC, and to compensate MMC for the damage caused by his unlawful, malicious and obnoxious actions. MMC is also entitled to recover punitive damages from Miller by reason of his wrongdoing.

### Parties

12.    MMC is a Delaware corporation, with its principal executive offices located in New York City.

13.    Miller is an individual residing, upon information and belief, at 411 Bradley Creek Point Road, Wilmington, North Carolina 28403. From in or about May 2006 until December 2007, Miller served as MMC's Chief Executive Officer.

### Jurisdiction & Venue

14.    This Court has jurisdiction under 28 U.S.C. § 1332(a)(2) inasmuch as the matter in controversy is between citizens of different states and exceeds the sum or value of $75,000.

15.    Venue lies in this district pursuant to 28 U.S.C. § 1391(a)(2) inasmuch as a substantial part of the events or omissions giving rise to the claims herein occurred in this district. Venue is also proper under 28 U.S.C. § 1391(a)(3).

4

## Facts

### I.    Miller's Obligations Not to Disparage, Interfere, Impair or Disrupt MMC

16.    Paragraph 7 of the Separation Agreement states:

You [Miller] agree not to make, or knowingly cause to be made, any statement or communication, written or oral, with the intention of (a) disparaging or otherwise impugning the business or management of the Company or any of its subsidiaries or affiliates, or any of their respective officers, directors, agents, counsel, representatives or employees, or (b) interfering with, impairing or disrupting the normal operations of the Company or any of its subsidiaries or affiliates.

### II.    Miller's Conduct Following Execution of the Separation Agreement

17.    As described above, contrary to the express promises and representations made to MMC upon his departure, Miller, acting through EHL, disparaged MMC's business and reputation.  According to its public filings, EHL's managing member and by far its largest equity holder, is a radiologist who makes no claims in Miller's filed proxy statement to any relevant energy industry experience.  Two of EHL's other principal members, both of whom (together with the radiologist) are proposed as nominees to MMC's Board of Directors in Miller's Proxy Statement, are real estate developers, one of whom is Miller's father-in-law.

18.    Following his execution of the Separation Agreement, Miller began his campaign of impuging MMC's existing management and the MMC Board, and interfering with the business and corporate governance of MMC, as well as its relationships with shareholders, key investors, advisors, lenders and/or vendors.

19.    On or about March 7, 2008, Miller, acting through EHL, wrote to the MMC Board, indicating its dissatisfaction with the current directors and business strategy of the Company -- a strategy that Miller himself had a strong hand in developing -- and EHL's intent to solicit proxies to elect nominees for directors.  Among other things, EHL purported to indicate concern that "cash reserves are being depleted" at the Company.

5

20.    On or about March 18, 2008, Miller, acting through EHL, disseminated a disparaging press release to the public.  Among other things, the release accused the current MMC Board members of having a failed strategy, implied that they needed to be "replace[d]" because they lacked requisite qualifications and experience, and impugned the MMC Board as not being "focused," "driven," "energetic," "dynamic," "execution-oriented" or "positioned to manage a micro-cap growth company."  The release also disparaged the Company's allegedly "inefficient use of MMC's cash and the direct and hidden costs of separating management [which] only exacerbates the risk to shareholders," and purported to express "concern[] about the Company's cash burn rate for general and administrative purposes."  These statements and many others disparaging MMC's Board and its management are then repeated in the Proxy Statement filed by Miller.

21.    On or about March 20, 2008, Miller, acting through EHL, disseminated another disparaging press release to the public.  Among other things, the release impugned the existing MMC Board as lacking "execution capabilities and experience."  The release also sought to induce market hysteria concerning MMC:  "MMC's share price has hit an all time low of $2.06 today and, combined with the lack of liquidity, creates what EHL considers to be concern among investors about the status of MMC."  And again, EHL continued to malign MMC's management and leadership, indicating that the "remaining cash from the proceeds of the June 2007 IPO" needed to be "protect[ed]" as if it were somehow at risk or in jeopardy, and that MMC had diverted such cash "for the execution of an [unspecified] ill-advised transaction that is not in the best interest of stockholders."  The press release also impugned the existing MMC Board and management as not being "energetic," "dynamic" or "execution oriented."  Again, these

6

arguments as to the unsuitability of MMC's existing Board and its management are then repeated in the Proxy Statement filed by Miller.

22.    On or about March 26, 2008, Miller, acting through EHL, disseminated another disparaging press release to the public.  Among other things, the release claimed that MMC's purported "lack of liquidity will lead investors to question MMC's viability and exacerbate the lack of confidence of shareholders and the investment community in general. . . ."

23.    On or about March 27, 2008, Miller, acting through EHL, disseminated another disparaging press release to the public.  In this press release, EHL expressed its purported "disappointment and dismay" at MMC's "announcement of a stock repurchase plan. . . ."  Among other things, the release maliciously asserted that the MMC Board "is at a loss of what it should do" and implied that the MMC Board did not "understand the realities" of managing MMC. Again, the same statements then are expressed in the Proxy Statement filed by Miller.

24.    On or about April 1, 2008, Miller, acting through EHL, disseminated yet another disparaging press release to the public.  In this release, EHL claimed that it had "serious concerns about [MMC's] viability as a going concern," that "MMC is in critical condition and there has been no increase in shareholder value," and "MMC's share price has deteriorated 80 percent." By questioning MMC's viability as a going concern, Miller clearly intended to damage MMC's relationships with its vendors and business partners.  Indeed, upon information and belief, Miller e-mailed this and other press releases directly to MMC's vendors and caused the releases to be distributed to various publications throughout the country.  Again, the same statements then are expressed in the Proxy Statement filed by Miller.

25.    On or about April 4, 2008, Miller, acting through EHL, wrote to the MMC Board, claiming that "[t]he MMC Board, in our opinion, has not demonstrated a business strategy in the

best interests of its shareholders." In this letter, EHL reiterated its desire to interfere with and further impugn the actions of the MMC Board. In addition, EHL issued another press release on April 4th attaching a copy of the April 4, 2008 letter to the MMC Board.

26.    On or about April 16, 2008, EHL and Miller filed the Proxy Statement with the Securities and Exchange Commission, which is replete with disparaging statements concerning MMC's business, Board of Directors and management.

27.    The letter to stockholders forming a part of the Proxy Statement is signed by Miller and the Proxy Statement itself makes clear that it is filed by Karl Miller. "EHL, G. William Eason and Karl W. Miller, MMC's founder, have aligned to file this proxy statement due to their passionate belief that MMC needs an immediate leadership change - both at the board and management levels - to provide MMC the ability to grow and prosper." Once again, Miller makes disparaging references concerning MMC, its Board of Directors and its management -- including but not limited to the need to "reestablish MMC as a viable company."

### First Cause of Action
### (Breach of Contract)

28.    MMC repeats and realleges the allegations of paragraphs 1 through 27 as if fully set forth herein.

29.    The Separation Agreement constituted a valid, binding and enforceable contract.

30.    Miller, acting through EHL and directly in his filed Proxy Statement, materially breached Paragraphs 7(a) and 7(b) of the Separation Agreement by making disparaging comments about MMC, the Company's business and management and impugning the MMC Board, and by interfering with, impairing and disrupting the normal operations of MMC, as described above.

31.    As a result of Miller's breaches, MMC has sustained actual and compensatory damages in an amount to be determined at trial, but not less than $1,121,762 in addition to costs incurred by the Company for continued medical coverage for Miller.

### Second Cause of Action
### (Fraud)

32.    MMC repeats and realleges the allegations of paragraphs 1 through 27 as if fully set forth herein.

33.    Miller made material misrepresentations of fact to MMC at the time he and MMC entered into the Separation Agreement, including, among others, the misrepresentation that he intended to honor his obligations under the agreement. At the time he made these representations, Miller knew they were false.

34.    Miller fraudulently concealed material facts from MMC at the time he and MMC entered into the Separation Agreement, including, among others, the facts that he did not intend to honor his obligations under the Separation Agreement, that he had commenced or was about to commence a campaign of disparaging MMC, MMC's management and the MMC Board and that he had intended and planned to interfere with the Company's management and governance by mounting a proxy fight against MMC within weeks of signing the Separation Agreement.

35.    Miller made such material misrepresentations and concealed such material facts, with the express intention of inducing MMC to enter into the Separation Agreement and pay him a lump sum severance in excess of $1.1 million. Miller had a duty to disclose such facts to MMC because, among other things, he was a member of the Board of Directors of MMC through February 14, 2008 and a former officer with continuing duties to the Company.

36.    In entering into the Separation Agreement and paying Miller the severance payment, MMC reasonably relied on Miller's misrepresentations and concealment of material facts.

37.    As a result of Miller's wrongful conduct, MMC has been damaged in an amount not less than $1,121,762, in addition to costs incurred by the Company for continued medical coverage for Miller, and MMC is entitled to recover, among other things, the entirety of these severance payments.

38.    Miller's conduct, as described above, was undertaken knowingly, willfully and in conscious disregard of MMC's rights. MMC is entitled to an award of punitive damages in an amount to be determined at trial of not less than $3 million.

### Third Cause of Action
### (Tortious Interference With Advantageous Business Relations)

39.    MMC repeats and realleges the allegations of paragraphs 1 through 27 as if fully set forth herein.

40.    MMC has developed and maintains advantageous business relations with its shareholders, key investors, advisors, lenders and/or vendors.

41.    Miller knew or should have known about the advantageous business relations of MMC with MMC's shareholders, key investors, advisors, lenders and/or vendors.

42.    Miller intentionally, maliciously and improperly interfered with MMC's relationship with its shareholders, key investors, advisors, lenders and/or vendors by, among other things, issuing false, defamatory and/or disparaging press releases questioning the solvency of MMC and maligning the competence, experience and qualifications of MMC's management and the MMC Board, for the benefit of himself and EHL.

43.    There was no privilege or justification for Miller's conduct.

44.    As a result of Miller's wrongdoing, MMC has been damaged in an amount to be determined at trial of not less than $1 million.

45.    Miller's conduct, as described above, was undertaken knowingly, willfully and in conscious disregard of MMC's rights.   MMC is entitiled to an award of punitive damages in an amount to be determined at trial of not less than $3 million.

### Demand for Trial By Jury

46.    MMC hereby demands a trial by jury.

### Prayer For Relief

**WHEREFORE**, MMC respectfully requests an award against Miller granting MMC:

A)    On each of the First through Third Causes of Action, actual and compensatory damages in an amount to be determined at trial of not less than the severance payment, $1,121,762, plus costs incurred by the Company for continued medical coverage for Miller;

B)    On each of the Second and Third Causes of Action, punitive damages in an amount to be determined at trial of not less than $3,000,000;

C)    All costs incurred by MMC with respect to this proceeding;

D)    MMC's attorneys' fees and expenses;

E)    Pre-judgment and post-judgment interest at the highest rate(s) provided by law; and

11

F)    Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 8, 2008

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By _____

David E. Ross
dross@kasowitz.com
Brian S. Kaplan
bkaplan@kasowitz.com
Daniel Turinsky
dturinsky@kasowitz.com
1633 Broadway
New York, NY 10019
(212) 506-1700

Attorneys for Plaintiff MMC Energy, Inc.

12

# EXHIBIT B

KASOWITZ BENSON TORRES & FRIEDMAN LLP

FILE# 07808-002

U.S. SOUTHERN DISTRICT COURT, COUNTY OF NEW YORK

# AFFIDAVIT OF SERVICE

**State of New York**       **County of New York**       **Case Number 08CIV4353**

Plaintiff: MMC Energy, Inc.
VS.
Defendant: Karl W. Miller

Name and Address of Person/Entity to be served:

Karl Miller
411 Bradley Creek Point Rd.
Wilmington, NC 28403

Received by Cape Fear Investigative Services on June 3, 2008, I Auria Tellechea, being duly sworn depose and say that on the 4 day of June, 2008, I executed service by delivering a true copy of the attached Summons and Complaint,in accordance with the states statutes in the manner marked below:          CIVIL COVER SHEET, RULE 7.1 STATEMENT, CONSENT & JUDGES RULES

( ) **INDIVIDUAL SERVICE:** Served the person named above at_____.
(X) **SUBSTITUTE SERVICE:** By serving Joe Hearne, a co-resident of the given residence, a person of suitable age and discretion at the dwelling, house or usual place of abode of the above-named person.
( ) **POSTED SERVICE:** After attempting service on ____/____ and on ____/____, to a conspicuous place on the property described herein: _____.
( ) **NON-SERVICE:** For the reason detailed in the comments below:

**COMMENTS:** Joe Hearne informed me that the defendant was not home and didn't know when Mr. Miller would be home, as he traveled frequently.

I certify that I have no interest in the above action, am of legal age, and have proper authority in the jurisdiction in which this service was made.

State of North Carolina
County of NEW HANOVER

[✓] I have personal knowledge of the identity of the principal;
                    or

[ ] I have seen satisfactory evidence of the principal's identity by a current state or federal identification bearing the photographic image of the individual's face and either the signature or a physical description of the individual.

This the 10th day of June , 2008.

Notary Public
My commission expires:
8/22/12

**Cape Fear Investigative Services**
**401 Chestnut Street, Suite D**
**Wilmington, NC 28401**
**(910) 762-4374**

REF# 3KBTF131556

BETH ANN MEYER
Print Notary's Name

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE 06/04/08 |
| NAME OF SERVER *(PRINT)* AURIA TELLECHEA | TITLE PROCESS SERVER |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☒ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: JOE HEARNE

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on 06/04/08
　　　　　　　Date

*Signature of Server*

401 CHESTNUT ST. SUITE D.
WILMINGTON, NC 28401

*Address of Server*

REF# 3KBTF131556

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

ATTORNEY: KASOWITZ BENSON TORRES & FREIDMAN LLP

INDEX #: 08CIV4353
FILE #: 07808-002

U.S. SOTUHERN DIST. COURT          NEW YORK   COUNTY

MMC ENERGY, INC.

PLAINTIFF

AGAINST

KARL W. MILLER

DEFENDANT .

STATE OF NEW YORK, COUNTY OF NEW YORK

JOEL GOLUB         being duly swo
I am over 18 years of age, not a party
That on the 16TH day of JUNE, 2008
United States at Church Street Station
SUMMONS AND COMPLAINT, CI
CONSENT AND JUDGES RULES

to KARL W. MILLER
the DEFENDANT at 411 BRADLEY
WILMINGTOI

Copy mailed by 1st class mail marked
thereof, by return address or otherwise
action against the person to be served.
AS EVIDENCE BY CERTIFICATE OF MAILING HEREWITH ATTACHED.

**U.S. POSTAL SERVICE**
MAY BE USED FOR DOMESTIC ANI
PROVIDE F

Receiv    00    /AJS
          SUITE 1802
          225 BROADWAY
          NEW YORK NY 10007

One piece of ordinary mail addressed to
          00    /KBTF
          KARL W.MILLER
          411 BRADLEY CREEK POINT RD
          WILIMINGTON, NC 28403

PS Form 3817, January 2001

049J82040360
$ 0 1.10⁰
06/16/2008
Mailed From 10007
POSTAGE

Sworn to before me this
16TH day of JUNE, 2008tm

JOEL GOLUB  701893
Ref No: 3KBTF131556
Aetna Central Judicial Services
225 Broadway, Suite 1802
New York, NY 10007

KENNETH WISSNER
Notary Public, State of New York
No. 31-4774100
Qualified in New York County
Commission Expires March 30 2009
2010

ATTORNEY: KASOWITZ BENSON TORRES & FREIDMAN LLP

INDEX #: 08CIV4353
FILE #: 07808-002

U.S. SOTUHERN DIST. COURT                    NEW YORK   COUNTY

MMC ENERGY, INC.
                                        PLAINTIFF

            AGAINST

KARL W. MILLER
                                        DEFENDANT

STATE OF NEW YORK, COUNTY OF NEW YORK

JOEL GOLUB          being duly sworn, deposes and says:
I am over 18 years of age, not a party to this action and reside in the State of New York.
That on the 16TH day of JUNE, 2008 at a regular postal depository maintained by the
United States at Church Street Station, New York, New York, deponent mailed a copy of
SUMMONS AND COMPLAINT, CIVIL COVER SHEET, RULE 7.1 STATEMENT
CONSENT AND JUDGES RULES

to KARL W. MILLER
the DEFENDANT at 411 BRADLEY CREEK POINT RD
                WILMINGTON, NC 28403

Copy mailed by 1st class mail marked personal & confidential not indicating on the outside
thereof, by return address or otherwise that said notice is from an attorney or concerns an
action against the person to be served.
AS EVIDENCE BY CERTIFICATE OF MAILING HEREWITH ATTACHED.

Sworn to before me this
16TH  day of JUNE, 2008tm

JOEL GOLUB  701893
Ref No: 3KBTF131556
Aetna Central Judicial Services
225 Broadway, Suite 1802
New York, NY 10007

KENNETH WIGSNER
Notary Public, State of New York
No.
Qualified in New York County
Commission Expires March 30  2010