UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MMC ENERGY, INC.,

                                        Plaintiff,                    08 Civ. No. 4353 (DAB)

                    -against-

KARL W. MILLER,

                                        Defendant.

---

## DECLARATION OF THOMAS J. HALL IN
## SUPPORT OF DEFENDANT'S MOTION TO DISMISS

THOMAS J. HALL, hereby declares as follows:

1.    I am a member of the law firm of Chadbourne & Parke LLP, attorneys for defendant Karl W. Miller.  I make this declaration in support of the defendant's motion to dismiss.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Separation Agreement dated February 7, 2008 referenced in paragraph 1 of the Complaint.

3.    Attached hereto as Exhibit 2 is a true and correct copy of a press release dated March 18, 2008 referenced at paragraph 20 of the Complaint.

4.    Attached hereto as Exhibit 3 are true and correct copies of press releases dated March 20, 2008, March 26, 2008, March 27, 2008, April 1, 2008, and April 4, 2008 referenced at paragraphs 21-25 of the Complaint.

5.     Attached hereto as Exhibit 4 is a true and correct copy of a preliminary proxy statement filed with the Securities and Exchange Commission (the "SEC") on April 16, 2008 referenced in paragraph 6 of the Complaint.

6.     Attached hereto as Exhibit 5 is a true and correct copy of the final version of the Proxy Statement dated May 8, 2008, issued to MMC's Energy Inc.'s shareholders.

I declare that the foregoing is true and correct.

Executed on July 23, 2008.

_____
Thomas J. Hall (TH 3398)

EXHIBIT 1

MMC Energy, Inc.
26 Broadway, Suite 960
New York, New York 10004

February 7, 2008

Karl W. Miller
411 Bradley Creek Point Road
Wilmington, North Carolina 28403

Re:    Separation Agreement

Dear Karl:

This will confirm the agreement (the "Agreement") that has been reached with you in connection with your separation of employment from MMC Energy, Inc. (the "Company").

1.  Your last day of employment with the Company was December 18, 2007. You and the Company agree that your duties as Chief Executive Officer ceased upon the Board of Directors of the Company removing you from such position on December 9, 2007, and that after December 18, 2007, you no longer served as an officer of the Company, or any of its subsidiaries, divisions, joint ventures or other affiliates. Moreover, you hereby confirm your resignations from any and all of your positions as a director of the Company, and any of its subsidiaries, divisions, joint ventures or other affiliates, effective as of the Payment Date (as defined in Paragraph 2 below), and agree that (a) you shall take such further actions as requested by the Company to effectuate the foregoing, and (b) such resignation was not because of a disagreement with the Company on any matter relating to the Company's operations, policies or practices.

2.  (a)  In consideration of your obligations set forth in this Agreement, including, but not limited to your consent to the General Release set forth in paragraph 8 below, the Company hereby agrees to pay you (i) One Million One Hundred Thousand dollars ($1,100,000) (gross) and (ii) Twenty One Thousand, Seven Hundred Sixty-Two dollars ($21,762) (gross), less all applicable federal, state and local withholding taxes and deductions (collectively, the "Severance Payment"), which amount shall be paid in a lump sum, pursuant to wire transfer instructions designated by you, no later than five (5) business days following the Effective Date of this Agreement (as defined in paragraph 13 below) (the "Payment Date").

(b)  In further consideration of your obligations set forth in this Agreement, in the event that you elect to receive continuation coverage in the Company's medical plan pursuant to the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Company agrees to pay for the cost of such continuation coverage for eighteen (18) months. COBRA continuation coverage shall in all respects be subject to the requirements, conditions and limitations of COBRA

1

and of the medical plan of the Company, which may be amended from time to time. You have notified the Company of your intention to elect COBRA continuation coverage and will sign such paperwork as is necessary to effectuate same.

3. You acknowledge that the Severance Payment is in lieu of and in full satisfaction of any amounts that might otherwise be payable under any contract, plan, policy or practice, past or present, of the Company, or any of its subsidiaries and affiliates, including but not limited to your employment agreement of May 2006 (the "Employment Agreement"). You shall not be eligible to receive benefits under any employee benefit plans or compensation arrangements of the Company, or any of its subsidiaries or affiliates, subsequent to December 18, 2007, with the exception of (a) your right to elect COBRA continuation coverage, and (b) any vested benefits you may have in the Company's 401(k) plan as of December 18, 2007 (together with any accrued earnings in the 401(k) plan to date). For the avoidance of doubt, the Severance Payment shall not count towards your 401(k) contributions.

4. In consideration of the premises and covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, you hereby assign, convey, or otherwise transfer to the Company, all rights, title, and interest in any and all Intellectual Property Rights, acquired, obtained, created or maintained in connection with your employment by or association with the Company, including, without limitation, Intellectual Property Rights obtained or created prior to formation of the Company and subsequently used by the Company. For the purpose of this Agreement, "Intellectual Property Rights" means: (1) any U.S. or foreign patents, utility models and industrial designs, and applications (whether provisional or otherwise) therefor of all countries of the world (including any and all divisions, requests for continued reexamination, continued prosecution applications, continuations-in-part, reissues, and re-examinations thereof); (2) any copyrights and copyrighted works of any country, whether registered or unregistered, including website content; (3) any U.S. or foreign trademarks, whether registered or unregistered, maskworks, trade dress, trade names, business names, service marks, brands, marks slogans, Internet domain names, including but not limited to the names MMC Energy, Inc. and MMC Energy, LLC, as well as other uses specifically directed to the use of the name MMC (and all variations thereof), and the Internet domain names www.mmcenergy.com and www.mmcnorthamerica.com, icons, and logos, and registrations and applications therefor, including all common law rights and all goodwill associated with any of the foregoing; (4) any protectible or proprietary interest, whether registered or unregistered in know-how, trade secrets, database rights, invention disclosures and applications, software (including source and object code), operating manufacturing procedures, designs, specifications and the like; (5) any protectible or proprietary interest in any similar intangible asset of a technical, scientific or creative nature; and (6) any protectible or proprietary interests in or to any documents or other tangible media containing any of the foregoing. Upon the Company's request, you agree that you shall assist the Company or anyone it designates in filing patent, trademark or copyright applications worldwide relating to the Intellectual Property Rights. You are delivering herewith executed transfer documentation to cause the transfer to the

Company, as of the Effective Date, of the domains www.mmcenergy.com and www.mmcnorthamerica.com and you further agree that you shall execute all papers and take all other actions necessary and advisable, in the Company's opinion, to file and prosecute such applications and to transfer to the Company all Internet domain names including but not limited to www.mmcenergy.com and www.mmcnorthamerica.com. You represent and warrant that you: (1) have the power and authority to assign, convey or otherwise transfer full and complete ownership of such Intellectual Property Rights to the Company, in accordance with this Agreement; and (2) have no obligations to any third party (whether by law or by contract) that could in any way prohibit or limit you from assigning, conveying or otherwise transferring full and complete ownership to the Intellectual Property Rights, provided that, to your knowledge, another entity currently uses the MMC Energy name in Europe (see http://www.mmcenergy-europe.com/ ). and you represent that you have no rights in connection with that entity's use of the name MMC Energy and therefore cannot assign or convey any such rights in connection with that entity's use of the name MMC Energy.

5. All documents (electronic, paper or otherwise), records (electronic, paper or otherwise), materials, software, equipment, and other physical property, and all copies of the foregoing, whether or not otherwise containing Confidential Information (as defined in Section 12 of the Employment Agreement), that have come into your possession or been produced by you in connection with your employment ("Property"), have been and remain the sole property of the Company or its subsidiaries or affiliates, as applicable. You agree that you have returned all such Property to the Company (or, to the extent that you have not, that you immediately will do so). Without limitation, pursuant to the foregoing paragraph you shall return any and all of the Company's computer back-up tapes and other storage devices (e.g., disk drives, flash drives, CD-Roms, DVD's, computer disks, etc.) within two business days after execution of this Agreement and shall not retain in your possession any copies, duplicates, reproduction or excerpts of the same. Notwithstanding the foregoing, the Company acknowledges that (i) you may retain the Dell laptop computer currently in your possession and the Dell desktop computer currently in your possession, and (ii) the Company agrees to send to you, and you may retain, any hard copies and electronic files in its possession relating to Newmarket Power Company and MMC Energy Fund, provided that the Company reserves the right to retain in its sole discretion any copies of the same.

6. You agree to keep the terms of this Agreement confidential and not to disclose the Agreement or the terms thereof to any person, except (a) to your immediate family (including Joseph Hearne) and as may be required for obtaining legal or tax advice; (b) for the filing of income tax returns or required financial disclosures; (c) to a prospective employer from whom you are seeking subsequent employment; or (d) as may be required by law or in any proceeding to enforce this Agreement. In the case of any disclosure to immediate family or a legal or tax advisor, you shall require any person receiving such information to maintain its confidentiality. You acknowledge that the Company is a reporting company under the Securities Exchange Act of 1934

3

and will be required to make disclosure of the terms of this Agreement and/or file this agreement as an exhibit to its public filings.

7.  You agree not to make, or knowingly cause to be made, any statement or communication, written or oral, with the intention of (a) disparaging or otherwise impugning the business or management of the Company or any of its subsidiaries or affiliates, or any of their respective officers, directors, agents, counsel, representatives or employees, or (b) interfering with, impairing or disrupting the normal operations of the Company or any of its subsidiaries or affiliates. The Company agrees that it will not knowingly permit its senior officers and directors to make, or knowingly cause to be made, any statement or communication, written or oral, with the intention of disparaging or otherwise impugning you, your business or your reputation and the Company shall advise its senior officers and directors of this obligation.

8.  (a) You, your heirs, successors, and assigns, hereby knowingly and voluntarily remise, release and forever discharge the Company and its subsidiaries and affiliates, together with all of their respective current and former officers, directors, partners, shareholders, employees, representatives, attorneys, agents, and each of their predecessors, successors and assigns, and any and all employee pension or welfare benefits plans of the Company, including current and former trustees and administrators of these plans, and each of their predecessors, successors and assigns (collectively, the "Releasees"), from any and all debts, demands, actions, causes of actions, accounts, covenants, contracts, agreements, claims, damages, omissions, promises, and any and all claims and liabilities whatsoever, of every name and nature, known or unknown, suspected or unsuspected, both in law and equity ("Claims"), which you ever had, now have, or may hereafter claim to have against the Releasees by reason of any matter, cause or thing whatsoever arising from the beginning of time to the time you sign this Agreement (the "General Release"). This General Release of Claims shall apply to any Claim of any type, including, without limitation, any and all Claims of any type that you may have arising under the common law, under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Americans With Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Employee Retirement Income Security Act of 1974, the Sarbanes-Oxley Act of 2002, the Equal Pay Act, the Rehabilitation Act of 1973, the New York State and City Human Rights laws, and the New York Labor Law, each as amended, and any other federal, state or local statutes, regulations, ordinances or common law, or under any policy, agreement, contract, understanding or promise, written or oral, formal or informal, between any of the Releasees and you, including but not limited to the Employment Agreement, and shall further apply, without limitation, to any and all Claims in connection with, related to or arising out of your employment, or the termination of your employment, with the Company, and all Claims for alleged tortious, defamatory or fraudulent conduct; provided, however, that nothing contained in this Agreement shall (i) impair any vested benefits you may have in the Company's 401(k) plan as of December 18, 2007 (together with any accrued earnings in the 401(k) plan to date); or (ii) be construed to prohibit you from bringing appropriate proceedings to enforce this Agreement. You hereby represent and warrant that you

4

have not filed or caused to be filed any complaints, charges or lawsuits against the Company or any of the Releasees, and that no such complaints, charges or lawsuits are pending. By signing this General Release, you further represent that you will not be entitled to any personal recovery in any action or proceeding that may be commenced on your behalf arising out of the matters released hereby.

(b) The Company, on behalf of itself and its subsidiaries, hereby knowingly and voluntarily remises, releases and forever discharges you, your heirs, successors and assigns, from any and all Claims, which it ever had, now has, or may hereafter claim to have against you by reason of any matter, cause or thing whatsoever arising from the beginning of time to the time you sign this Agreement, including, without limitation, any and all Claims of any type that it may have arising under any federal, state or local statutes, regulations, ordinances or common law, or under any policy, agreement, contract, understanding or promise, written or oral, formal or informal, between the Company or any of its subsidiaries and you, and shall further apply, without limitation, to any and all Claims in connection with, related to or arising out of your employment, or the termination of your employment, with the Company, and all Claims for alleged tortious or defamatory conduct; provided, however, that nothing contained in this Agreement (i) shall release you from any Claims for fraud, theft, embezzlement or intentional breach of fiduciary duty, or contribution action(s) in connection with any such Claims, whether brought by the Company or any other entity or person; or (ii) be construed to prohibit the Company from bringing appropriate proceedings to enforce this Agreement. The Company acknowledges that it has no present intention to bring any Claims against you, including any Claims of the nature described in clause (i) above.

9. You hereby represent and warrant that, with the exception of Louis Zehil of McGuireWoods LLP, former attorneys for the Company, you do not have knowledge of any illegal actions or omissions by any current or former officer, director, employee, agent, attorney, consultant or representative of the Company (including yourself) through the date of the execution of this Agreement that were (individually or collectively) in any way knowingly or intentionally improper, harmful or detrimental to the Company, its business and/or its shareholders, including, without limitation, violations of any laws, regulations or accounting policies or principles, the taking of unreasonable tax positions, or the furnishing of inaccurate statements, invoices or other reports to any person or entity.

10. You agree to cooperate fully with the Company and its subsidiaries and affiliates concerning reasonable requests for information about the business of the Company or its subsidiaries or affiliates or your involvement and participation therein, and any information required to be disclosed in the Company's public filings; the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of the Company or its subsidiaries or affiliates which relate to events or occurrences that transpired while you were employed by the Company; and in connection with any investigation or review by any federal, state or local regulatory, quasi-regulatory or self-governing authority (including, without limitation, the Securities and Exchange Commission) as any such investigation or review relates

5

to events or occurrences relating to business matters or other work-related issues that transpired while you were employed by the Company, including but not limited to (i) the potential FERC filing against the CAISO in regards to the Company's ability to provide spinning reserve services, including providing a sworn affidavit as to your direct involvement in this matter, following up with Company's FERC counsel and, if required, testifying at FERC; and (ii) the Company's obligations pursuant to subpoenas issued in the action captioned Securities and Exchange Commission v. Zehil, et al., 07 Civ 1439 (LAP). Your full cooperation shall include, but not be limited to, being available to meet and speak with officers or employees of the Company and/or its counsel at reasonable times and locations, executing accurate and truthful documents and taking such other actions as may reasonably be requested by the Company and/or its counsel to effectuate the foregoing. The Company shall notify you in writing as promptly as practicable and at least ten (10) business days prior to the requested date of your consultation or providing documentation (or, if such notice is not possible under the circumstances, with as much prior notice as is possible). A copy of any such notification shall be sent to Chadbourne & Parke LLP, attention of Edward P. Smith, 30 Rockefeller Plaza, New York, NY 10112. The Company further agrees to reimburse you for any reasonable, out-of-pocket travel, hotel and meal expenses incurred in connection with your performance of obligations pursuant to this paragraph for which you have obtained prior, written approval from the Company; provided that if you have submitted a request for prior, written approval to the Company and the Company has not responded to such request, your obligations under this paragraph 10 relating to such reimbursement request will not be required to be performed unless and until you receive a response from the Company. In the event that you provide your services for a total of more than fifteen (15) days, the Company shall pay you for your services for each additional day in excess of fifteen (15) days an amount equal to the daily equivalent of your $225,000 per annum base salary in effect on your last day of employment, provided that you notify the Company in writing at such time as you believe that you have provided in excess of fifteen (15) days, and not to incur any additional time unless (i) approved in writing by the Company, or (ii) if compelled to by legal/administrative process.

11. Nothing in this Agreement is intended to or shall preclude you from providing truthful testimony on any non-privileged subject matter in response to a valid subpoena, court order, regulatory request or other judicial, administrative or legal process or otherwise as required by law, in which event you shall notify the Company in writing as promptly as practicable after receiving any such request of the anticipated testimony and at least ten (10) business days prior to providing such testimony (or, if such notice is not possible under the circumstances, with as much prior notice as is possible) so that the Company may seek a protective order or other appropriate remedy, and you agree to cooperate with the Company in any effort the Company undertakes to obtain a protective order or other remedy. If such a protective order or other remedy is not obtained, or the Company waives compliance with this Agreement, you shall furnish only that portion of such subject matter that is legally required and shall exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded to the subject matter to be disclosed.

6

12. The Company has advised you to consult with an attorney (including tax counsel) of your choosing prior to signing this Agreement, and you have availed yourself of such right. You understand and agree that you have the right and have been given the opportunity to review this Agreement and, specifically, the General Release in paragraph 8 above, with an attorney, and in this regard you have consulted with Chadbourne & Parke LLP in connection with your signature of this Agreement. You also understand and agree that the Company is under no obligation to offer you this Agreement and that you are under no obligation to consent to the General Release. You acknowledge and agree that the payment offered by the Company and set forth in paragraph 2 above and other consideration set forth in this Agreement is sufficient consideration to require you to abide with your obligations under this Agreement, including but not limited to the General Release. You represent that you have read this Agreement, including the General Release set forth in paragraph 8, and understand its terms and that you enter into this Agreement freely, voluntarily, and without coercion. The Company acknowledges and agrees that the resolution of the matters under the Employment Agreement and your obligations set forth in this Agreement are sufficient consideration to require the Company to abide by its obligations under this Agreement.

13. You acknowledge and represent that you have been given at least twenty-one (21) days during which to review and consider the provisions of this Agreement and, specifically, the General Release set forth in paragraph 8 above, although you may sign and return it sooner if you so desire. You further acknowledge and represent that you have been advised by the Company that you have the right to revoke this Agreement for a period of seven (7) days after signing it. You acknowledge and agree that, if you wish to revoke this Agreement, you must do so in a writing, signed by you and received by the Company no later than 5:00 p.m. Eastern Time on the seventh (7th) day of the revocation period. If no such revocation occurs, the General Release and this Agreement shall become effective on the eighth (8th) day following your execution of this Agreement (the "Effective Date"). You further acknowledge and agree that, in the event that you revoke this Agreement, it shall have no force or effect, and you shall have no right to receive any of the payments or benefits provided for hereunder.

14. The Company confirms and you acknowledge that you were granted options to purchase shares of the Company ("Options") pursuant to the Company's 2006 Stock Option Plan, as amended or restated from time to time (the "Option Plan"), and that this Agreement is not intended to enlarge, reduce, modify or otherwise alter any and all rights and/or obligations you may have with respect to the exercise of such Options in accordance with the terms and conditions of the Option Plan. The Company further confirms that your separation of employment shall be treated like a termination for "Good Reason" for purposes of Section 9(d)(iv)(B) of the Employment Agreement. To the extent permitted by law and applicable regulations, on the third month anniversary of the Payment Date, the Company shall cause to be removed the restrictive transfer legend on the following shares held by you: MMC Energy, Inc., Certificate #671, 25,000 shares; MMC Energy, Inc., Certificate #585, 24,291 shares; MMC Energy, Inc., Certificate #640, 461,534 shares.

7

15. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought. In the event that any one or more of the provisions of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. Moreover, if any one or more of the provisions contained in this Agreement shall be held to be excessively broad as to duration, scope, activity or subject, such provisions shall be construed by limiting or reducing them so as to be enforceable to the maximum extent compatible with applicable law.

16. No waiver by either party of any breach by the other party of any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of any other provision or condition at the time or at any prior or subsequent time. This Agreement and the provisions contained in it shall not be construed or interpreted for or against either party because that party drafted or caused that party's legal representative to draft any of its provisions.

17. You and the Company shall enter into the Indemnity Agreement in the form attached as Exhibit A hereto, provided that the amount of directors and officers liability coverage for you shall not be less than $5,000,000.

18. The terms described in this Agreement set forth the entire agreement and understanding of the parties and supersede all prior agreements, arrangements and understandings, written or oral, between the parties, including but not limited to the Employment Agreement, provided, however, that Sections 9(d)(iv)(B) (Termination of Service; Accelerated Vesting), 12 (Confidential Information), 13 (Non-Competition And Non-Solicitation), 14 (Dispute Resolution), 15 (Notice), 16 (Personal Guaranty) and 17 (Miscellaneous) of the Employment Agreement shall not be superseded but rather shall remain in full force and effect as if restated herein. You acknowledge and agree that you are not relying on any representations or promises by any representative of the Company concerning the meaning or any aspect of this Agreement. This Agreement may not be altered or modified other than in writing signed by you and an authorized representative of the Company, and shall be governed by and construed and enforced in accordance with the laws of New York, without reference to its choice of law rules.

19. The Company's offer to you of this Agreement is not, and shall not be construed as, any admission of liability or of any improper conduct on the part of the Company or any of the Releasees, all of which the Company specifically denies.

20. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

8

If the above sets forth our agreement as you understand it and consent to it, please so signify by executing the enclosed copy of this letter and return it to me at the address listed above.

Very truly yours,
MMC Energy, Inc.

By: _DENIS GAGNON_
Title: _CFO_

Agreed to and Accepted:

Karl W. Miller
Dated: _2/7/08_

9

EXHIBIT 2

24 of 94 DOCUMENTS

Copyright 2008 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire

March 18, 2008 Tuesday 9:41 PM GMT

**LENGTH:** 785 words

**HEADLINE:** Former Chairman and CEO of MMC Energy, Inc. (Nasdaq: MMCE) and Founding Shareholder Group Intend to Nominate a Slate of Directors for Election at MMC's May 2008 Annual Meeting

**DATELINE:** WILMINGTON, N.C. March 18

**BODY:**

WILMINGTON, N.C., March 18 /PRNewswire/ -- Energy Holdings Limited LLC ("EHL"), a company comprised of MMC's founders, G. William Eason and Karl W. Miller, today announced that they intend to nominate a slate of directors for election at the May 2008 annual meeting of shareholders of MMC Energy, Inc.(NASDAQ:MMCE)("MMC") and to solicit proxies from MMC's shareholders. The founding equity group intends to nominate highly qualified, experienced and execution-oriented individuals to replace the existing board of directors of MMC. EHL detailed their intentions in a letter dated March 7, 2008 that was delivered to MMC and is an exhibit to the Schedule 13-D filed on March 17, 2008. EHL and Karl W. Miller together own shares of MMC's common stock representing approximately 9.1% of MMC's outstanding shares. Miller is the founder and a former Chairman, CEO and director of MMC, as well as a major shareholder.

EHL requested in its March 7, 2008 letter that MMC's annual meeting be held in April 2008 due to the critical issues now facing the Company.

"As major investors, EHL is focused on creating an enterprise that is energetic, dynamic and execution oriented," said Eason. "We will propose a board that is positioned to manage a micro-cap growth company which is dependent upon a highly driven and focused management team."

The proposed new slate of directors will provide a fresh perspective and new ideas for ways to grow revenues and profits through targeted acquisitions and drive shareholder value. "We believe the alternative slate will benefit shareholders," said Eason.

The proposed nominees will form a highly-qualified, experienced and dedicated team that is committed to take the actions necessary to position MMC for long-term growth and profitability and increasing shareholder value. The nominees will be fully committed to acting in the best interests of all shareholders and the group has significant personal capital at risk by its holdings of MMC stock.

If elected, the nominees would not accept directors' fees and Mr. Miller, who received a cash payment of $1,121,762 (gross) from MMC as a result of his separation from MMC, would plan to reinvest a substantial portion of that amount in the form of purchases of MMC stock. Miller is the largest individual non-institutional investor of MMC.

"Since founding this Company, I have personally contributed cash for operations when MMC was a private firm, personally guaranteed debt and regularly purchased shares in the open market, and never sold even one share of stock. I continue to believe in MMC and am confident the true value of the Company is yet to be realized," said Miller.

Former Chairman and CEO of MMC Energy, Inc. (Nasdaq: MMCE) and Founding Shareholder Group Intend to
Nominate a Slate of Directors for Election at MMC's May 2008 Annual Meeting PR Newswire March 1

In response to the Company's announcement that it is relocating its current CEO to California, "We are pleased that
the Board is listening to us, but without the simultaneous closure of the New York office, the inefficient use of MMC's
cash and the direct and hidden costs of separating management only exacerbates the risk to shareholders," said Eason.

Proceeds from the June 2007 IPO were specifically earmarked for the Chula Vista and Escondido upgrades. Given
the deteriorating credit market conditions, it is paramount that MMC preserve its cash to support and fund the projects.
Structuring a non-dilutive debt instrument or an additional acquisition without consideration for the current market
conditions poses a significant risk to shareholders. "We are concerned about the Company's cash burn rate for general
and administrative purposes," said Eason.

This is an exciting time to be in the energy business and we are confident our plan is best for MMC," Eason added.
"It is time to get back to work."

IMPORTANT INFORMATION

EHL and Messrs. Eason and Miller intend to file with the Securities and Exchange Commission and mail to
shareholders a proxy statement and proxy card to be used to solicit proxies in connection with MMC's May 2008 annual
meeting. Shareholders are advised to read carefully the proxy statement and other information related to the solicitation
when they become available because they will contain important information. When completed, a definitive proxy
statement and a form of proxy will be mailed to MMC's shareholders and will be available, along with other relevant
documents, at no charge, at the SEC's website at http://www.sec.gov/ . Information relating to the participants in such
proxy solicitation will be contained in the proxy statement to be filed by EHL and Messrs. Eason and Miller.

```
Investor/Media Contacts:

G. William Eason

gwilliameason@gmail.com
 (917) 591-6906
```

CONTACT: Investor, Media: G. William Eason of Energy Holdings Limited
LLC, +1-917-591-6906, gwilliameason@gmail.com

SOURCE Energy Holdings Limited LLC

**URL:** http://www.prnewswire.com

**LOAD-DATE:** March 19, 2008

EXHIBIT 3

23 of 94 DOCUMENTS

Copyright 2008 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire

March 20, 2008 Thursday 7:37 PM GMT

**LENGTH:** 569 words

**HEADLINE:** Energy Holdings Limited LLC Nominates Slate of Directors for Election to MMC Energy, Inc. Board of Directors at the May 28, 2008 Annual Meeting Of Stockholders

**DATELINE:** WILMINGTON, N.C. March 20

**BODY:**

WILMINGTON, N.C., March 20 /PRNewswire/ -- Energy Holdings Limited LLC (EHL), a group of founding shareholders of MMC Energy, Inc.(NASDAQ:MMCE)(MMC) and Karl W. Miller, founder and a former chairman, CEO and director of MMC, and the largest individual, non-institutional investor, announced its slate of nominees for election to the board of directors of MMC at the annual meeting to be held May 28, 2008 in San Francisco, California. The slate is comprised of a combination of MMC's entrepreneurial founding stockholders and energy industry executives with broad and deep energy experience.

"We are very proud of our slate and feel confident that if investors take a cold, hard look at the opportunities that exist within the energy industry today, there is every reason to elect our slate," said G. William Eason, Managing Member of EHL.

Eason cited the ability of EHL's nominees to raise investor confidence and move the company forward as reasons for the change. "Our slate has the execution capabilities and experience level," said Eason.

MMC's share price has hit an all time low of $2.06 today and, combined with the lack of liquidity, creates what EHL considers to be concern among investors about the status of MMC.

EHL seeks to protect the remaining cash from the proceeds of the June 2007 IPO.

The EHL slate plans to immediately relocate the Company to California, close the New York office, and enhance the asset acquisition pipeline and attract additional sources of capital at the asset level.

The EHL slate includes energy industry executives with proven track records and individuals with entrepreneurial talent who understand the dynamics and challenges of managing a growth business and have invested in MMC from its inception. "We are excited about creating what EHL feels is an energetic, dynamic and execution oriented team moving MMC forward," said Eason.

The following is EHL's slate of nominees: G. William Eason, Joseph C. Hearne, Raiford Trask, Jr., Ketheesch Aran, Kevin McConville, Tony Valentine and Karl W. Miller.

The EHL slate will not collect fees for board service or meetings, substantially reducing the annual general and administrative expenses of MMC to preserve cash.

Energy Holdings Limited LLC Nominates Slate of Directors for Election to MMC Energy, Inc. Board of Directors at the May 28, 2008 Annual Meeting Of Stockholders PR Newswire March 20, 2008 Thursday 7:37

As required by MMC's Bylaws, EHL delivered to MMC's New York corporate offices the slate of nominees and notice that it intends to propose certain amendments to the MMC Bylaws.

IMPORTANT INFORMATION

EHL and Messrs. Eason and Miller intend to file with the Securities and Exchange Commission and mail to stockholders a proxy statement and proxy card to be used to solicit proxies in connection with MMC's May 2008 annual meeting. Stockholders are advised to read carefully the proxy statement and other information related to the solicitation when they become available because they will contain important information. When completed, a definitive proxy statement and a form of proxy will be mailed to MMC's stockholders and will be available, along with other relevant documents, at no charge, at the SEC's website at http://www.sec.gov/ . Information relating to the participants in such proxy solicitation will be contained in the proxy statement to be filed by EHL and Messrs. Eason and Miller.

```
Investor Contacts/Media Contacts:
G. William Eason
```

gwilliameason@gmail.com
```
(917) 591-6906
```

CONTACT: G. William Eason, Energy Holdings Limited LLC, +1-917-591-6906, gwilliameason@gmail.com

SOURCE Energy Holdings Limited LLC

**URL:** http://www.prnewswire.com

**LOAD-DATE:** March 21, 2008

22 of 94 DOCUMENTS

Copyright 2008 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire

March 26, 2008 Wednesday 3:15 PM GMT

**LENGTH:** 1151 words

**HEADLINE:** Energy Holdings Limited LLC Voices Concern Over MMC Energy, Inc. Status

**DATELINE:** WILMINGTON, N.C. March 26

**BODY:**

WILMINGTON, N.C., March 26 /PRNewswire/ -- Energy Holdings Limited LLC ("EHL") is concerned that the severely depressed share price of MMC Energy, Inc. ("MMC")(NASDAQ:MMCE)and lack of liquidity will lead investors to question MMC's viability and exacerbate the lack of confidence of shareholders and the investment community in general, according to G. William Eason, EHL's Managing Member.

Following EHL's announcement of its proxy solicitation and nomination of a new slate of directors for the MMC board, current MMC management hired Merriman, Curhan, and Ford to assist MMC in determining strategic alternatives.

EHL and Karl W. Miller, MMC's founder, have nominated a slate for election to MMC's board of directors, to be held May 28, 2008 at the annual meeting of shareholders in San Francisco, California.

EHL and Miller control 9.1 percent of MMC's outstanding common stock and have filed a Schedule 13D with the Securities and Exchange Commission. Miller is a nominee for MMC's board of directors. Miller has committed to purchasing up to an additional $1mm of MMC stock if the EHL nominated slate of directors is elected by the shareholders. Miller is already the largest non- institutional investor in MMC.

In 2002, Messrs. Miller and McConville founded Miller McConville as a private firm which eventually became MMC. Mr. Miller continued with MMC as its CEO and led it through an initial public offering, multiple financings, and acquisition of power generation assets at deep discounts, initiated the critical Chula Vista and Escondido upgrades, and left MMC with virtually no debt.

"To be considering strategic alternatives this soon after an IPO when MMC posted record profits of $.05 per share in the third quarter of 2007, under Miller's leadership, is extremely irregular," said Eason.

EHL is additionally concerned that proceeds from MMC's 2007 IPO are not being dedicated to the projects identified in the prospectus and registration statement and that general and administrative expenses are growing rapidly. The IPO designated the bulk of the use of proceeds to the Chula Vista and Escondido upgrade projects.

"Merriman is a great firm and has been a friend of MMC since I retained them to lead MMC's public offering in June 2007," said Miller. "I consider Jon Merriman, the CEO of Merriman Curhan Ford, to be a personal friend and competent business executive."

"MMC has been a public company for a relatively short time and EHL is concerned that MMC is generating

Energy Holdings Limited LLC Voices Concern Over MMC Energy, Inc. Status PR Newswire March 26, 2008
Wednesday 3:15 PM GMT

expenses at an unknown rate and for purposes not intended nor disclosed in June, 2007," said Eason. "A sales process can take up to nine months, which hamstrings MMC during the interim."

On Thursday March 20th, EHL announced its nominee slate for MMC's May 28, 2008 annual meeting. Three senior hands on energy industry executives were named in addition to Miller.

Kevin McConville, nominated by EHL to be elected to MMC's board at the annual meeting, has over 25 years experience in management and leadership positions within the energy industry. "McConville has great breadth and depth in a variety of skillsets necessary for successful operations, particularly as they pertain to micro-cap growth companies and energy companies in particular," said Eason. McConville spent the bulk of his career at Enron Corp and Williams Trading.

Ketheesch Aran was named a nominee to the board and has spent the bulk of his career in the energy industry. Aran, a senior banker at Chrysler Capital, financed energy development projects and electricity generation firms before moving to El Paso Corporation as Vice-President then served in senior management positions at rapidly growing independent energy companies.

Tony Valentine was also named as a nominee to the MMC board and has experience in executing project finance transactions with their inherent credit challenges. Valentine is a veteran of Chase, GE Capital and Enron.

"EHL is confident in the capabilities of its director nominees to create long term shareholder value. EHL is determined to create an energetic, dynamic and execution oriented team moving MMC forward," said Eason.

During MMC's March 11, 2008 earnings call, MMC disclosed it still had not filed with the Federal Energy Regulatory Commission (FERC) the appropriate documents to reinstate spinning reserve revenue denied by the CAISO. The loss in revenue is significant annually even though MMC said it was "confident" it would prevail before the FERC, and it offered no explanation as to why it delayed the critical filing for over six months. Generally, such matters require many months after submission for the FERC to rule, which could put a ruling well past the summer of 2008, the premium earnings season for MMC.

In addition, MMC stated that its current CEO would move to San Diego but did not commit to the closure of the New York office, adding to cash burn fears of investors.

Critically missing from the March 11, 2008 call, was a discussion of MMC's 2007 fourth quarter results and management's views of the energy market conditions which MMC operates. Management responded to only one marginal question during the call. Inexplicably, MMC's share price and lack of liquidity were not discussed. MMC shares traded down to an all time low $1.85 a share, on very light volume in Tuesday's trading.

"While MMC's current board is a group of highly respected individuals, we believe our nominees are more experienced in managing micro-cap growth companies and the unregulated power generation energy industry in today's environment. It is time for an immediate change, as the situation is becoming more critical by the day as MMC's market capitalization continues to decline and shareholder confidence evaporates," said Eason.

IMPORTANT INFORMATION

EHL and Messrs. Eason and Miller intend to file with the Securities and Exchange Commission and mail to stockholders a proxy statement and proxy card to be used to solicit proxies in connection with MMC's May 2008 annual meeting. Stockholders are advised to read carefully the proxy statement and other information related to the solicitation when they become available because they will contain important information. When completed, a definitive proxy statement and a form of proxy will be mailed to MMC's stockholders and will be available, along with other relevant documents, at no charge, at the SEC's website at http://www.sec.gov/ . Information relating to the participants in such proxy solicitation will be contained in the proxy statement to be filed by EHL and Messrs. Eason and Miller.

Energy Holdings Limited LLC Voices Concern Over MMC Energy, Inc. Status PR Newswire March 26, 2008
Wednesday 3:15 PM GMT

```
Investor Contacts:

G. William Eason


gwilliameason@gmail.com

 (917) 591-6906

 Media Contacts:

 Kevin McConville


mcconville.k@gmail.com

 832-731-7096
```

    CONTACT: Investors: G. William Eason, +1-917-591-6906,
gwilliameason@gmail.com , or Media: Kevin McConville, +1-832-731-7096,
mcconville.k@gmail.com , both of Energy Holdings Limited LLC

    SOURCE Energy Holdings Limited LLC

**URL:** http://www.prnewswire.com

**LOAD-DATE:** March 27, 2008

21 of 94 DOCUMENTS

Copyright 2008 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire

March 27, 2008 Thursday 10:04 PM GMT

**LENGTH:** 1074 words

**HEADLINE:** Energy Holdings Limited LLC Expresses Its 'Disappointment and Dismay' Regarding MMC Energy, Inc.'s Announcement of Stock Repurchase Plan

**DATELINE:** WILMINGTON, N.C. March 27

**BODY:**

WILMINGTON, N.C., March 27 /PRNewswire/ -- Energy Holdings Limited LLC ("EHL") expressed its "disappointment and dismay" at MMC Energy, Inc.'s ("MMC")(NASDAQ:MMCE)announcement of a stock repurchase plan, according to G. William Eason, EHL's Managing Member.

The announced stock buyback "does not conform to the specific use of proceeds in the prospectus and registration statement from the June 2007 IPO," continued Eason. EHL believes this development will further support the election of EHL's execution orientated nominee slate. "We just wish the opportunity for shareholders to cast votes was sooner rather than in May," added Eason.

"Any share repurchases will have the effect of reducing MMC's cash at the expense of existing shareholders," said Eason. "If the current management and board believe MMC shares are undervalued, we encourage them to put their own personal capital at risk and purchase shares," added Eason.

EHL has filed a Schedule 13 D with the Securities and Exchange Commission and has announced its slate of nominees to be elected at the May 28th, 2008 annual meeting of MMC shareholders.

Repurchasing of common stock is typically done by large, well-capitalized companies, with cash surpluses and ready access to capital markets. A buyback of stock less than a year after MMC's IPO poses significant risk to shareholders. MMC currently cannot access capital markets on an accretive basis without significantly diluting shareholders with a share price that is much less than the original June 2007 IPO price.

With credit and capital markets in disarray, the repurchase of shares by MMC should be puzzling to investors and analysts alike. Power plant upgrade and retrofit projects routinely encounter cost overruns and delays in start-up operations, requiring cash to be set aside to deal with such circumstances. Additionally, the current credit and capital market crisis may require MMC to post more cash security with its equipment and fuel suppliers, electricity counterparties and other vendors.

MMC is currently refurbishing power plants in California purchased during Karl W. Miller's tenure as Chairman, President and CEO of MMC. Miller, MMC's founder and largest individual shareholder, has joined forces with EHL to retake control of the company. EHL and Miller control 9.1% of MMC.

"Even if there is sufficient pro-forma cash after proper consideration of the Chula Vista and Escondido power plant upgrades and retrofits, MMC operates in the volatile unregulated power generation market and cash preservation is

Energy Holdings Limited LLC Expresses Its 'Disappointment and Dismay' Regarding MMC Energy, Inc.'s
Announcement of Stock Repurchase Plan PR Newswire March 27, 2008 Thursday 10:04 PM GMT

paramount at this point in the company's life," said Miller.

"During the June 2007 IPO, a share buyback was never discussed with MMC investors. MMC is a growth company which needs every dollar it can retain for risk management and growth purposes. As a prudent risk manager, one must always plan for unknown contingencies, and the current state of the equity and debt markets, the commodity markets and the physical plant operations are all one large contingency," Miller added.

Miller has committed to investing up to $1 million if the EHL slate of nominees is elected.

"From a cost of capital perspective, the repurchase announcement makes little sense. Repurchasing shares at a discount without sufficient reserves, as well as the current unknown general and administrative costs, create an unquantifiable risk to shareholders. The likelihood of the Chula Vista and Escondido projects not getting completed and the company running out of money, not to mention abandonment of a growth strategy promised to investors less than a year ago during the IPO, tells EHL that the board is at a loss of what it should do," said Eason.

The energy industry is currently very strong and EHL shareholders, as well as apparently other investors, are hard pressed to understand why MMC is not moving forward on a transaction that is accretive and non-dilutive to shareholders. If such a move is being contemplated by MMC, the repurchase announcement becomes even more difficult to understand.

Eason noted that the recent moves that MMC has made have come after the announcement by EHL of its proposed new slate of directors:

```
-- MMC announced its current CEO will spend time in a San Diego office,
   after EHL announced it will relocate to Southern California, but MMC
   did not agree to close its New York headquarters thereby not taking
   advantage of significant cost savings.

-- After EHL noted the lack of action regarding the elimination of
   spinning reserve revenue, MMC announced a Federal Energy Regulatory
   Commission filing without any explanation for its substantial delay at
   tremendous cost to shareholders, without any prospect for recovery
   of revenue realized during the last seven months.
```

"We have a good company. We need a new management team and entrepreneurial board who understand the realities of micro cap growth companies and the operational and credit challenges of managing unregulated power generation assets in today's markets," said Eason.

"We want a higher share price based on the prospects of the underlying business driven by experienced EHL management and directors," added Eason. "As I have said repeatedly, it is time for a change."

IMPORTANT INFORMATION

EHL and Messrs. Eason and Miller intend to file with the Securities and Exchange Commission and mail to stockholders a proxy statement and proxy card to be used to solicit proxies in connection with MMC's May 2008 annual meeting. Stockholders are advised to read carefully the proxy statement and other information related to the solicitation when they become available because they will contain important information. When completed, a definitive proxy statement and a form of proxy will be mailed to MMC's stockholders and will be available, along with other relevant documents, at no charge, at the SEC's website at http://www.sec.gov/ . Information relating to the participants in such proxy solicitation will be contained in the proxy statement to be filed by EHL and Messrs. Eason and Miller.

Energy Holdings Limited LLC Expresses Its 'Disappointment and Dismay' Regarding MMC Energy, Inc.'s
Announcement of Stock Repurchase Plan PR Newswire March 27, 2008 Thursday 10:04 PM GMT

```
Investor Contacts:
-----------------
G. William Eason

gwilliameason@gmail.com
  (917) 591-6906

  Media Contacts:
  --------------
  Kevin McConville

mcconville.k@gmail.com
  (832) 731-7096
```

   CONTACT: Media, Kevin McConville, +1-832-731-7096,
mcconville.k@gmail.com , or Investors, G. William Eason, +1-917-591-6906,
gwilliameason@gmail.com , both of Energy Holdings Limited LLC

   SOURCE Energy Holdings Limited LLC

**URL:** http://www.prnewswire.com

**LOAD-DATE:** March 28, 2008

19 of 94 DOCUMENTS

Copyright 2008 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire

April 1, 2008 Tuesday 8:02 PM GMT

**LENGTH:** 902 words

**HEADLINE:** Energy Holdings Limited Urges the MMC Energy, Inc. Board of Directors to Avoid Entrenchment and Preserve Shareholder Value

**DATELINE:** WILMINGTON, N.C., April 1 2008

**BODY:**

WILMINGTON, N.C., April 1, 2008 /PRNewswire/ -- Energy Holdings Limited LLC ("EHL") and other shareholders have serious concerns about MMC Energy, Inc.'s ("MMC")(NASDAQ:MMCE)viability as a going concern in light of the incumbent board and management's disclosure of substantial change of control and termination benefits recently given to themselves as disclosed in MMC's preliminary proxy statement filed with the Securities and Exchange Commission last Friday, March 28th, 2008, according to G. William Eason, EHL's Managing Member.

"While MMC is in critical condition and there has been no increase in shareholder value, the incumbent board has nevertheless provided current management with a significant exit package in the event existing shareholders replace the board with EHL's slate", Mr. Eason said.

MMC's share price has deteriorated 80 percent, with little or no volume, indicating the market questions the company's ability to remain viable.

EHL and other shareholders have serious questions for the incumbent board and management, in light of the recent entrenchment actions.

1.  Why do the incumbents want to remain on MMC Board of Directors, a micro-cap growth company?

2.  How did the Board become involved with MMC originally?

3.  How much time do current directors spend actively engaged in MMC's business activities?  In person?  By phone?  Email?

4.  Who is responsible for transaction review and due diligence?

5.  Who is responsible for business development?

6.  Which Board member is responsible for regulatory matters?

7.  Can the Board address MMC's future with clarity?

8.  What is MMC's business plan?

9.  Is the Board prepared to allow shareholders the right to vote for the

Energy Holdings Limited Urges the MMC Energy, Inc. Board of Directors to Avoid Entrenchment and Preserve
Shareholder Value PR Newswire April 1, 2008 Tuesday 8:02 PM GMT

    termination benefits the Board gave themselves on Friday?

10. Is the Board, as a group or individuals, willing to invest "real" cash
    into MMC going forward to align themselves with investors?

11. Has the Board hired a proxy solicitation firm?  If so, at what cost?
    How was the decision rationalized?

12. Specifically, how much valuable shareholder money are the incumbents
    currently spending, and plan to spend on:
        - legal advice related to proxy matters?
        - financial advisors and consultants?

13. The EHL slate of nominees has announced that they would forego
    director fees if they are elected.  Is the incumbent Board willing to
    waive director fees?

14. Why did the Board delay for seven (7) months filing for Federal Energy
    Regulatory Commission ("FERC") approval following MMC's public
    announcement in October 2007 that it was no longer eligible for CAISO
    spinning reserves revenues without FERC approval?

15. What is the estimated lost revenue to MMC shareholders due to the
    delay in the FERC filing? What is the estimated loss in market value
    of MMC's existing assets due to the delay and potential permanent loss
    of spinning reserves revenues?

16. What are the current cash commitments for the Chula Vista and
    Escondido power plant upgrades?

17. How much cash is on hand at this point in time?


    EHL, G. William Eason and Karl W. Miller, MMC's founder have filed with the Securities and Exchange
Commission a Schedule 13D, and announced their slate of nominees to be elected to MMC's Board at the upcoming
annual shareholders meeting on May 28, 2008 and will solicit proxies in connection therewith.

    EHL and Messrs. Eason and Miller are confident they will prevail in a proxy process; however, in order to avoid
the expense, distraction and further deterioration in critical shareholder value, EHL urges the Board of MMC to avoid
entrenchment measures and take action only in the best interests of shareholders.

    "While MMC's current board is a group of respected individuals, we believe our nominees and managers are more
experienced in managing micro-cap growth companies in the unregulated power generation energy industry in today's
environment," said Eason.

    "EHL is confident in the capabilities of its director nominees to create long term shareholder value. EHL is
determined to create an energetic, dynamic, results driven and execution oriented team moving MMC forward," said
Eason.

    IMPORTANT INFORMATION

    EHL and Messrs. Eason and Miller intend to file with the Securities and Exchange Commission and mail to

Energy Holdings Limited Urges the MMC Energy, Inc. Board of Directors to Avoid Entrenchment and Preserve Shareholder Value PR Newswire April 1, 2008 Tuesday 8:02 PM GMT

stockholders a proxy statement and proxy card to be used to solicit proxies in connection with MMC's May 2008 annual meeting. Stockholders are advised to read carefully the proxy statement and other information related to the solicitation when they become available because they will contain important information. When completed, a definitive proxy statement and a form of proxy will be mailed to MMC's stockholders and will be available, along with other relevant documents, at no charge, at the SEC's website at http://www.sec.gov/ . Information relating to the participants in such proxy solicitation will be contained in the proxy statement to be filed by EHL and Messrs. Eason and Miller.

```
    Investor Contacts:

    G. William Eason

gwilliameason@energyholdingslimited.com
    (917) 591-6906

    Media Contacts:

    Kevin McConville

kmcconville@energyholdingslimited.com
    (832) 731-7096
```

    CONTACT: Investors, G. William Eason, +1-917-591-6906, gwilliameason@energyholdingslimited.com , or Media Kevin McConville, +1-832-731-7096, kmcconville@energyholdingslimited.com

    SOURCE Energy Holdings Limited LLC

**URL:** http://www.prnewswire.com

**LOAD-DATE:** April 2, 2008

17 of 94 DOCUMENTS


Copyright 2008 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire


April 4, 2008 Friday 7:43 PM GMT

**LENGTH:** 905 words

**HEADLINE:** Energy Holdings Limited LLC Delivers Letter to MMC Energy, Inc. Board of Directors Stating its Position that MMC's Cash Should Be Preserved and No Assets Should Be Sold Without Shareholder Approval

**DATELINE:** WILMINGTON, N.C., April 4 2008

**BODY:**

    WILMINGTON, N.C., April 4, 2008 /PRNewswire/ -- Energy Holdings Limited LLC ("EHL") announced today that it has delivered a copy of the attached letter to the board of directors of MMC Energy, Inc. ("MMC")(NASDAQ:MMCE).

    IMPORTANT INFORMATION

    EHL and Messrs. G. William Eason and Karl W. Miller, founder and a former chairman, CEO and director of MMC, intend to file with the Securities and Exchange Commission and mail to stockholders a proxy statement and proxy card to be used to solicit proxies in connection with MMC's May 2008 annual meeting. Stockholders are advised to read carefully the proxy statement and other information related to the solicitation when they become available because they will contain important information. When completed, a definitive proxy statement and a form of proxy will be mailed to MMC's stockholders and will be available, along with other relevant documents, at no charge, at the SEC's website at http://www.sec.gov/ . Information relating to the participants in such proxy solicitation will be contained in the proxy statement to be filed by EHL and Messrs. Eason and Miller.

    Investor Contacts:
    G. William Eason

gwilliameason@energyholdingslimited.com
    (917) 591-6906

    Media Contacts:
    Kevin McConville

kmcconville@energyholdingslimited.com
    (832) 731-7096

    April 4, 2008

    The Board of Directors

Energy Holdings Limited LLC Delivers Letter to MMC Energy, Inc. Board of Directors Stating its Position that MMC's Cash Should Be Preserved and No Assets Should Be Sold Without Shareholder Approv

```
MMC Energy, Inc.
  26 Broadway, Suite 960
  New York, NY 10004

  Gentlemen,
```

EHL is very concerned about recent actions of the MMC board of directors and wants to make perfectly clear its intentions to dissuade the board from selling any assets without shareholder approval. EHL also reiterates its request for MMC to use cash for the purposes set forth in its June 2007 prospectus.

Since cash and the market value of the three assets located in California are the only assets of significance, it is imperative the board seriously consider its fiduciary responsibilities to shareholders and afford EHL and all shareholders a voice and a vote on any material change in the use of proceeds and business strategy outlined in the June 2007 IPO.

The MMC board, in our opinion, has not demonstrated a business strategy in the best interests of its shareholders. Since EHL and other shareholders filed a Schedule 13D, the critical situation at MMC has become worse and made shareholder rights a larger issue.

EHL also requested that the MMC board move its annual meeting of shareholders to April 2008 so that shareholders could address the critical issues facing the company and vote on a new slate of directors to lead MMC forward. MMC's board chose to ignore this request.

On March 11th, 2008, MMC conducted an earnings teleconference where management did not discuss fourth quarter 2007 results, and accepted only one question, and announced that its current CEO would spend time in California - in response to EHL's criticism of a lack of a California presence and the wasteful expense of the New York headquarters. MMC did not announce, however, the closing of the New York office to conserve cash.

On March 21st, 2008, MMC's board announced it had retained Merriman, Curhan and Ford to assist MMC in developing "strategic alternatives" for the company. At this stage of development, MMC's optimum strategy should be clear to those experienced in the energy industry. Simply put, MMC should do whatever is necessary to complete the existing Chula Vista and Escondido upgrade projects, pursuant to and in conformity with the use of proceeds contained in the June 2007 prospectus and registration documents and without diluting shareholder value.

On March 26th, 2008, MMC's board announced a share repurchase program, a move that concerned EHL as well as other shareholders. While the intent to raise MMC's share price is a goal shared by all investors, the use of MMC's cash for this purpose at this time is inappropriate. Such an ill-advised use of cash with critical construction projects in process and credit markets in disarray cannot be described as in MMC's best interests.

On March 28th, 2008, the MMC board revealed in its preliminary proxy filing that it was awarding certain senior managers "change in control" benefits that will cause payments to be made to them after EHL's slate is elected at the annual meeting of shareholders, May 28th, 2008 in San Francisco. This will only make it more expensive to shareholders to vote against the incumbent board resulting in entrenchment and enrichment of the board and management. EHL requests that this matter be put to a vote of shareholders at the annual meeting.

Also, in the same preliminary proxy filing, the MMC board recommended a "no" vote on a proposed share buyback plan that was introduced by a shareholder who commented that MMC's share price had fallen by more than 80 percent! Yet the board had announced only two days earlier that it was proposing a share buyback program.

EHL and other shareholders are serious with regard to defending, not only their rights, but the rights of all shareholders against an ill advised transaction. EHL intends to file its proxy shortly. It is now clearer than ever that the EHL slate must be elected.

Energy Holdings Limited LLC Delivers Letter to MMC Energy, Inc. Board of Directors Stating its Position that MMC's Cash Should Be Preserved and No Assets Should Be Sold Without Shareholder Approv

Very truly yours,

G. William Eason

Managing Member of EHL

CONTACT: Investor, G. William Eason, +1-917-591-6906, gwilliameason@energyholdingslimited.com , Media, Kevin McConville, +1-832-731-7096, kmcconville@energyholdingslimited.com , both of Energy Holdings Limited LLC

SOURCE Energy Holdings Limited LLC

**URL:** http://www.prnewswire.com

**LOAD-DATE:** April 5, 2008

EXHIBIT 4

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# SCHEDULE 14A

### Proxy Statement Pursuant to Section 14(a) of the
### Securities Exchange Act of 1934 (Amendment No. _____)

Filed by the Registrant ☐
Filed by a Party other than the Registrant ☑

Check the appropriate box:

☑  Preliminary Proxy Statement
☐  Confidential, For Use of the Commission Only (as permitted by Rule 14a–6(e)(2))
☐  Definitive Proxy Statement
☐  Definitive Additional Materials
☐  Soliciting Material Pursuant to §240.14a–12

## MMC ENERGY, INC.
### (Name of Registrant as Specified In Its Charter)

### ENERGY HOLDINGS LIMITED LLC
### G. WILLIAM EASON
### KARL W. MILLER
### (Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☑  No fee required.

☐  Fee computed on table below per Exchange Act Rules 14a–6(i)(l) and 0–11.

   (1)  Title of each class of securities to which transaction applies:

   _____

   (2)  Aggregate number of securities to which transaction applies:

   _____

   (3)  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

   _____

   (4)  Proposed maximum aggregate value of transaction:

   _____

   (5)  Total fee paid:

   _____

☐  Fee paid previously with preliminary materials.

☐  Check box if any part of the fee is offset as provided by Exchange Act Rule 0-1 l(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

   (1)  Amount Previously Paid:

(2)   Form, Schedule or Registration Statement No.:

_____

(3)   Filing Party:

_____

(4)   Date Filed:

_____

PRELIMINARY COPY

**ENERGY HOLDINGS LIMITED LLC**
**G. WILLIAM EASON**
**KARL W. MILLER**

, 2008

Dear Fellow MMC Stockholder:

**WITH THE ENCLOSED PROXY STATEMENT AND THE ACCOMPANYING BLUE PROXY CARD, ENERGY HOLDINGS LIMITED LLC ("EHL"), TOGETHER WITH G. WILLIAM EASON AND KARL W. MILLER, ARE SOLICITING YOUR PROXY FOR THE ANNUAL MEETING OF STOCKHOLDERS OF MMC ENERGY, INC. ("MMC"), TO BE HELD ON MAY 28, 2008, IN SUPPORT OF THE ELECTION OF SEVEN NOMINEES TO REPLACE ALL OF THE SEVEN INCUMBENT DIRECTORS PROPOSED FOR ELECTION BY MMC.**

**IN ADDITION TO MESSRS. EASON AND MILLER, OUR NOMINEES TO SERVE AS DIRECTORS OF MMC ARE KETHEESCH ARAN, JOSEPH HEARNE, KEVIN MCCONVILLE, RAIFORD TRASK, JR. AND TONY VALENTINE (THE "NOMINEES"). THEIR BIOGRAPHICAL INFORMATION AND QUALIFICATIONS ARE INCLUDED IN THE ENCLOSED PROXY STATEMENT.**

Our slate includes energy industry executives with proven track records and individuals with entrepreneurial talent who understand the dynamics and challenges of managing a micro cap growth company and the operational and credit challenges of managing unregulated power generation assets in today's market. Our Nominees include major MMC stockholders who invested in MMC at its inception and have significant capital at risk, **JUST LIKE YOU**.

EHL was formed by the entrepreneurial and execution focused MMC founding stockholders in order to respond to the many opportunities that exist currently in the energy industry and specifically within the electricity generation segment.

Additionally, EHL was formed to address the substantial deterioration in MMC's stockholder value, the continued lack of liquidity of MMC's shares and to replace the incumbent MMC board. EHL is a significant stockholder beneficially owning 559,386 shares of MMC common stock, or approximately 4% of the outstanding shares.

Our Nominees are excited about creating an energetic, dynamic, results driven and execution oriented team who we believe will raise investor confidence and move MMC towards realizing its true value. Our Nominees have committed not to collect fees for MMC board service or meetings, substantially reducing expenses, preserving cash and illustrating their commitment to MMC and its stockholders. **Additionally, our Nominees will not grant any further "change of control" benefits of the type which the current MMC board bestowed to management, without obtaining prior stockholder approval.**

EHL, G. William Eason and Karl W. Miller, MMC's founder, have aligned to file this proxy statement due to their passionate belief that MMC needs an immediate leadership change – both at the board and management levels — to provide MMC the ability to grow and prosper. Mr. Miller has a deep understanding of MMC, its existing assets, its capital structure and the segment of the market in which MMC competes. Most importantly, he has the vision required to lead MMC to the next plateau. Mr. Miller is a driven and execution orientated energy industry executive, who built MMC from its inception and led a very successful IPO in June 2007. Mr. Miller is a significant paid in stockholder, owning 711,328 shares of MMC common stock, or approximately 5% of the outstanding shares. Mr. Miller has committed to invest up to an additional $1 million in MMC common stock if our slate is elected, further aligning the interests of the new board and new management with stockholder interests.

EHL and Mr. Miller together own approximately 9 percent of MMC's outstanding common stock.

Mr. Miller previously served in various executive positions at MMC, including Chairman of the Board, Chief Executive Officer and President. Mr. Miller has dedicated many years of his professional life, dating back to 2002, to the development and growth of MMC both as a private and public company. Mr. Miller stepped down as an executive of MMC in December 2007 and, as required by MMC as a condition to the payment of his severance benefits, resigned from the Board in February 2008.

If our Nominees are elected, they will use their best efforts to elect Messrs. Aran, McConville and Miller to executive officer positions with MMC. EHL and other stockholders have prevailed upon Mr. Miller to return to MMC and to continue leading MMC forward through its growth and development phase to a sustained profitable company for the benefit of all stockholders. Our Nominees will surround Mr. Miller with a new board of directors with entrepreneurial talent, an understanding of the dynamics and challenges of managing a growth business and who possess broad and deep experience within the energy industry.

EHL, its management team and Mr. Miller are committed to aggressively moving MMC forward, but doing so with a disciplined commitment to a strategy that is constantly responding to a changing market. This is central to MMC realizing revenue growth, greater profitability, reduction in expenditures, a vibrant transaction pipeline and, ultimately, creation of value. Our slate desires to provide the leadership necessary to attract a management team to execute a business plan to grow MMC, for the benefit of all stockholders.

- Executive Management: We have announced the senior management team which our Nominees intend to appoint if elected. This team will work in coordination with Mr. Miller on growing MMC. Our Nominees intend to pursue a Western states strategy, with a particular focus upon the California market. Our proposed management team and directors intend to actively operate the MMC business and grow long term stockholder value through dynamic, "hands on" and energetic leadership.

- Revenue Growth Through Asset Acquisition and Development Pipeline: EHL, separate and apart from MMC, is in various stages of negotiation with multiple industry counterparties on a number of energy projects and expects to sign letters of intent to acquire certain energy assets. While in its early stages, EHL believes that its transaction pipeline is exciting and executable and intends to aggressively move forward to fund and acquire assets over the next several months. EHL intends to transfer its transaction pipeline to MMC, without cost or premium, assuming a successful proxy contest. EHL's acquisition and development strategy concentrates on the Western states with a particular focus on the California market.

- Cost Control: The Nominees will relocate MMC's executive management team to Southern California, providing an efficient execution of its business strategy and allowing close proximity to MMC's existing projects and other targeted energy assets. Our Nominees also plan to close MMC's New York City offices, to sever MMC's engagements with duplicative legal and consulting firms and to integrate MMC's infrastructure, significantly reducing operating expenses and creating greater efficiencies of scale.

- Director Fees: Our Nominees will not accept fees for their services to the MMC Board of Directors. MMC is a micro-cap company and many of our Nominees are "paid in" stockholders whose economic interest is closely tied to MMC's performance and success. This commitment eliminates the large fees currently paid by MMC to its five outside directors.

We believe that MMC will benefit immediately upon the election of our Nominees through the contribution of EHL's acquisition and development transaction pipeline referred to in the proxy statement. Consistent with the elimination of expenses referred to above, EHL seeks no remuneration for the potential stockholder value these transactions may create.

2

Most importantly, our Nominees and proposed executive management team will afford fresh viewpoints and experienced and seasoned advice and counsel to MMC. As an MMC stockholder, you have the opportunity and the right to vote for an alternative slate of director nominees, replacing the entire incumbent board. Our Nominees are experienced and have a clear vision and the expertise to manage and lead MMC during what could be a period of significant growth, rather than the "status quo".

Our Nominees are highly qualified and experienced, and have impressive and diverse backgrounds in energy, business, operations and development, risk management, finance and real estate. As a group of professionals, they understand the importance of a board of directors in setting the direction and culture of a micro-cap public company.

As major stockholders focused on creating greater value for all MMC stockholders, we believe it is time for a change in MMC's governance. In recent months, we have made recommendations to MMC in an attempt to assist it in growing its revenues, reducing its cost structure, enhancing its profitability and reestablishing credibility and confidence of stockholders. There is significant work to be done if MMC is to realize its true value potential. **Our Nominees are committed to undertaking whatever is necessary to reestablish MMC as a viable company with great growth potential, in a market segment that is burgeoning with opportunity and thereby create value for its stockholders.** We are very proud of our slate and feel confident that if investors take a cold, hard look at the opportunities that exist within the energy industry today, and the state of affairs within MMC, there is every reason to elect our Nominees. Now is the time to elect a new entrepreneurial board and management team that understands the realities of micro cap growth companies and the operational and credit challenges of managing unregulated power generation assets in today's markets.

MMC can be a great company again and we are determined to create an energetic, dynamic, results driven and execution oriented team to move MMC forward. We want a higher share price based on the prospects of the underlying business driven by experienced directors and management.

REMEMBER, IN THE THIRD QUARTER OF 2007, UNDER MR. MILLER'S LEADERSHIP, MMC RECORDED EARNINGS OF $.05 PER SHARE! EARNINGS FOR A COMPANY THIS SOON AFTER ITS IPO IS VERY RARE AND A TESTAMENT TO HIS LEADERSHIP.

**WE DO NOT BELIEVE THAT THE INCUMBENT SLATE HAS PROVIDED REASONS FOR ANOTHER YEAR AT THE HELM OF MMC**

If you believe that a change in MMC's board is beneficial to stockholders, you must act now by returning the **BLUE proxy card** to elect our Nominees at the 2008 Annual Meeting. Our proxy statement also solicits your vote for two amendments to MMC's Bylaws as described in the accompanying proxy statement.

Our Nominees include stockholders just like you. Their interests are aligned with your interests and those of all stockholders. The choice is clear. The choice is yours!

We urge you to consider carefully the information contained in our proxy statement and then support our efforts as stockholders by marking, signing, dating and returning the enclosed **BLUE proxy card** to vote for our Nominees and our other proposals.

3

IT'S TIME TO GET BACK TO WORK!

If you have any questions or require assistance with your vote, please contact EHL at the contact number listed below. Unlike many boards of directors, our slate welcomes questions and thoughts of stockholders. EHL is open to speaking with you at anytime consistent with our policy of transparency.

Thank you for your support,

Energy Holdings Limited LLC
G. William Eason
Karl W. Miller

**Energy Holdings Limited LLC**
**P.O. Box [              ]**
**Wilmington, NC [              ]**

**Call Toll–Free: 1-888-353-1113**

4

PRELIMINARY COPY

2008 ANNUAL MEETING OF THE STOCKHOLDERS
OF
MMC ENERGY, INC.

———————————————

PROXY STATEMENT
OF
ENERGY HOLDINGS LIMITED LLC
G. WILLIAM EASON
KARL W. MILLER

———————————————

This Proxy Statement and the accompanying **BLUE proxy card** are being furnished to stockholders of MMC Energy, Inc. ("MMC" or the "Company") in connection with our solicitation of proxies to be used at the 2008 Annual Meeting of Stockholders of MMC, including any adjournments, postponements, reschedulings or continuations thereof and any meeting which may be called in lieu thereof (the "Annual Meeting"). The Annual Meeting is scheduled to be held on May 28, 2008, at 9:00 a.m., local time, at Le Meridien Hotel, 333 Battery Street, San Francisco, California. The principal executive offices of MMC are located at 26 Broadway, Suite 907, New York, NY 10004. Our proxy statement and the accompanying **BLUE proxy card** are first being furnished to stockholders on or about               , 2008.

At the Annual Meeting, we are seeking your support for the following:

1. To elect the following slate of director nominees: Kevin McConville, Ketheesch Aran, Tony Valentine, Karl W. Miller, G. William Eason, Joseph Hearne, and Raiford Trask, Jr. (the "Nominees"), each to serve for a one–year term until the Company's 2009 Annual Meeting of Stockholders ("Proposal 1");

2. To amend the MMC Bylaws to establish an age limitation for directors providing that no person shall be eligible to be elected as a director for a term which expires after he or she reaches age 72 ("Proposal 2");

3. To repeal each provision of the MMC Bylaws and any and all amendments to the Bylaws (whether effected by supplement to, deletion from or revision of the Bylaws) since March 7, 2008 and before the effectiveness of the foregoing Proposals and the seating of the Nominees on the Board, other than those provisions which were duly adopted by the stockholders of MMC and those provisions which under Delaware law cannot be repealed by the stockholders of MMC, and to provide that, without the affirmative vote of the holders of a majority of the stock of MMC having voting power, MMC's Board of Directors may not thereafter amend any section of the Bylaws affected by such repeal or adopt any new Bylaw provision in a manner which serves to reinstate any repealed provision or adopt any provision having a similar effect as the repealed provision ("Proposal 3", and collectively with Proposals 1 and 2, the "Proposals").

**OUR NOMINEES ARE COMMITTED TO ACTING IN THE BEST INTEREST OF THE COMPANY'S STOCKHOLDERS. WE BELIEVE THAT YOUR VOICE IN THE FUTURE OF MMC CAN BEST BE EXPRESSED THROUGH THE ELECTION OF OUR NOMINEES AND THE APPROVAL OF OUR OTHER PROPOSALS WHICH ARE FURTHER DISCUSSED HEREIN. ACCORDINGLY, WE URGE YOU TO VOTE YOUR BLUE PROXY CARD FOR OUR NOMINEES AND FOR THE APPROVAL OF OUR OTHER PROPOSALS.**

**WE ARE MAKING THIS SOLICITATION ON OUR OWN BEHALF AND NOT ON BEHALF OF THE BOARD OF DIRECTORS OR MANAGEMENT OF MMC. EXCEPT AS DISCUSSED HEREIN OR IN THE 2008 PROXY STATEMENT OF MMC, WE ARE NOT AWARE OF ANY OTHER MATTERS TO**

BE BROUGHT BEFORE THE ANNUAL MEETING. SHOULD OTHER MATTERS, WHICH WE ARE NOT AWARE OF A REASONABLE TIME BEFORE THIS SOLICITATION, BE BROUGHT BEFORE THE ANNUAL MEETING, WE WILL VOTE THE PROXIES WE HOLD ON THOSE MATTERS IN OUR DISCRETION.

IF YOU HAVE ALREADY SENT A WHITE PROXY CARD FURNISHED BY MMC MANAGEMENT TO MMC, YOU MAY REVOKE THAT PROXY BY SIGNING, DATING AND RETURNING THE ENCLOSED BLUE PROXY CARD. THE LATEST DATED PROXY IS THE ONLY ONE THAT COUNTS. ANY PROXY MAY BE REVOKED AT ANY TIME PRIOR TO THE ANNUAL MEETING BY EITHER DELIVERING A WRITTEN NOTICE OF REVOCATION OR A LATER DATED PROXY FOR THE ANNUAL MEETING TO US OR BY VOTING IN PERSON AT THE ANNUAL MEETING.

2

**IMPORTANT**

The election of the Nominees requires the affirmative vote of a plurality of the votes cast, assuming a quorum is present or otherwise represented at the Annual Meeting. That means that the director nominees with the most votes for available board seats will be elected. Accordingly, your vote is important, no matter how few shares of common stock of MMC (the "Shares") that you own. We urge you to mark, sign, date, and return the enclosed **BLUE proxy card** today to vote "**FOR**" the election of our Nominees and "**FOR**" our other Proposals discussed herein.

**WE URGE YOU NOT TO SIGN ANY PROXY CARD SENT TO YOU BY MMC. IF YOU HAVE ALREADY DONE SO, YOU MAY REVOKE YOUR PROXY BY DELIVERING A LATER–DATED BLUE PROXY CARD IN THE ENCLOSED POSTAGE–PREPAID ENVELOPE, OR BY VOTING IN PERSON AT THE ANNUAL MEETING.**

According to the Annual Report on Form 10–K of MMC for the fiscal year ended December 31, 2007 (the "MMC 2007 Form 10–K"), filed with the Securities and Exchange Commission on March 12, 2008, there were an aggregate of 13,917,347 Shares issued and outstanding. Our Nominees and Energy Holdings Limited LLC ("EHL") are deemed to beneficially own (as beneficial ownership is defined in Rule 13d–3 under the Securities Exchange Act of 1934, as amended), in the aggregate, 1,278,775 Shares, representing approximately 9.1% of the Shares, based upon the amount of Shares reported to be issued and outstanding in the MMC 2007 Form 10–K. Please see Annex I for additional information about the Nominees and EHL, including their beneficial ownership, and purchases and sales of Shares.

Only holders of record of Shares as of the close of business on March 31, 2008 (the "Record Date") are entitled to notice of, and to attend and to vote at, the Annual Meeting. According to the proxy statement of MMC, as of the Record Date, there were 14,144,347 Shares outstanding and entitled to vote at the Annual Meeting. As of the Record Date, our Nominees and EHL are deemed to beneficially own (as beneficial ownership is defined in Rule 13d–3 under the Securities Exchange Act of 1934, as amended), in the aggregate, 1,278,775 Shares, representing approximately 9.0% of the issued and outstanding Shares (based upon the Shares stated to be issued and outstanding as of the Record Date by MMC in its proxy statement).

If you have any questions, require assistance in executing your **BLUE proxy card**, need additional information concerning these proxy materials or need additional copies, please contact us as follows:

**Energy Holdings Limited LLC**
**P.O. Box [            ]**
**Wilmington, NC [            ]**

**Call Toll–Free: 1-888-353-1113**

3

## REASONS WHY WE ARE SEEKING TO
## REPLACE THE ENTIRE BOARD OF DIRECTORS OF MMC

EHL was formed by the entrepreneurial and execution focused MMC founding stockholders in response to the substantial attractive opportunities prevalent in the U.S. electricity generation and energy industry as well as to seek to replace the incumbent MMC board so to be able to grow MMC and increase value for all stockholders.

Although EHL was formed only early this year, its executive management team is very seasoned and has already identified and engaged in discussions for the acquisition of multiple energy projects that are in various stages of completion (existing and operational, existing and mothballed, in late stage construction, in pre-construction and in early stage development). Our Nominees (other than Mr. Miller) are members of EHL or its senior management team. The discussion below of EHL's strategy and current activities is designed to illustrate the dynamic growth possibilities they can offer to MMC when our slate is elected. If our Nominees are elected, EHL intends to transfer all of its interests in projects to MMC.

EHL is in discussions and negotiations with several companies and asset owners and has issued offer letters in some cases. EHL has executed a letter of intent to construct a solid fuel power plant in the Western U.S. **EHL management is in discussions with several funding sources for the financing of its acquisition and development program**. A summary of the energy projects currently in EHL's pipeline is as follows:

| Project Status | Projects | Project Size (MW) | Estimated Capital Required ($ in millions) |
|---|---|---|---|
| Letters of Intent Signed | 1 | 25 | $ 42.0 |
| Letters of Intent in Process | 1 | 50 | $ 100.0 |
| Development Bids w/deposits | 1 | 15 | $ 22.5 |
| Discussion in Process | 6 | 155 | $ 170.0 |
| Total | 9 | 245 | $ 294.5 |

EHL's involvement in each project is at a relatively early stage. No financing commitments have been received and final due diligence has not been completed with respect to any of the projects. Therefore, no assurances can be made regarding EHL's ability to complete these projects or their success should they be completed.

Should our Nominees be elected, EHL will cease seeking opportunities for itself and its management team will begin to serve as MMC's management, solely for the benefit of MMC and its investors. EHL plans to fund future projects in a manner and with a philosophy that protects stockholders from dilution but provides MMC with accretive growth opportunities.

We believe that projects that meet the rigorous due diligence discipline that the company and the market require can be funded accretively utilizing project level equity and project level debt. Free cash flow (after reserves and assuming debt service coverage ratios have been met per credit agreements) will be distributed to MMC at the parent company level. In addition, utilizing this framework, MMC will receive compensation from the project for operations, scheduling, dispatch, energy procurement, bonuses for optimal operations and other enhancements emanating from the facilities' optionality.

Projects of significant size and desirability can be funded with MMC equity raised at the parent, or holding company level. We intend that such projects must not only meet rigorous due diligence tests, but will be subjected to accretion analysis ensuring existing stockholders are not diluted. In order to meet the criteria for the sale of additional equity, any proposed acquisition or development opportunity must demonstrate increased earnings per share and MMC must sell the "new" equity based upon the acquisition's accretive characteristics. The success of a

4

board of directors and its management lies in its ability to raise sufficient equity and the appropriate amount of debt to fund such an acquisition on an accretive basis. If the "new" equity cannot be raised on a non-dilutive basis, management should not move forward on the proposed acquisition.

EHL is seeking to acquire and control niche opportunities in the electricity generation market for both natural gas and clean coal fueled assets as well as alternative and renewable ("green") energy projects. EHL is also preparing to respond to several upcoming RFP's by Western utilities for alternative and renewable energy sources. However, EHL also intends to "opportunistically" exploit ownership benefits of assets in locations not conforming to the stated strategy. Each transaction that does not meet the stated strategy will be evaluated internally with greater scrutiny, seeking to ensure, that if pursued, the project is "extraordinary" from a return perspective, creates synergies or economies of scale and/or creates a new platform that in management's opinion warrants pursuit.

EHL targets the Western United States, with particular focus upon California to execute its energy acquisition and development strategy. Our Nominees will name a seasoned and execution orientated energy management team to operate MMC from May 28th onward. The executive management team will be located in Southern California to ensure a cohesive execution of the company's strategy. Initial staffing will include two EHL senior executives (management) along with two or three analyst/associates. Chadbourne & Parke LLP has been retained as legal counsel.

EHL intends to utilize existing relationships with industry experts to facilitate scalable commercial structures, with engineering firms, environmental consultants, land management firms, and commodity management.

**Substantial Attractive Opportunities are Prevalent in the U.S. Electricity Generation and Energy Industry**

The partial deregulation of the electricity and utilities industry in the United States has led to an increased level of complexity of operations and related transactions over the past ten years. There are compelling opportunities for development, re-powering and the restructuring of contractual commitments and obligations of existing electricity generation assets. The level of transaction complexity has risen tremendously during this timeframe and it is paramount that a seasoned and execution oriented management team, such as the group that EHL has assembled, be in place to originate, develop, close and "risk manage" such transactions and optimize revenue.

We believe that there are particularly attractive opportunities to develop and acquire electricity generation assets and participate in the renewable ("green") energy markets. Additionally, current private equity and hedge funds, as well as public entities that own sub-performing assets, are aggressive sellers due to the current disruptions in the credit and capital markets. We believe that the "tough credit" nature of these assets offers attractive acquisition and development opportunities and is central to EHL's strategy and the strategy that we propose for MMC.

EHL intends to acquire, re-power and develop natural gas, clean coal and renewable assets in key geographic transmission and energy-constrained locations such as California, Arizona, Nevada, New Mexico and Colorado. EHL intends to specifically focus on existing assets, both operational and non-operational, in the Western U.S. We intend to maximize environmental emission and green credits and fuel efficiency. EHL and our Nominees, if elected, will select as a segment of focus, projects that are within close proximity to industrial facilities with heavy steam/power requirements. We also intend to identify late stage development projects that have gained site control ("land") and are moving through the permitting process. EHL will also seek opportunities within small public and private companies that may contain or represent orphaned assets due to weak management and capital constraints. These assets fall below the investment criteria of large, well capitalized buyers. Acquisition multiples will vary by asset, location, and contract structure. EHL expects this to be particularly true in the renewable energy sector. Our Nominees intend to implement these strategies at MMC if elected.

Despite the current disruptions in the credit and capital markets, we believe debt and equity is available for well structured energy transactions and credible management teams. We believe significant risk adjusted returns can be realized by asset owners in optimal locations such as the Western U.S., particularly California and the desert southwest. Natural gas fueled plants should hold a big advantage relative to coal or nuclear with regard to re-powering

5

opportunities. Across Western U.S. markets, natural gas is the primary fuel of choice and it is often referred to as being "on the margin" reflecting the need for efficiency, emissions credits and operational flexibility, which natural gas offers. "On the margin" allows companies to produce electricity with a level of certainty that sales revenue will exceed costs on an operating basis. This component is central to the strategy that our Nominees will implement at MMC after election, as retrofitted projects will be more efficient than the plants with which they compete, considering the market clearing price is set based on a group of less efficient, older facilities.

In California, ancillary services, which are products provided by power plants that are needed to enable the power grid to function properly, such as peaking services and ancillary services, can be sold at a premium. MMC was denied payment by the California Independent System Operator or CAISO for such services. MMC neglected to file a complaint seeking reinstatement of payments from the CAISO with the Federal Energy Regulatory Commission (FERC), the agency charged with resolving such claims for six months. As a result, it is possible that MMC will have to forfeit payments for ancillary services that it provided to CAISO during 2006 and 2007 if it fails to persuade FERC that it is entitled to revenues for these periods and it may also forfeit all such future potential revenues.

Energy demand in California and the desert southwest is growing in excess of 3% per annum, which is substantial in the utility industry. Nevada is experiencing peak power shortages and it is evident that the rest of the desert southwest is experiencing similar shortages due to rising demand for stable power sources.

Driven by the renewable portfolio standards ("RPS") mandated at the California state level and transportation fuel standards at the federal level, renewable and alternative energy projects represent another significant area of opportunity. Renewable energy from wind, solar, geothermal, biomass and biodiesel projects have become attractive as states strive to satisfy RPS. Twenty percent of electric utility sales must be derived from renewable sources by 2010 per a recent California mandate. Other alternative sources such as ethanol projects will create financial restructuring opportunities as they experience market challenges and disruptions in operations from macroeconomics forces. Additionally, the regulatory environment encourages clean and efficient generation and is expected to improve significantly in the near term.

EHL's geographic focus will be on the Western U.S. California is heavily dependent on electricity imports from other Western states, which leaves it vulnerable to critically low (<5% peak day) reserve requirements. The neighboring states of Arizona and Nevada are experiencing explosive load growth further reducing their reserve margins (reserve power) and also limiting their export capability to California. Transmission constraints limit the ability of hydroelectric and coal/nuclear resources to meet energy and reliability needs of California and the Western U.S. region. Additionally, many existing nuclear facilities are aging and experiencing operational problems. Many management teams are unable to compete in a rapidly changing and complicated energy market. There are existing smaller assets whose long term power contracts are terminating or have terminated that will require refurbishment and re-powering to satisfy the changing efficiency and environmental standards. The California energy system efficiency is currently below desired levels. In addition, the system is faced with transmission congestion, requiring near/long term solutions in generation and transmission. It generally takes 5-7 years or longer to permit and build new transmission lines due to difficulty in obtaining rights of way. New large base-load electricity generation assets, while required, are difficult to construct due to the difficulty in obtaining the necessary permits, water rights, transmission connections, and emission credits.

Given the regulatory, environmental and efficiency factors impacting the generation and transmission of electric power, EHL intends to, and upon election our Nominees would cause MMC to, focus on niche-based assets that contain significant inherent value and require the structuring and operational expertise of our management team. Niche opportunities mistakenly convey a sense of "one off" transactions. However, in this instance, the concept is a misnomer, as we believe that there is a sufficient magnitude of "niche" opportunities to create and grow a viable company. EHL's management team has identified and is currently exploring several value-added investment opportunities that include:

- Acquisition of a 25MW project nearing mechanical completion. EHL has signed an offer letter with the owners for this $42 million acquisition.

- EHL has responded to a renewable RFP by a credit worthy western electric co-operative; EHL's proposal is to develop and construct a 15 MW solid fuel fired power plant using waste wood and tire derived fuel for emission credits.

- EHL has issued an offer letter to the developer of a fully permitted 50MW power project in the Northeast U.S. for the rights to construct a natural gas-powered project to meet power shortages in congested locations on the transmission grid. This project, while outside of the western region, is reflective of the need for EHL to be flexible and opportunistic.

- EHL is in early stage discussions with two industrial facilities in the Western U.S. with regard to developing a solid fuel power plant to supply electricity.

- EHL is in negotiations to acquire and repower two existing gas fired power plants in the Western U.S. within close proximity of energy intensive industrial facilities.

- EHL is evaluating the potential acquisition and re-commissioning and/or re-powering of two biomass projects in the Western U.S.

- EHL is evaluating the opportunity to develop and construct several natural gas fueled peaker facilities adjacent to identified wind parks in the Tehachapi and Palm Springs areas of California.

- EHL is evaluating multiple development sites available in California, Arizona and Nevada for green field power plant development projects.

Other opportunities pursued by EHL include the following:

- Utilities in the Southwest have issued multiple requests for proposals for all renewable power to satisfy RPS standards. EHL is in the process of responding to various RFPs.

- In discussions to joint venture with other renewable project developers.

These projects are speculative and no financing commitments have been received and due diligence has not been completed for any of the projects. No assurances can be made regarding EHL's ability to complete these projects or their success should they be completed.

We believe the combination of the above factors favors EHL's strategy of growth in the power generation sector. We believe that EHL and its management team are well positioned to achieve significant growth and the accompanying earnings over the next several years and to carry that strategy to MMC.

## UNDERSTANDING THE BACKGROUND OF MMC ENERGY

2003-2004:     Miller McConville & Co. ("MMC") founded by Karl Miller and Kevin McConville as a private acquisition company. MMC placed bids for energy assets in U.S. and UK power and gas markets, backed by large cap private equity, hedge funds and other financial institutions.

2005:     Formed MMC Energy North America, LLC

- Contracted to acquire Chula Vista and Escondido Power Plants in San Diego.

2006:     Closed approximately $7 million in equity and debt agreements to acquire Chula Vista and Escondido plants.

7

- $3.5 million Debt Facility 100% personally guaranteed by Karl Miller.

- Closed acquisition of Chula Vista and Escondido for approximately 1.3X EBITDA, believed lowest acquisition comparable in California at that time.

2006:    Closed $12 million PIPE transaction comprised of primarily retail investors and reverse merger thereby causing MMC to become a public company

- Retail offering of 12 million shares of common stock $10.00/share, adjusted for reverse split.

- Protected MMC capital structure: no warrants or convertible or preferred stock issued.

- Proceeds used to acquire and re-commission Mid Sun Power Plant at approximately 5X EBITDA, another very low acquisition comparable.

2007:    McGuire Woods fraud matter discovered

- Louis Zehil, partner of McGuire Woods law firm purchased/sold one million MMC common shares illegally into market substantially depressing stock price on a very small public float

- We attribute the MMC stock price decline in late 2006 primarily to Zehil illegally selling shares

2007:    Effectuated 1:10 reverse split of MMC Common Stock

- Merriman Curhan Ford recommended reverse split of MMC common stock

- To facilitate a listing on NASDAQ Global Market and support common stock offering

- Listed MMC on NASDAQ Global Market under ticker MMCE

2007:    Closed $50 million common stock offering, dedicated use of proceeds

- Merriman Curhan Ford & Company lead placement agent, Sanders Morris Harris co-manager

- Sold approximately 9 million shares of common stock priced at $5.50/share

- Protected MMC capital structure: no warrants or convertible or preferred stock issued

- $38 million of offering proceeds dedicated to fund 100MW Chula Vista and 50MW Escondido power plant upgrades in San Diego, California

- Remainder of net offering proceeds after banking fees dedicated for working capital purposes

8

### MILESTONES ACHIEVED UNDER MR. MILLER

The following are significant milestones that we believe were achieved for MMC under Mr. Miller's leadership.

- **Raised capital efficiently and protected MMC stockholders from dilutive securities issuances in micro cap market**
    - Left MMC with approximately $47MM in cash and virtually debt free
    - MMC posted record earnings of .05 per share in third quarter 2007—the last full quarter under his leadership
    - Protected stockholders from dilutive capital structure
        - No warrants or convertibles or preferred stock issued

- **Prudently deployed Company capital to acquire deep value and accretive power generation assets**
    - Acquired Chula Vista and Escondido for approximately 1.3X EBITDA or $65/Kw
        - We believe to be the lowest power generation acquisition comparable in California to that date
    - Acquired Mid Sun Power Plant for approximately 5X EBITDA or $250/Kw, very low acquisition comparable in California

- **Advanced the critical Chula Vista and Escondido power plant upgrade initiatives**
    - Filed California Energy Commission Permit Application for 100 MW Chula Vista Energy Efficiency Upgrade
        - Permit Application has been deemed complete
    - Filed conditional use permit for 50MW Escondido facility upgrade with City of Escondido
        - Passed Design Review Board, proceeded to Planning Commission
    - Completed Request for Offers for long lead time major equipment procurement
        - Turbines, Transformers, Catalysts
    - Sourced major long lead time equipment and prepared orders and initial contracts with equipment vendors

- **Managed risk to optimize profitability**

9

- Contracted a substantial portion of capacity long-term to investment grade counterparties

- Qualified MMC generation facilities to sell capacity and provide premium ancillary services in CAISO

- Aligned MMC generation assets cost structure to correspond better to MMC revenue streams

### CHRONOLOGY OF EVENTS LEADING UP TO OUR DECISION TO REPLACE THE ENTIRE BOARD OF DIRECTORS OF MMC AND INITIATE THIS PROXY SOLICITATION

Over the past several months we have grown very concerned about what we perceive as the loss of investor confidence in MMC and the substantial deterioration in stockholder value demonstrated by MMC's severely depressed stock price.

EHL made multiple attempts to send a firm message to the MMC board to make perfectly clear its intentions to dissuade the board from pursuing any ill advised transactions, such as attempting to sell any assets without stockholder approval or to redirect cash to unauthorized uses. EHL also reiterated on multiple occasions its request for the MMC board to use cash for the purposes set forth in MMC's June 2007 prospectus.

On March 7, 2008 EHL delivered its first letter to the MMC board. EHL advised the MMC board that, in its opinion, the board needed to demonstrate actions in the best interests of its stockholders and that EHL intended to file a Schedule 13D with the Securities and Exchange Commission (the "SEC"). EHL and Messrs. G. William Eason and Karl W. Miller simultaneously filed a Schedule 13D disclosing their beneficial ownership of approximately 9% of MMC's outstanding shares and their intent, among other things, to nominate a slate of directors for MMC at its May 28, 2008 stockholder meeting. Although the Schedule 13D disclosed Mr. Miller's beneficial ownership of 5% of MMC's outstanding shares, the MMC proxy statement for its 2008 Annual Meeting failed to disclose Mr. Miller's 5% beneficial ownership as required by SEC rules. Since EHL and other stockholders filed a Schedule 13D, the critical situation at MMC has become worse and made stockholder rights a larger issue.

EHL also requested the MMC board move its annual meeting of stockholders to April 2008 so that stockholders could address the critical issues facing the company and vote on a new slate of directors to lead MMC forward. **MMC'S BOARD CHOSE TO IGNORE THIS REQUEST**.

On March 11, 2008, MMC conducted an earnings teleconference where management did not discuss fourth quarter 2007 results, accepted only one question, and announced that its current CEO would spend time in California — in response to EHL's criticism of a lack of a California presence and the unnecessary expense of the New York headquarters. MMC did not announce, however, the closing of the New York office to conserve cash.

On March 20, 2008, EHL and Messrs. Eason and Miller notified MMC, as required by MMC's advance notice Bylaw, that they intended to nominate director candidates and make other proposals at MMC's 2008 Annual Meeting of Stockholders and provided the consents of, and information regarding, the Nominees and filed an Amendment to the Schedule 13D disclosing their Nominees.

On March 21, 2008, MMC's board announced it had retained Merriman, Curhan and Ford to assist MMC in developing "strategic alternatives" for the company. At this stage of development, MMC's optimum strategy should have been clear to those experienced in the energy industry. Simply put, MMC should do whatever is necessary to complete the existing Chula Vista and Escondido upgrade projects, pursuant to and in conformity with the use of proceeds contained in MMC's June 2007 prospectus and registration documents and do so without diluting

10

stockholder value. Additionally, MMC should be seeking growth opportunities that are accretive to investors and it is our belief that someone inside MMC should be charged with business development or acquisition responsibilities.

On March 26, 2008, MMC's board announced a share repurchase program, an action that concerned EHL as well as other stockholders. While the intent to raise MMC's share price is a goal shared by all investors, the use of MMC's cash for this purpose, at this time, is completely inappropriate in EHL's view. Such a use of cash, with critical construction projects in process and credit markets in disarray cannot be described as in MMC's best interests. It is also inconsistent with the purpose of the offering in which the cash was raised.

In its preliminary proxy statement filing with the SEC for its 2008 Annual Meeting, the MMC board recommended a "no" vote on a proposed share buyback plan that was introduced by a stockholder who commented that MMC's share price had fallen by more than 80%. Yet the board had announced only two days earlier that it was proposing a share buyback program.

On April 4, 2008 EHL delivered its second letter to MMC. EHL advised MMC that EHL and other stockholders were serious with regard to defending, not only their rights, but the rights of all stockholders against any ill advised transactions. EHL advised the MMC board that it intended to file its proxy shortly and the recent actions of the MMC board made it clearer than ever that the EHL slate must be elected. EHL also reminded the MMC board that the cash proceeds from the June 2007 IPO and the three power generation assets located in California are the only operating assets of significance to MMC, and that it is imperative the board seriously consider its fiduciary responsibilities to stockholders and afford EHL and all stockholders a voice and a vote on any material change in the use of proceeds and business strategy outlined in the June 2007 IPO.

On April 10, 2008, MMC revealed in a Form 8-K filing that it had bestowed certain senior managers with "change in control" benefits that would cause payments, including tax gross-ups, to be made to them in the event of termination of employment after our Nominees are elected at the Annual Meeting. This will only make it more expensive for stockholders to remove the current board and management. EHL requested that this matter be put to a vote of stockholders at the annual meeting but was ignored. It is still, nevertheless — even considering the "costs" the board has created — even more important to elect our Nominees.

On April 16, 2008, pursuant to Rule 14a-6 of the Securities and Exchange Act of 1934, as amended (the "Exchange Act"), we filed our preliminary proxy statement and related form of proxy card with the SEC with respect to this proxy solicitation. On that same date, we issued a press release announcing the filing of our preliminary proxy statement.

## KEY QUESTIONS FOR OUR NOMINEES

1. Why do the Nominees want to serve on the MMC Board of Directors, a publicly traded micro-cap growth company?

Our Nominees believe that there are many attractive opportunities in the U.S. electricity generation and energy industry. They also wish to manage MMC for growth and increase value for all stockholders.

The Nominees understand how to address the challenges involved in managing and growing a micro-cap growth company. They recognize that it is necessary to focus upon operations, growth opportunities and increase the liquidity of MMC stock.

The Nominees are highly qualified and experienced with diverse backgrounds in business operations, accounting, finance, technology and real estate. They understand that the role of a board of directors is to set the direction for, and guide, the management of a public company. They understand the need for the application of rigorous financial discipline. They understand the role of a board of directors to hold management accountable for executing on board-approved strategic and operational plans that enhance stockholder value. Consistent with their fiduciary duties, they will conduct a meaningful review of MMC's operational and strategic plans to ensure the creation of stockholder value is their ultimate objective.

11

2. How did the Nominees become involved with MMC?

EHL was formed by the entrepreneurial MMC founding stockholders. The ability to develop an executable business plan and clearly articulate it to stockholders and potential investors, banks, regulators and other key stakeholders, are important elements of a professionally run public company. The Nominees have proven the ability to "wear the many different hats" necessary to execute the duties that are required. Our Nominees are convinced they can do so in a way that is superior to the existing MMC board and management.

3. How much time do the Nominees plan to spend actively engaged in MMC's business activities?

Karl Miller, Kevin McConville and Ketheesch Aran will be full time employees. Our Nominees and proposed senior management team are proven professionals who will focus upon MMC's bottom line and realize the importance of not only growing revenues but containing costs as well. We publicly stated that our Nominees will not accept payment for board service and that they commit to close MMC's New York office and relocate to southern California thus maximizing efficiency and reducing costs simultaneously.

4. Who will be responsible for transaction review and due diligence?

Transaction review and due diligence will be conducted by a team that will includes Kevin McConville and Ketheesch Aran. This is a team that brings in excess of 60 years of combined experience in executive management, operations, trading and finance in the energy sector.

5. Who will be responsible for business development?

A team that includes Karl Miller, Kevin McConville and Ketheesch Aran will spearhead business development activities. Messrs. Miller and McConville will be responsible for corporate development and Mr. Aran will be responsible for project development. This team is also part of a much larger network of senior decision makers and consultants within the energy sector that will be able to be drawn upon to uncover opportunities.

EHL is starting to develop a transaction pipeline that will become "assets" of MMC after our Nominees are elected. While these opportunities are currently speculative and it is premature to state that any of the transactions referred to will "close", they present a "snapshot" of opportunities reflecting the proactive nature of our Nominees and proposed management team. The opportunities referred to are not only demonstrative of potential future growth, but are indicative of the managerial talent and board leadership that our slate embodies.

6. Who will be responsible for regulatory matters?

Kevin McConville will manage regulatory matters. Our proposed slate and executive team have proven over the long term a commitment to the fundamentals the current energy market requires. Staying abreast of regulatory matters- at the state and federal levels-ensuring not only compliance but that every opportunity is uncovered, vetted and then optimized. This commitment requires analyzing transactions, managing due diligence, staying abreast of the marketplace, managing resources, uncovering opportunities, execution of a business plan that is focused, yet flexible, to accommodate a changing environment. These traits are not developed overnight but are based on an individual's level of experience. In this regard, we believe that our slate and executive team are clearly superior to the existing MMC board and management.

**PROPOSAL NO. 1**
**ELECTION OF DIRECTORS**

The MMC Board is currently composed of seven directors, each of whom is elected annually. At the MMC 2008 Annual Meeting, seven directors will be elected. EHL and Messrs. Eason and Miller are seeking your support at the Annual Meeting to elect our Nominees in opposition to MMC's director nominees, each to serve until the 2009 Annual Meeting of Stockholders and until his successors are duly elected and qualified or until his earlier death, resignation, or removal.

12

**The Nominees**

Set forth below are the name, age, business address, present principal occupation and employment history of each of the Nominees for at least the past five years. No Nominee is currently a director of a publicly held company. This information has been furnished by the respective Nominees. Each of the Nominees has consented to serve as a director of MMC and to be named in this Proxy Statement as a nominee. Please see Annex I for additional information about the Nominees, including their beneficial ownership, purchases and sales of Shares.

| Name, Age and Business Address | Principal Occupation or Employment During the Past Five Years |
| --- | --- |
| **Kevin McConville** (age 51)<br>*Business Address:*<br>9337B Katy Freeway, Suite 313<br>Houston, TX 77024 | Mr. McConville is an independent energy consultant and private investor. Mr. McConville was a co-founder and Managing Partner of Miller McConville & Company, the private company that eventually became MMC Energy, Inc. and its affiliates, from August 2002 to mid-2004. From 2000 to 2002, Mr. McConville was a limited partner in Powersol Trading. From 1998 to 2000, Mr. McConville was the Managing Director of Enron Capital and Trade's global industrial practice, investing debt and equity, supplying natural gas and electricity to energy intensive companies. Prior to 1998, Mr. McConville was a Vice-President of Business Development for Williams Trading, responsible for equity and debt investments in natural gas producing companies. Mr. McConville began his career at Panhandle Eastern Corporation and is trained in finance, regulatory affairs, valuation of natural pipeline and production properties, including the LNG facility. He is the Chief Operating Officer of EHL. Mr. McConville is a graduate of Drake University with a B.A. in Journalism and holds an MBA from the Houston Baptist University. |
| **Ketheesch Aran** (age 55)<br>*Business Address:*<br>10641 West Vassar Place<br>Lakewood, CO 80227 | Mr. Aran is the owner of Castle Enterprises, LLC an independent power plant developer, involved in the development of several projects in the northeast U.S. From 2002 to 2006, Mr. Aran served as Vice President of North American Power Group in charge of power plant acquisitions. From 1998 to 2001, Mr. Aran was a Senior Vice President of El Paso Merchant Energy, a subsidiary of El Paso Corporation, responsible for the acquisition and development of power generation projects. From 1990 to 1998, Mr. Aran was Vice President and Group Head, Project Finance, at Chrysler Capital Corporation in charge of equity investments in independent power projects. Mr. Aran has completed multiple power plant acquisitions in the power generation industry during his career, involving project financing, transaction structuring and turnarounds. Mr. Aran brings in-depth experience in originating, acquiring and re-structuring power generation assets. Mr. Aran is a trained commercial banker including assignments with Bank of America and Bank of Boston. Mr. Aran is the Chief Financial Officer of EHL. Mr. Aran is a graduate of the University of Sri Lanka with a B.S. in Physics and an MBA from Georgia Southern University. |

13

| Name, Age and Business Address | Principal Occupation or Employment During the Past Five Years |
|---|---|
| **Tony Valentine** (age 46)<br>*Business Address:*<br>432 Island Shores Drive<br>West Palm Beach, FL 33413 | From September 2004 until the present, Mr. Valentine has been a principal in TK Research, Inc., a private placement consulting firm servicing small manufacturing and industrial organizations. From 2002 to September 2004, Mr. Valentine was a principal in Odysseus Energy LLC focused on the acquisition of undervalued power generation assets in the United States. From 1999 to 2001, Mr. Valentine was Chief Financial Officer for Kafus Industries, an American Stock Exchange listed company that manufactured medium density fiberboard, where he directed capital raising efforts. From 1995 to 1999, Mr. Valentine was Vice President at Enron Capital and Trade where he focused on making debt and equity investments in energy-intensive industrial companies. From 1993 to 1995, Mr. Valentine was a Vice President at GE Capital where he coordinated the provision of financing services for the construction of power plants, and the acquisition of oil and gas reserves and led the restructuring of a portfolio of at-risk investments. He is the Chief Development Officer of EHL. Mr. Valentine is a graduate of The University of Tennessee with a B.S. in Chemical Engineering and holds an MBA from Harvard Business School. |
| **Karl W. Miller** (age 43)<br>*Business Address:*<br>411 Bradley Creek Point Road<br>Wilmington, North Carolina 28403 | Mr. Miller is a private investor. Mr. Miller served as Chairman and Chief Executive Officer of MMC from May 2006 through March 2007 and as President from March 2007 through December 2007. He also served as a director of MMC from its founding until February 14, 2008. Mr. Miller served as a Managing Partner of MMC Energy North America LLC, the company that eventually became MMC Energy, Inc., and its affiliates beginning in August 2002. From October 2001 through August 2002, Mr. Miller served as Senior Advisor, Europe, to Statkraft SF (Statkraft Energy Europe), an owner and manager of energy assets in Scandinavia and Europe. From January 2001 to October 2001, Mr. Miller was Senior Vice President, Head of Marketing, Business Development and Structured Transactions in North America for PG&E Corporation. Prior to that time, Mr. Miller held various executive operational and financial positions in the energy producing sector including with Electricite de France, El Paso Energy, Enron and Chase Manhattan Bank. Mr. Miller is a graduate of The Catholic University of America with a B.A. in accounting and an M.B.A. in finance from the Kenan-Flagler Business School at the University of North Carolina. |
| **G. William Eason** (age 59)<br>*Business Address:*<br>711 Forest Hills Drive<br>Wilmington, NC 28403 | Dr. Eason is a radiologist and private investor. Dr Eason is the founder of Atlantic Radiology Associates and has been its President for more than the past five years and is the co-founder of Atlantic Diagnostic Imaging Centers and has been |

14

| Name, Age and Business Address | Principal Occupation or Employment During the Past Five Years |
|---|---|
| | its President for more than the past five years. Dr. Eason is also the co-founder of The Urgent Care Centers of the Carolinas, which owns and operates three medical care facilities. Prior thereto, Dr. Eason successfully owned, operated and sold several medical diagnostic imaging companies. Dr. Eason sold Atlantic Diagnostic Imaging Centers to Alliance Imaging in a private transaction. The sale included eight imaging centers and other intellectual property. Dr. Eason is a graduate of Auburn University and The University of Alabama Medical School. Dr. Eason is a founding stockholder of MMC and is the Managing Member of EHL. |
| **Joseph C. Hearne** (age 68)<br>*Business Address:*<br>P.O. Box 22<br>Kure Beach, NC 28449 | Mr. Hearne is a real estate developer and private investor. Mr. Hearne is, and for more than the past five years has been, President of Hearne Properties, Inc., a real estate development construction and sales company located in North Carolina. Prior thereto, Mr. Hearne owned, operated and sold several auto dealerships and car rental businesses in North Carolina. Mr. Hearne is a graduate of Vanderbilt University with a B.A. in Business Administration. He is a founding stockholder of MMC and is a member of EHL. |
| **Raiford Trask, Jr.** (age 70)<br>*Business Address:*<br>1202 Eastwood Road<br>Wilmington, NC 28403 | Mr. Trask has been a real estate developer, commercial farmer and private investor for more than the past five years. Mr. Trask owns and operates multiple real estate construction and development companies in North Carolina. He graduated from the Citadel with a B.S. in Commerce. Mr. Trask is a founding stockholder of MMC and is a member of EHL. |

Except as indicated above, (i) none of the Nominees has carried on an occupation or employment, during the past five years, with MMC or any corporation or organization which is or was a parent, subsidiary or other affiliate of MMC, and (ii) none of the Nominees has ever served on the board of directors of MMC.

No family relationships exist between any Nominee and any current executive officer or director of MMC.

Except as disclosed in this proxy statement, no Nominee is involved in any material pending legal proceedings with respect to MMC.

Except as otherwise indicated in this proxy statement, there is no other arrangement or understanding between any Nominee and any other person pursuant to which he was or is to be selected as a Nominee or director, except that if the Nominees are elected, they would intend to use their best efforts to elect Messrs. Aran, McConville and Miller to executive officer positions. None of the Nominees will receive any compensation from us for being a Nominee or for their service as directors should they be elected other than out of pocket expense reimbursement

15

associated with the proxy solicitation process. If elected, the Nominees will be entitled to such compensation from the Company as is provided to non-employee directors of the Company; however, the Nominees have committed not to accept any fees for serving as a non-employee director of the Company.

Except as disclosed in this proxy statement (including Annex I attached hereto), none of the Nominees or any of their respective affiliates or associates has any substantial interest, direct or indirect, by security holdings or otherwise, in any matter to be acted upon at the 2008 Annual Meeting discussed in this proxy statement or in MMC's 2008 Annual Meeting proxy statement.

We do not expect that any of our Nominees will be unable to stand for election, but, in the event that any of such persons are unable to serve or for good cause will not serve, the Shares represented by the enclosed **BLUE proxy card** will be voted for one or more substitute nominees. In addition, we reserve the right to nominate substitute persons if MMC makes or announces any changes to the MMC Bylaws or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the Nominees. We also reserve the right to nominate additional persons if MMC increases the size of the MMC Board above its existing size. In any such case, Shares represented by the enclosed BLUE proxy card will be voted for such substitute or additional nominees. Additional nominations made pursuant to the above would be without prejudice to our position that any attempt to increase the size of the current MMC Board would constitute an unlawful manipulation of MMC's corporate machinery.

**WE STRONGLY URGE YOU TO VOTE "FOR" THE ELECTION OF OUR NOMINEES BY MARKING, SIGNING, DATING AND RETURNING THE ENCLOSED BLUE PROXY CARD IN THE POSTAGE PAID ENVELOPE PROVIDED TO YOU WITH THIS PROXY STATEMENT. IF YOU HAVE SIGNED THE BLUE PROXY CARD AND NO MARKING IS MADE, YOU WILL BE DEEMED TO HAVE GIVEN A DIRECTION TO VOTE ALL SHARES REPRESENTED BY THE BLUE PROXY CARD "FOR" THE ELECTION OF OUR NOMINEES NAMED ON THE BLUE PROXY CARD.**

PROPOSAL NO. 2
**AMENDMENT TO BYLAWS TO ESTABLISH AGE LIMITATION FOR DIRECTORS**

We are asking stockholders to amend the Bylaws of MMC to establish an age limitation for directors providing that no person shall be eligible to be elected as a director for a term which expires after he or she reaches age 72. The proposed amendment is to amend Section 2.2 of the Bylaws to add the following:

"No person shall be eligible to be elected as a director for a term which expires after he or she reaches age 72."

In MMC's proxy statement for the 2008 Annual Meeting, stockholder John J. Tennant, Jr. has proposed an age 75 mandatory retirement policy for outside directors. We agree with a mandatory retirement age for outside directors for the reasons described by Mr. Tennant. We believe, however, that it is preferable to have the fixed retirement age set forth in the Company's Bylaws and that a person should not be elected as a director for a term expiring after attaining age 72.

While the Bylaws are silent on the ability of stockholders to amend the Bylaws, Section 109 of the Delaware General Corporation Law provides that the conferral of the power to adopt, amend or repeal Bylaws upon the directors or governing body of a corporation, as the case may be, shall not divest the stockholders of such corporation of the power, nor limit their power, to adopt, amend or repeal Bylaws.

**WE STRONGLY URGE YOU TO VOTE "FOR" THE PROPOSAL TO AMEND THE BYLAWS TO** ESTABLISH AGE LIMITATION FOR DIRECTORS **ON THE ENCLOSED BLUE PROXY CARD.**

16

## PROPOSAL NO. 3
### REPEAL OF ADDITIONAL BYLAWS OR BYLAW AMENDMENTS

We are asking stockholders to repeal each provision of the Bylaws and any and all amendments to the Bylaws (whether effected by supplement to, deletion from or revision of the Bylaws) adopted since March 7, 2008 and before the effectiveness of the foregoing Proposals and the seating of the Nominees on the Board, other than those provisions which were duly adopted by the stockholders of MMC and those provisions which under Delaware law cannot be repealed by the stockholders of MMC, and to provide that, without the affirmative vote of the holders of a majority of the stock of MMC having voting power, MMC's Board of Directors may not thereafter amend any section of the Bylaws affected by such repeal or adopt any new Bylaw provision in a manner which serves to reinstate any repealed provision or adopt any provision having a similar effect as the repealed provision.

This Proposal 3 is designed to prevent the current directors of MMC from taking actions to amend the Bylaws to attempt to nullify or delay the actions taken by the stockholders under the foregoing Proposals. Based on publicly available information, the most recent amendment to the Bylaws was adopted on December 19, 2007 and no amendments after that date have been publicly disclosed.

While the Bylaws are silent on the ability of stockholders to amend the Bylaws, Section 109 of the Delaware General Corporation Law provides that the conferral of the power to adopt, amend or repeal Bylaws upon the directors or governing body of a corporation, as the case may be, shall not divest the stockholders of such corporation of the power, nor limit their power, to adopt, amend or repeal Bylaws.

**WE STRONGLY URGE YOU TO VOTE "FOR" THE PROPOSAL TO REPEAL ADDITIONAL BYLAWS OR BYLAW AMENDMENTS, AS DESCRIBED ABOVE, ON THE ENCLOSED BLUE PROXY CARD.**

### OTHER PROPOSALS

Except as discussed herein and as discussed in the 2008 proxy statement of MMC, we are not aware of any other proposals to be brought before the Annual Meeting. However, we intend to bring before the Annual Meeting such business as we determine may be appropriate, including, without limitation, nominating additional persons for directorships, or making other proposals as may be appropriate to address any action of the MMC Board not publicly disclosed prior to the date of this proxy statement. Should other proposals be brought before the annual meeting, we will vote the **BLUE proxy cards** with respect to such matters in our discretion.

### QUORUM

The holders of a majority of the number of Shares outstanding and entitled to vote at the Annual Meeting must be present in person or represented by proxy in order to constitute a quorum for the transaction of business. Abstentions and broker non-votes will be included for purposes of determining whether a quorum exists. Broker non–votes occur when brokers do not receive voting instructions from their customers on non–routine matters and consequently have no discretion to vote on those matters. If your Shares are held in the name of a brokerage firm, bank nominee or other institution, you should contact the person responsible for your account and give instructions for a voting instruction card to be issued so that your Shares will be represented and voted at the Annual Meeting.

Rule 452 of the New York Stock Exchange permits a broker member to vote on certain routine, uncontested matters without specific instructions from the beneficial owners so long as the broker has transmitted proxy material to the beneficial owner at least 15 days prior to the annual meeting of stockholders. It is our view that, to the extent that we distribute material to the brokers for forwarding on to beneficial owners, the election of directors would become a contested item and therefore the brokers will not issue a "routine" vote on behalf of the

17

beneficial owners that have not instructed the brokers as to how they wish to vote on the election of directors. If a beneficial owner wishes to vote, such owner must provide the broker with specific instruction to vote.

**REQUIRED VOTE**

According to the most recent proxy statement filed by MMC with the Securities and Exchange Commission, directors are elected (Proposal No. 1 described above) by a plurality of the votes cast, either in person or by proxy, at the Annual Meeting. That means that the director nominees with the most votes for available board seats will be elected. Only votes FOR count. Brokers do not have discretionary voting power with respect to this election of directors. Accordingly, broker non-votes will have no effect on the outcome of the election of directors.

Proposals 2 and 3 (described above) must be approved by the affirmative vote of a majority of the Shares entitled to vote on the proposal and present in person or represented by proxy at the Annual Meeting. With respect to the matters other than the election of directors, broker non–votes will not be considered to be Shares present, but abstentions will be considered to be Shares present and, therefore, abstentions will have the effect of votes against Proposals 2 and 3.

**RECORD DATE AND VOTING PROCEDURES**

According to MMC's proxy statement, as of March 31, 2008, MMC had issued and outstanding 14,144,347 Shares entitled to be voted at the Annual Meeting. Each Share is entitled to one vote on each matter submitted to a vote of stockholders. The MMC Charter denies cumulative voting rights. Only stockholders of record at the close of business on March 31, 2008 ("Record Date") will be entitled to vote at the Annual Meeting. If your Shares are registered as of the Record Date directly in your name with MMC's transfer agent, Continental Stock Transfer & Trust Company, you are considered with respect to those Shares the stockholder of record, and these proxy materials are being sent directly to you. As the stockholder of record, you have the right to submit your voting proxy directly to EHL using the enclosed **BLUE proxy card** or to vote in person at the Annual Meeting.

If your Shares are held in a stock brokerage account or by a bank or other nominee, you are considered the beneficial owner of Shares held in "street name." These proxy materials are being forwarded to you by your broker who is considered, with respect to those Shares, the stockholder of record. As the beneficial owner, you have the right to direct your broker to vote your Shares, and your broker or nominee has enclosed a voting instruction card for you to use. If your Shares are held as of the Record Date by a broker or nominee, please return your voting instruction card as early as possible to ensure that your Shares will be voted in accordance with your instructions. You are also invited to attend the Annual Meeting; however, since you are not the stockholder of record, you may not vote these Shares in person at the meeting unless you comply with the procedure described below.

If your Shares are held in the name of a custodian and you want to vote in person at the Annual Meeting, you may specially request a document called a "legal proxy" from the custodian and bring it to the Annual Meeting.

Stockholders of record may appoint proxies to vote their Shares by signing, dating and mailing the **BLUE proxy card** in the envelope provided. Whether or not you are able to attend the Annual Meeting, you are urged to complete the accompanying **BLUE proxy card** and return it in the enclosed self–addressed, prepaid envelope. All valid proxies received prior to the meeting will be voted. If you specify a choice with respect to any item by marking the appropriate box on the **BLUE proxy card**, the Shares will be voted in accordance with that specification. Shares represented by properly executed, but unmarked, **BLUE proxy cards** will be voted at the Annual Meeting FOR the election of our Nominees to the MMC Board and FOR our other Proposals described herein, and in the discretion of the persons named as proxies on all other matters as may properly come before the Annual Meeting.

You are being asked to elect the Nominees and to approve the other Proposals described herein. The enclosed **BLUE proxy card** may only be voted for the Nominees and does not confer voting power with respect to the Company's nominees. Accordingly, the **BLUE proxy card** will not provide you with the opportunity to vote for any of the Company's nominees. You can only vote for the Company's nominees by signing and returning a proxy card provided by the Company. Stockholders should refer to the Company's proxy statement for the names,

18

backgrounds, qualifications and other information concerning the Company's nominees. The participants in this solicitation intend to vote all of their Shares in favor of our Nominees and our other Proposals described herein.

       If you have any questions or require any assistance in executing your proxy, please contact us as follows:

**Energy Holdings Limited LLC**
**P.O. Box [      ]**
**Wilmington, NC [      ]**

**Call Toll-Free: 1-888-353-1113**

19

## REVOCATION OF PROXIES

Stockholders of MMC may revoke their proxies at any time prior to the time such proxies are voted by attending the Annual Meeting and voting in person (although attendance at the Annual Meeting will not in and of itself constitute revocation of a proxy) or by delivering a written notice of revocation. The delivery of a subsequently dated proxy which is properly completed will also constitute a revocation of any earlier proxy. The revocation may be delivered either to Energy Holdings Limited LLC at P.O. Box [      ], Wilmington, NC [      ] or to the Corporate Secretary of MMC at the address provided by MMC in MMC's Proxy Statement.

Although a revocation is effective if delivered to MMC, we ask that you also mail to us either the original or photostatic copies of all revocations at P.O. Box [      ], Wilmington, NC [      ] so that we will be aware of all revocations and can more accurately determine the number of proxies we receive. Additionally, we may use this information to contact stockholders who have revoked their proxies in order to solicit later dated proxies for the election of the Nominees and approval of our other Proposals described herein.

**IF YOU WISH TO VOTE "FOR" THE ELECTION OF OUR NOMINEES TO THE MMC BOARD AND/OR "FOR" OUR OTHER PROPOSALS DESCRIBED IN THIS PROXY STATEMENT, PLEASE MARK, SIGN, DATE AND RETURN PROMPTLY THE ENCLOSED BLUE PROXY CARD IN THE POSTAGE-PAID ENVELOPE PROVIDED.**

## RIGHTS OF APPRAISAL OR DISSENTERS' RIGHTS

Stockholders of MMC do not have rights of appraisal or dissenters' rights with respect to the matters described in this proxy statement.

## SOLICITATION OF PROXIES; EXPENSES

EHL and Messrs. Eason and Miller intend to deliver this proxy statement and a form of proxy to holders of at least the percentage of Shares required under applicable law to elect the Nominees and to approve the Proposals.

In connection with the solicitation of proxies for use at the Annual Meeting, we may solicit proxies in person, by mail, courier services, internet, advertisement, telephone, facsimile and by electronic mail. Proxies will be solicited from individuals, brokers, banks, bank nominees and other institutional holders. We will request banks, brokerage houses and other custodians, nominees and fiduciaries to forward all solicitation materials to the beneficial owners of the Shares they hold of record. We will reimburse these record holders for their reasonable out–of–pocket expenses in so doing. Solicitation of proxies will be made by us and any of the other Nominees, none of whom will receive additional compensation for such solicitation.

We are bearing the entire expense of this proxy solicitation. Costs related to this solicitation of proxies, including expenditures for attorneys, accountants, printing, transportation, postage and related expenses incidental to this solicitation, are currently anticipated to be approximately $450,000. We estimate that, through the date hereof, our expenses in connection with this solicitation are approximately $200,000.

## OTHER NOMINEE AND PARTICIPANT INFORMATION

In addition to EHL, each of the Nominees are deemed to be "participants" in this proxy solicitation as such term is defined under Regulation 14A of the Exchange Act. The names and business addresses of, and the present principal occupation or employment and the name, principal business and address of any corporation or other organization in which employment is carried out by, each of the Nominees is set forth above under "PROPOSAL NO. 1—ELECTION OF DIRECTORS—The Nominees."

20

On February 7, 2008, MMC and Mr. Miller entered into a Separation Agreement with respect to the termination of his services for MMC. Under the Separation Agreement, MMC paid Mr. Miller severance pay in the aggregate amount of $1,121,762 (gross), and is obligated to pay the cost of Mr. Miller's COBRA continuation coverage in MMC's medical plan for eighteen (18) months. Such amounts are in lieu of and in full satisfaction of any amounts that might otherwise be payable to Mr. Miller under any contract, plan or policy including but not limited to his employment agreement dated May 15, 2006 (the "Employment Agreement"). In consideration of the above payments, MMC and Mr. Miller agreed, among other things, that Mr. Miller would (i) release MMC from any and all claims and liability of whatever kind arising prior to February 7, 2008, including but not limited to certain claims relating to the Employment Agreement; (ii) transfer certain intellectual property rights acquired, created or maintained in connection with Mr. Miller's employment by or association with MMC; and (iii) abide by certain non-competition, non-disparagement and non-solicitation provisions set forth in the Employment Agreement. Under the Separation Agreement, MMC also agreed to release Mr. Miller from any and all claims and liability of whatever kind arising prior to February 7, 2008, with certain exceptions, and abide by a non-disparagement agreement with respect to Mr. Miller. Also pursuant to the Separation Agreement, Mr. Miller was required to resign from the Board of Directors of MMC effective as of February 15, 2008.

During 2007, Mr. Miller earned salary from MMC in capacities as its Chairman, Chief Executive Officer and President of $341,196 and a bonus of $120,000. Mr. Miller's compensation for 2006 is reported in MMC's proxy materials related to the 2008 Annual Meeting and such compensation disclosure is incorporated by reference herein.

Mr. Hearne is the father-in-law of Karl W. Miller.

Except as indicated in this Proxy Statement, none of the Nominees has carried on an occupation or employment, during the past five years, with MMC or any corporation or organization which is or was a parent, subsidiary or other affiliate of MMC, and none of the Nominees has ever served on the Board of Directors of MMC. No Nominee is involved in any pending legal proceeding with respect to MMC.

Except as set forth in this Proxy Statement (including Annex I hereto),

(i) during the past ten years, no participant in this solicitation has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

(ii) no participant in this solicitation directly or indirectly beneficially owns any securities of MMC.

(iii) no participant in this solicitation owns any securities of MMC which are owned of record but not beneficially.

(iv) no part of the purchase price or market value of the securities of MMC purchased or sold within the past two years by any participant in this solicitation is represented by funds borrowed or otherwise obtained for the purpose of acquiring or holding such securities.

(v) no participant in this solicitation is, or within the past year was, a party to any contract, arrangement or understanding with any person with respect to any securities of MMC, including, but not limited to joint ventures, loan or option arrangements, puts or calls, guarantees against loss or guarantees of profit, division of losses or profits, or the giving or withholding of proxies, provided that participants in this solicitation who were the record owner of Shares provided proxies for the voting of their Shares at the October 17, 2007 Annual Meeting of Stockholders of MMC.

(vi) no associate of any participant in this solicitation owns beneficially, directly or indirectly, any securities of MMC.

(vii) no participant in this solicitation owns beneficially, directly or indirectly, any securities of any parent or subsidiary of MMC.

(viii) no participant in this solicitation or any of his associates or immediate family members had a direct or indirect material interest in any transaction, or series of similar transactions, since the beginning of MMC's last fiscal year, or has a direct or indirect material interest in any currently proposed transaction, or series of similar transactions, to which MMC or any of its subsidiaries was or is to be a participant, in which the amount involved exceeds $120,000.

(ix) no participant in this solicitation or any of his associates has any arrangement or understanding with any person with respect to any future employment by MMC or its affiliates, or with respect to any future transactions to which MMC or any of its affiliates will or may be a party.

(x) no person, including any member of EHL, who is a party to an arrangement or understanding pursuant to which the Nominees are proposed to be elected, has a substantial interest, direct or indirect, by security holdings or otherwise in any matter to be acted on at the Annual Meeting.

(xi) no participant in this solicitation or any of his associates is party to any material proceedings adverse to MMC or any of its subsidiaries or has a material interest adverse to MMC or any of its subsidiaries.

(xii) no participant in this solicitation has held positions or offices with MMC and there is no arrangement or understanding between any participant in this solicitation and any other person(s) pursuant to which such participant in this solicitation was or is to be selected as a director or participant in this solicitation.

(xiii) there is no family relationship between any participant in this solicitation and any current director or executive officer of MMC.

(xiv) no participant in this solicitation was involved during the past five years in any of the legal proceedings of the type set forth in Item 401 (f) of Regulation S-K of the SEC Rules.

(xv) no participant in this solicitation failed to file on a timely basis reports required by section 16(a) of the Securities and Exchange Act with respect to MMC.

(xvi) no compensation was awarded to, earned by, or paid to any participant in this solicitation during MMC's last completed fiscal year that would have had to be disclosed under Item 402 of Regulation S-K of the SEC Rules if such participant in this solicitation had been nominated, or intended to be nominated, by the Board of Directors of MMC.

Annex I attached hereto sets forth, as to each participant in this solicitation, all purchases and sales of securities of MMC effected during the past two years and their beneficial ownership of Shares of MMC.

## ADDITIONAL INFORMATION

This proxy statement omits certain disclosure required by applicable law to be included in MMC's proxy statement. This disclosure includes, among other things, the securities of MMC held by MMC's directors, director nominees, management and 5% stockholders, biographical information on MMC's current directors and executive officers, information concerning executive and director compensation, and certain other information regarding the 2008 Annual Meeting. Stockholders should refer to MMC's proxy statement in order to review this disclosure. MMC's proxy statement also contains information relating to the deadline for submitting stockholder proposals for inclusion in MMC's proxy statement for MMC's 2009 Annual Meeting and the deadline for stockholders to propose business for consideration at the 2009 Annual Meeting. Accordingly, reference is made to MMC's proxy statement for such information.

Except as otherwise noted herein, the information concerning MMC has been taken from or is based upon documents and records on file with the SEC and other publicly available information. Accordingly, we do not take any responsibility for the accuracy or completeness of statements and other information taken from MMC's proxy statement or other public documents, or for any failure by MMC to disclose any events that may affect the significance or accuracy of such information.

22

      WE URGE YOU TO SIGN, DATE AND RETURN THE BLUE PROXY CARD IN FAVOR OF THE ELECTION OF OUR NOMINEES AND OUR OTHER PROPOSALS DESCRIBED IN THIS PROXY STATEMENT.

                         ENERGY HOLDINGS LIMITED LLC

                         G. William Eason
                         Karl W. Miller

Dated: April    , 2008

23

### IMPORTANT

Please review this document and the enclosed materials carefully. YOUR VOTE IS VERY IMPORTANT, no matter how many or how few Shares you own.

1.  If your Shares are registered in your own name, please mark, sign, date and return the enclosed **BLUE proxy card** to EHL in the postage-paid envelope provided today.

2.  If you have previously signed and returned a White proxy card to MMC, you have every right to change your vote to a vote FOR the election of our Nominees. You may revoke any White proxy card already sent to MMC by marking, signing, dating and returning the enclosed **BLUE proxy card** in the postage-paid envelope provided. Any proxy may be revoked at any time prior to the 2008 Annual Meeting by delivering a written notice of revocation or a later dated proxy for the 2008 Annual Meeting to us or by voting in person at the 2008 Annual Meeting. ONLY YOUR LATEST DATED PROXY FOR THE ANNUAL MEETING WILL BE COUNTED AT THE ANNUAL MEETING.

3.  If your Shares are held in the name of a brokerage firm, bank nominee or other institution, **only it can sign a BLUE proxy card with respect to your Shares** and only after receiving your specific instructions. Accordingly, please vote your Shares according to the enclosed voting instruction form or contact the person responsible for your account and instruct that person to execute the **BLUE proxy card** representing your Shares. We urge you to confirm in writing your instructions to Energy Holdings Limited LLC at the address provided below so that we will be aware of your instructions and can take steps to ensure that your instructions are followed.

4.  After signing the enclosed **BLUE proxy card**, we urge you not to sign or return the White proxy card, even as a sign of protest.

**If you have any questions, require assistance in executing your BLUE proxy card,
or need additional copies of these proxy materials, please contact us as follows:**

**Energy Holdings Limited LLC**
**P.O. Box [     ]**
**Wilmington, NC [     ]**

**Call Toll-Free: 1-888-353-1113**

ANNEX I

## SECURITY OWNERSHIP OF NOMINEES and EHL

| Nominee | Title of Class | Number of Share Beneficially Owned | Percent of Class* |
|---|---|---|---|
| EHL | Common Stock | 539,386 | 4.0 |
| Ketheesch Aran | Common Stock | 0 | — |
| G. William Eason** | Common Stock | 567,447 | 4.0 |
| Joseph C. Hearne | Common Stock | 0 | — |
| Kevin McConville | Common Stock | 0 | — |
| Karl W. Miller | Common Stock | 711,328 | 5.0 |
| Raiford Trask, Jr. | Common Stock | 0 | — |
| Tony A. Valentine | Common Stock | 0 | — |

---

\* These percentages have been calculated based on the 14,144,347 Shares stated to be outstanding as of March 31, 2008 according to the 2008 Annual Meeting proxy statement of MMC.

\*\* Mr. Eason owns directly 8,061 Shares. These Shares were acquired with personal funds. Mr. Eason has sole power with respect to the voting and disposition of these Shares. Mr. Eason also beneficially owns 559,386 Shares which represent the aggregate number of Shares beneficially owned by Energy Holdings Limited LLC ("EHL"). Pursuant to the EHL LLC Agreement, Mr. Eason, as the managing member of EHL, has sole voting power with respect to all of the Shares held by EHL. Mr. Eason expressly disclaims any beneficial ownership of such Shares.

## BENEFICIAL OWNERSHIP

The Nominees and EHL are deemed to beneficially own (as such term is defined in Rule 13d–3 under the Securities Exchange Act of 1934, as amended), in the aggregate, 1,278,775 Shares, representing approximately 9% of the issued and outstanding Shares, based upon the amount of Shares reported to be issued and outstanding in the 2008 proxy statement of MMC.

Pursuant to the Amended and Restated Limited Liability Company Agreement of EHL, dated as of April 3, 2008 (the "EHL LLC Agreement"), by and among the Company, William Eason, Joseph C. Hearne, Raiford G. Trask, Jr., Trustee under the Raiford G. Trask, Jr. Revocable Trust Agreement dated May 23, 2006, Robert Clements and Robert Samuels (the "Members"), each of the Members (of whom three, Messrs. Eason, Hearne and Trask, are Nominees) have contributed shares of common stock of MMC to the capital of EHL in exchange for membership interests in EHL. Although the members of EHL have sent their MMC Shares to MMC's transfer agent for recordation of transfer, EHL still has not yet received from MMC its MMC Shares registered in its name.

Mr. Aran does not currently own Shares.

Mr. Eason owns directly 8,061 Shares. These Shares were acquired with personal funds. Mr. Eason has sole power with respect to the voting and disposition of these Shares. Mr. Eason also beneficially owns 559,386 Shares which represent the aggregate number of Shares beneficially owned by EHL. Pursuant to the EHL LLC Agreement, Mr. Eason, as the managing member of EHL, has sole voting power with respect to all of the Shares held by EHL. Mr. Eason expressly disclaims any beneficial ownership of such Shares.

Mr. Hearne does not currently own Shares.

Mr. McConville does not currently own Shares.

Mr. Miller owns directly 711,328 Shares. These Shares were acquired with personal funds. Mr. Miller has sole power with respect to the voting and disposition of the Shares beneficially owned by him.

Mr. Trask does not currently own Shares.

Mr. Valentine does not currently own Shares.

**Purchase and Sales of Securities of MMC**

All purchases and sales of securities of MMC effected during the past two years, the dates on which they were purchased or sold and the amount purchased or sold on each such date by the Nominees and EHL are listed below.

Ketheesch Aran — None.

G. William Eason — Mr. Eason contributed 160,235 Shares to EHL in connection with the formation of EHL on March 7, 2008. Mr. Eason remains the record owner of 8,061 Shares. As the Managing Member of EHL, Mr. Eason beneficially owns 559,386 Shares held by EHL because he has sole voting power with respect to those Shares.

Joseph C. Hearne — Mr. Hearne contributed 156,734 Shares to EHL in connection with the formation of EHL on March 7, 2008.

Kevin McConville — None.

Karl W. Miller — The table below sets forth all purchases and sales of securities of MMC effected during the past two years, the dates on which they were purchased or sold and the amount purchased or sold on each such date by Karl W. Miller. As of the close of business on March 19, 2008, Mr. Miller beneficially owned 711,328 shares of common stock of MMC.

| Date of Transaction | Shares Purchased |
| --- | --- |
| 8/16/2007 | 12,000 |
| 8/17/2007 | 3,000 |
| 8/20/2007 | 5,000 |
| 8/21/2007 | 100 |
| 8/23/2007 | 4,880 |
| 8/24/2007 | 10,000 |
| 8/30/2007 | 25,700 |
| 11/16/2007 | 11,000 |
| 11/19/2007 | 4,00 |
| 11/27/2007 | 32,753 |
| 2/29/2008 | 200 |
| 3/3/2008 | 1,200 |
| 3/4/2008 | 119 |
| 3/5/2008 | 500 |
| 3/5/2008 | 310 |
| 3/6/2008 | 1,500 |
| 3/10/2008 | 900 |
| 3/11/2008 | 2,400 |

26

| Date of Transaction | Shares Purchased |
| --- | --- |
| 3/11/2008 | 2,500 |
| 3/11/2008 | 400 |
| 3/12/2008 | 3,500 |
| 3/13/2008 | 500 |
| 3/14/2008 | 36,000 |
| 3/14/2008 | 7,042 |
| 4/14/2008 | 10,000 |

Raiford G. Trask, Jr., Trustee under the Raiford G. Trask , Jr. Revocable Trust Agreement dated May 23, 2006 — Mr. Trask contributed 156,734 Shares to EHL in connection with the formation of EHL on March 7, 2008.

Tony Valentine — None.

EHL — Pursuant to the EHL LLC Agreement, each of the Members of EHL have contributed shares of common stock of MMC to the capital of EHL in exchange for membership interests in EHL.

The interests that the founding stockholders of MMC, including Mr. Miller, held in MMC Energy North America LLC were converted into Shares on May 15, 2006.

27

PRELIMINARY COPY

## MMC ENERGY, INC.
### 2008 ANNUAL MEETING OF STOCKHOLDERS
### THIS PROXY IS SOLICITED ON BEHALF OF ENERGY HOLDINGS LIMITED LLC
### G. WILLIAM EASON AND KARL W. MILLER
### PROXY

The undersigned appoints and constitutes G. William Eason and Kevin McConville and each of them as attorneys, agents and proxies, with full power of substitution, to represent the undersigned and vote all Shares of common stock of MMC Energy, Inc. ("MMC" or the "Company") which the undersigned would be entitled to vote if personally present at the 2008 Annual Meeting of Stockholders of the Company scheduled to be held on May 28, 2008, at 9:00 a.m., local time, at Le Meridien Hotel, 333 Battery Street, San Francisco, California, and including at any adjournments, postponements, reschedulings or continuations thereof and at any meeting called in lieu thereof (the "Annual Meeting"). THIS PROXY WHEN PROPERLY EXECUTED WILL BE VOTED IN THE MANNER DIRECTED BY THE STOCKHOLDER, FOR the election of nominees, Kevin McConville, Ketheesch Aran, Tony Valentine, Karl W. Miller, G. William Eason, Joseph Hearne, and Raiford Trask, Jr., FOR Proposals 2 and 3 referred to on the reverse side and described in the Proxy Statement, and on any other business which shall properly come before the meeting, with all powers the stockholder would possess if personally present.

The undersigned hereby revokes any other proxy or proxies heretofore given to vote or act with respect to the shares of common stock of the Company held by the undersigned, and hereby ratifies and confirms all action the herein named attorneys, agents and proxies, their substitutes, or any of them may lawfully take by virtue hereof. If properly executed, this Proxy will be voted as directed on the reverse and in the discretion of Messrs. Eason and McConville, or any of their substitutes, with respect to any other matters as may properly come before the Annual Meeting that are unknown to Energy Holdings Limited LLC, G. William Eason or Karl W. Miller a reasonable time before this solicitation. This Proxy will be valid until the completion of the Annual Meeting.

**IF NO DIRECTION IS INDICATED WITH RESPECT TO THE PROPOSALS ON THE REVERSE SIDE, THIS PROXY WILL BE VOTED "FOR" PROPOSALS 1, 2 AND 3.**

**ENERGY HOLDINGS LIMITED LLC, G. WILLIAM EASON AND KARL W. MILLER STRONGLY RECOMMEND THAT STOCKHOLDERS VOTE "FOR" PROPOSALS 1, 2 AND 3.**

**IMPORTANT: PLEASE SIGN, DATE AND MAIL THIS PROXY CARD PROMPTLY!**

**CONTINUED AND TO BE SIGNED ON REVERSE SIDE**

☒  Please mark vote as in this example

Proposal 1—To elect Kevin McConville, Ketheesch Aran, Tony Valentine, Karl W. Miller, G. William Eason, Joseph Hearne, and Raiford Trask, Jr. to serve as directors of MMC until the 2009 Annual Meeting of Stockholders or until their successors are elected and shall qualify.

|  | **FOR ALL NOMINEES** | **WITHHOLD AUTHORITY TO VOTE FOR ALL NOMINEES** | **FOR ALL EXCEPT NOMINEE(S) WRITTEN BELOW** |
|---|---|---|---|
|  | ☐ | ☐ | ☐ |

INSTRUCTION: To withhold authority to vote for any individual nominee, mark the "FOR ALL EXCEPT" box above and write the name(s) of the nominee(s) you do not support on the line below. Your shares will be voted for the remaining nominee(s).

_____

Proposal 2 – To amend the MMC Bylaws to establish an age limitation for directors providing that no person shall be eligible to be elected as a director for a term which expires after he or she reaches age 72.

☐ FOR                    ☐ AGAINST                    ☐ ABSTAIN

Proposal 3 – To repeal each provision of MMC's Bylaws and all amendments thereto adopted since March 7, 2008 and before the seating of the Nominees on the Board, other than provisions adopted by stockholders and provisions which under Delaware law cannot be repealed by stockholders, and to provide that, without the affirmative vote of a majority of the stock of MMC, MMC's Board may not thereafter amend the Bylaws or adopt any new Bylaw in a manner that reinstates any repealed provision or adopt any similar provision.

☐ FOR                    ☐ AGAINST                    ☐ ABSTAIN

Dated: _____

_____
(Signature)

_____
(Signature, if held jointly)

_____
(Title)

NOTE: This proxy should be signed as the name appears hereon. If shares of common stock of MMC are held jointly, each joint owner should sign. If signing as attorney, executor, administrator, trustee, guardian, or in some other representative capacity, or as an officer of a corporation, please indicate full title and the capacity in which signing. Please complete, date and return it in the enclosed envelope, which requires no postage if mailed in the United States.

EXHIBIT 5

May 8, 2008

Dear Fellow MMC Stockholder:

WITH THE ENCLOSED PROXY STATEMENT AND THE ACCOMPANYING BLUE PROXY CARD, ENERGY HOLDINGS LIMITED LLC ("EHL"), G. WILLIAM EASON AND KARL W. MILLER, TOGETHER WITH KETHEESCH ARAN, ROBERT CLEMENTS, JOSEPH HEARNE, KEVIN McCON-VILLE, ROBERT SAMUELS, RAIFORD TRASK, JR. AND TONY VALENTINE, ARE SOLICITING YOUR PROXY FOR THE ANNUAL MEETING OF STOCKHOLDERS OF MMC ENERGY, INC. ("MMC"), TO BE HELD ON MAY 28, 2008, IN SUPPORT OF THE ELECTION OF SEVEN NOMINEES TO REPLACE ALL OF THE SEVEN INCUMBENT DIRECTORS PROPOSED FOR ELECTION BY MMC.

OUR NOMINEES TO SERVE AS DIRECTORS OF MMC ARE KETHEESCH ARAN, G. WILLIAM EASON, JOSEPH HEARNE, KEVIN McCONVILLE, KARL W. MILLER, RAIFORD TRASK, JR. AND TONY VALENTINE (THE "NOMINEES"). THEIR BIOGRAPHICAL INFORMATION AND QUALIFI-CATIONS ARE INCLUDED IN THE ATTACHED PROXY STATEMENT.

EHL was formed by many of the MMC founding stockholders in order to respond to the many opportunities that exist currently in the energy industry and specifically within the electricity generation segment.

Additionally, EHL was formed to address the substantial deterioration in MMC's stockholder value, the continued lack of liquidity of MMC's shares and to replace the incumbent MMC board. EHL is a significant stockholder beneficially owning 559,386 shares of MMC common stock, or approximately 4% of the outstanding shares.

Our Nominees are excited about seeking to contribute to the growth of MMC. Our Nominees have committed not to collect fees or other cash or equity compensation for MMC board service or meetings for at least three years, substantially reducing expenses, preserving cash and illustrating their commitment to MMC and its stockholders. We are filing this proxy statement in order that stockholders may have the ability to vote upon our alternate slate. A majority of our Nominees meet the NASDAQ independence standards for directors and thus our proposed Board will comply with the NASDAQ Rules. EHL and Mr. Miller together own approximately 9 percent of MMC's outstanding common stock.

Mr. Miller helped build MMC from its inception and led a successful public offering in June 2007. Mr. Miller is a significant paid in stockholder, owning 714,828 shares of MMC common stock, or approximately 5% of the outstanding shares. Mr. Miller has committed to invest up to an additional $1 million in MMC common stock in open market purchases over a two-year period if our slate is elected, further aligning the interests of the new board with stockholder interests.

Mr. Miller previously served in various executive positions at MMC, including Chairman of the Board, Chief Executive Officer and President. Mr. Miller has dedicated many years of his professional life, dating back to 2002, to the development and growth of MMC both as a private and public company. Mr. Miller was replaced as Chief Executive Officer of MMC on December 9, 2007 by the MMC Board but the MMC Board did not terminate his employment. Mr. Miller then resigned as an employee of MMC on December 18, 2007 as result of being replaced as Chief Executive Officer. In February 2008, Mr. Miller also agreed to resign from MMC's Board. The resignation from the Board was pursuant to the terms of his Separation Agreement rather then a disagreement with MMC regarding operations, policies or practices.

If our Nominees are elected, they will use their best efforts to elect Messrs. McConville and Miller to executive officer positions with MMC, replacing current senior management. Mr. McConville is the Chief Operating Officer of EHL and is a director nominee. He is an experienced energy executive and was a co-founder and Managing Partner of Miller McConville & Company, the private company that eventually became MMC Energy, Inc. Many of the original founding stockholders of MMC became concerned about the departure of Mr. Miller from MMC and, during late February and early March 2008, after disclosure of Mr. Miller's resignation from the MMC Board, began

discussing with Mr. Miller his participation with them in a proxy contest to attempt to replace the MMC Board. These MMC founding stockholders then formed EHL on March 4, 2008 for the purpose, among others, of attempting to replace the incumbent MMC Board and in order to enhance and preserve the value of their MMC shares, and Mr. Miller agreed with EHL and Mr. Eason to participate with them in this proxy solicitation. Thereafter, in mid-March, EHL and Mr. Eason prevailed upon Mr. Miller to become one of their Nominees. Mr. Miller decided to seek to again become a member of the MMC Board as he thought he could assist in the growth of MMC with a Board consisting of EHL's other Nominees with their experience as described in this proxy statement.

Our Nominees desire to provide the leadership necessary to execute a business plan to grow MMC for the benefit of all stockholders; however, no assurances can be given that they will be successful in achieving these objectives.

- *Strategy*:  Our Nominees intend to pursue a Western states strategy, with a particular focus upon the California market. Our proposed management team and directors intend to actively operate the MMC business and grow long term stockholder value through dynamic, "hands on" and energetic leadership.

- *Revenue Growth Through Asset Acquisition and Development Pipeline*:  EHL, separate and apart from MMC, is in various stages of negotiation with multiple industry counterparties on a number of energy projects and expects to sign letters of intent to acquire certain energy assets. While in its early stages, EHL intends to aggressively move forward to seek to develop projects over the next several months. EHL intends to assign its interests in projects that it holds to MMC, without cost to MMC, assuming a successful proxy contest. EHL's assets in respect of projects at the date of the Annual Meeting will not consist of anything other than interests in respect of letters of intent; but no assurances can be given that EHL will have any assets in respect of projects as of the Annual Meeting. EHL's acquisition and development strategy concentrates on the Western states with a particular focus on the California market. EHL's involvement in each project is at a relatively early stage. No financing commitments have been received and final due diligence has not been completed with respect to any of the projects. Therefore, no assurances can be made regarding EHL's ability to complete these projects or their success should they be completed.

- *Cost Control*:  The Nominees will relocate MMC's executive management team to Southern California, providing an efficient execution of its business strategy and allowing close proximity to MMC's existing projects and other targeted energy assets. Our Nominees also plan to close MMC's New York City offices, reducing operating expenses.

- *Director Fees*:  Our Nominees will not accept fees or other cash or equity compensation for their services to the MMC Board of Directors for at least three years. MMC is a micro-cap company and many of our Nominees are "paid in" stockholders whose economic interest is closely tied to MMC's performance and success. This commitment eliminates the fees currently paid by MMC to its five outside directors.

We believe that MMC may benefit immediately upon the election of our Nominees through the contribution of EHL's acquisition and development transaction pipeline referred to in the proxy statement. If our Nominees are elected, EHL intends to assign all of its interests in projects that it holds to MMC, without cost to MMC. EHL's assets in respect of projects at the date of the Annual Meeting will not consist of anything other than interests in respect of letters of intent; but no assurances can be given that EHL will have any assets in respect of projects as of the Annual Meeting.

As an MMC stockholder, you have the opportunity and the right to vote for an alternative slate of director nominees, replacing the entire incumbent board.

Our Nominees are highly qualified and experienced, and have impressive and diverse backgrounds in energy, business, operations and development, risk management, finance and real estate. As a group of professionals, they understand the importance of a board of directors in setting the direction and culture of a micro-cap public company.

We believe it is time for a change in MMC's governance. In recent months, we have made recommendations to MMC in an attempt to assist it in growing its revenues, reducing its cost structure and enhancing its profitability. We believe that there is significant work to be done if MMC is to realize its true value potential. We are very proud of our

ii

slate and feel confident that if investors take a cold, hard look at the opportunities that exist within the energy industry today and the current share price of MMC, there is every reason to elect our Nominees.

If you believe that a change in MMC's board is beneficial to stockholders, you must act now by returning the **BLUE proxy card** to elect our Nominees at the 2008 Annual Meeting. Our proxy statement also solicits your vote for two amendments to MMC's Bylaws as described in the accompanying proxy statement.

Our Nominees include stockholders just like you. Their interests are aligned with your interests and those of all stockholders. The choice is clear. The choice is yours!

We urge you to consider carefully the information contained in our proxy statement and then support our efforts as stockholders by marking, signing, dating and returning the enclosed **BLUE proxy card** to vote for our Nominees and our other proposals.

If you have any questions or require assistance with your vote, please contact EHL at the contact number listed below. Unlike many boards of directors, our slate welcomes questions and thoughts of stockholders. EHL is open to speaking with you at anytime consistent with our policy of transparency.

Thank you for your support,

Energy Holdings Limited LLC
Ketheesch Aran
Robert Clements
G. William Eason
Joseph C. Hearne
Kevin McConville
Karl W. Miller
Robert Samuels
Raiford Trask, Jr.
Tony Valentine

**Energy Holdings Limited LLC**
**P.O. Box 97**
**Wilmington, NC 28402**

**Call Toll-Free: 1-888-353-1113**

BBC eBP e54852-i002_a.pdf May 9, 2008 - Page: 3 of 24

(This page intentionally left blank)

BBC eBP e54852-i002_a.pdf  May 9, 2008 - Page 4 of 24

**2008 ANNUAL MEETING OF THE STOCKHOLDERS**
**OF**
**MMC ENERGY, INC.**

———————————

**PROXY STATEMENT**
**OF**
**ENERGY HOLDINGS LIMITED LLC,**
**KETHEESCH ARAN, ROBERT CLEMENTS, G. WILLIAM EASON,**
**JOSEPH C. HEARNE, KEVIN McCONVILLE,**
**KARL W. MILLER, ROBERT SAMUELS, RAIFORD TRASK, JR. AND TONY VALENTINE**

———————————

This Proxy Statement and the accompanying **BLUE proxy card** are being furnished to stockholders of MMC Energy, Inc. ("MMC" or the "Company") in connection with our solicitation of proxies to be used at the 2008 Annual Meeting of Stockholders of MMC, including any adjournments, postponements, reschedulings or continuations thereof and any meeting which may be called in lieu thereof (the "Annual Meeting"). The Annual Meeting is scheduled to be held on May 28, 2008, at 9:00 a.m., local time, at Le Meridien Hotel, 333 Battery Street, San Francisco, California. The principal executive offices of MMC are located at 26 Broadway, Suite 907, New York, NY 10004. Our proxy statement and the accompanying **BLUE proxy card** are first being furnished to stockholders on or about May 9, 2008.

At the Annual Meeting, we are seeking your support for the following:

1. To elect the following slate of director nominees: Kevin McConville, Ketheesch Aran, Tony Valentine, Karl W. Miller, G. William Eason, Joseph Hearne, and Raiford Trask, Jr. (the "Nominees"), each to serve for a one-year term until the Company's 2009 Annual Meeting of Stockholders ("Proposal 1");

2. To amend the MMC Bylaws to establish an age limitation for directors providing that no person shall be eligible to be elected as a director for a term which expires after he or she reaches age 72 ("Proposal 2");

3. To repeal each provision of the MMC Bylaws and any and all amendments to the Bylaws (whether effected by supplement to, deletion from or revision of the Bylaws) adopted since March 7, 2008 until conclusion of the Annual Meeting, other than those provisions which were duly adopted by the stockholders of MMC and those provisions which under Delaware law cannot be repealed by the stockholders of MMC ("Proposal 3", and collectively with Proposals 1 and 2, the "Proposals").

OUR NOMINEES ARE COMMITTED TO ACTING IN THE BEST INTEREST OF THE COMPANY'S STOCKHOLDERS. WE BELIEVE THAT YOUR VOICE IN THE FUTURE OF MMC CAN BEST BE EXPRESSED THROUGH THE ELECTION OF OUR NOMINEES AND THE APPROVAL OF OUR OTHER PROPOSALS WHICH ARE FURTHER DISCUSSED HEREIN. ACCORDINGLY, WE URGE YOU TO VOTE YOUR BLUE PROXY CARD FOR OUR NOMINEES AND FOR THE APPROVAL OF OUR OTHER PROPOSALS.

WE ARE MAKING THIS SOLICITATION ON OUR OWN BEHALF AND NOT ON BEHALF OF THE BOARD OF DIRECTORS OR MANAGEMENT OF MMC. EXCEPT AS DISCUSSED HEREIN OR IN THE 2008 PROXY STATEMENT OF MMC, WE ARE NOT AWARE OF ANY OTHER MATTERS TO BE BROUGHT BEFORE THE ANNUAL MEETING. SHOULD OTHER MATTERS, WHICH WE ARE NOT AWARE OF A REASONABLE TIME BEFORE THIS SOLICITATION, BE BROUGHT BEFORE THE ANNUAL MEETING, WE WILL VOTE THE PROXIES WE HOLD ON THOSE MATTERS IN OUR DISCRETION.

IF YOU HAVE ALREADY SENT A WHITE PROXY CARD FURNISHED BY MMC MANAGEMENT TO MMC, YOU MAY REVOKE THAT PROXY BY SIGNING, DATING AND RETURNING THE

ENCLOSED BLUE PROXY CARD. THE LATEST DATED PROXY IS THE ONLY ONE THAT COUNTS. ANY PROXY MAY BE REVOKED AT ANY TIME PRIOR TO THE ANNUAL MEETING BY EITHER DELIVERING A WRITTEN NOTICE OF REVOCATION OR A LATER DATED PROXY FOR THE ANNUAL MEETING TO US OR BY VOTING IN PERSON AT THE ANNUAL MEETING.

IF YOU VOTE YOUR BLUE PROXY CARD, YOU WILL NOT HAVE THE OPPORTUNITY TO VOTE ON PROPOSAL NO. 2 (RATIFICATION OF INDEPENDENT AUDITORS), PROPOSAL NO. 3 (STOCKHOLDER PROPOSAL TO ADOPT A POLICY WHICH PROVIDES FOR A MANDATORY RETIREMENT AGE OF 75 FOR OUTSIDE DIRECTORS), PROPOSAL NO. 4 (STOCKHOLDER PROPOSAL TO ENGAGE THE SERVICES OF AN EXPERIENCED BROKER TO MARKET AND SELL MMC ENERGY, INC.) OR PROPOSAL NO. 5 (STOCKHOLDER RIGHTS TO AUTHORIZE A COMMON STOCK REPURCHASE PROGRAM) THAT ARE DESCRIBED IN THE 2008 PROXY STATEMENT OF MMC AND ARE PRESENTED ON MMC MANAGEMENT'S WHITE PROXY CARD. STOCKHOLDERS WHO CHOOSE TO VOTE THE BLUE PROXY CARD WILL BE DISENFRANCHISED AS TO THEIR ABILITY TO VOTE ON THOSE MATTERS.

BBC eBP e54852-002_a.pdf May 9, 2008 - Page 6 of 24

**IMPORTANT**

The election of the Nominees requires the affirmative vote of a plurality of the votes cast, assuming a quorum is present or otherwise represented at the Annual Meeting. That means that the director nominees with the most votes for available board seats will be elected. Accordingly, your vote is important, no matter how few shares of common stock of MMC (the "Shares") that you own. We urge you to mark, sign, date, and return the enclosed **BLUE proxy card** today to vote "**FOR**" the election of our Nominees and "**FOR**" our other Proposals discussed herein.

**WE URGE YOU NOT TO SIGN ANY PROXY CARD SENT TO YOU BY MMC. IF YOU HAVE ALREADY DONE SO, YOU MAY REVOKE YOUR PROXY BY DELIVERING A LATER-DATED BLUE PROXY CARD IN THE ENCLOSED POSTAGE-PREPAID ENVELOPE, OR BY VOTING IN PERSON AT THE ANNUAL MEETING.**

According to the Annual Report on Form 10-K of MMC for the fiscal year ended December 31, 2007 (the "MMC 2007 Form 10-K"), filed with the Securities and Exchange Commission on March 12, 2008, there were an aggregate of 13,917,347 Shares issued and outstanding. Our Nominees and Energy Holdings Limited LLC ("EHL") are deemed to beneficially own (as beneficial ownership is defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended), in the aggregate, 1,278,775 Shares, representing approximately 9.1% of the Shares, based upon the amount of Shares reported to be issued and outstanding in the MMC 2007 Form 10-K. Please see Annex I for additional information about the Nominees and EHL, including their beneficial ownership, and purchases and sales of Shares.

Only holders of record of Shares as of the close of business on March 31, 2008 (the "Record Date") are entitled to notice of, and to attend and to vote at, the Annual Meeting. According to the proxy statement of MMC, as of the Record Date, there were 14,144,347 Shares outstanding and entitled to vote at the Annual Meeting. As of the Record Date, our Nominees and EHL are deemed to beneficially own (as beneficial ownership is defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended), in the aggregate, 1,278,775 Shares, representing approximately 9.0% of the issued and outstanding Shares (based upon the Shares stated to be issued and outstanding as of the Record Date by MMC in its proxy statement).

If you have any questions, require assistance in executing your **BLUE proxy card**, need additional information concerning these proxy materials or need additional copies, please contact us as follows:

**Energy Holdings Limited LLC**
**P.O. Box 97**
**Wilmington, NC 28402**

**Call Toll-Free: 1-888-353-1113**

BBC eBP e54852-i002_a.pdf May 9, 2008 - Page: 7 of 24

## REASONS WHY WE ARE SEEKING TO
## REPLACE THE ENTIRE BOARD OF DIRECTORS OF MMC

EHL was formed by many of the MMC founding stockholders in response to the substantial attractive opportunities prevalent in the U.S. electricity generation and energy industry as well as to seek to replace the incumbent MMC board and increase value for all stockholders.

### Contribution of EHL Pipeline to MMC

Although EHL was formed only in March of this year, its executive management team is experienced and has already identified and engaged in discussions regarding multiple energy projects that are in various stages of completion (existing and operational, existing and mothballed, in late stage construction, in pre-construction and in early stage development). Our Nominees (other than Mr. Miller) are members of EHL or its senior management team. If our Nominees are elected, they will use their best efforts to elect Mr. McConville and Mr. Miller to executive officer positions with MMC, replacing current senior management. The discussion below of EHL's strategy and current activities is designed to illustrate the growth possibilities they can offer to MMC if our slate is elected. If our Nominees are elected, EHL intends to assign all of its interests in projects to MMC without cost to MMC. EHL's assets in respect of projects at the date of the Annual Meeting will not consist of anything other than interests in respect of letters of intent; but no assurances can be given that EHL will have any assets in respect of projects as of the Annual Meeting.

EHL is in discussions and negotiations with several companies and asset owners and has issued offer letters in some cases. EHL has executed a letter of intent to construct a solid fuel power plant in the Western U.S. EHL management is in preliminary discussions with several funding sources for the financing of certain of its projects; however such talks are in their early stages and no determination has been made as to how any of EHL's projects will be funded. A summary of the energy projects currently in EHL's pipeline is as follows:

| Project Status | Projects | Project Size (MW) | Estimated Capital Required ($ in millions) |
|---|---|---|---|
| Letters of Intent Signed | 1 | 25 | $ 42.0 |
| Letters of Intent in Process | 1 | 50 | $100.0 |
| Development Bids w/deposits | 1 | 15 | $ 22.5 |
| Discussion in Process | 6 | 155 | $170.0 |
| Total | 9 | 245 | $294.5 |

EHL's involvement in each project is at a relatively early stage. No financing commitments have been received and final due diligence has not been completed with respect to any of the projects. Therefore, no assurances can be made regarding EHL's ability to complete these projects or their success should they be completed.

Should our Nominees be elected, EHL will cease seeking opportunities for itself. Members of its management team will begin to serve as MMC's directors or management, solely for the benefit of MMC and its investors.

EHL targets the Western United States, with particular focus upon California to execute its energy acquisition and development strategy. EHL is seeking to acquire and control niche opportunities in the electricity generation market for both natural gas and clean coal fueled assets as well as alternative and renewable ("green") energy projects. EHL is also preparing to respond to several upcoming RFP's by Western utilities for alternative and renewable energy sources. However, EHL also intends to "opportunistically" exploit ownership benefits of assets in locations not conforming to the stated strategy. Each transaction that does not meet the stated strategy will be evaluated internally with greater scrutiny.

EHL intends to seek to acquire, re-power and develop natural gas, clean coal and renewable assets in key geographic transmission locations such as California, Arizona, Nevada, New Mexico and Colorado. EHL intends to specifically focus on existing assets, both operational and non-operational, in the Western U.S. EHL intends to maximize environmental emission and green credits and fuel efficiency. EHL and our Nominees, if elected, will select as a segment of focus, projects that are within close proximity to industrial facilities with heavy steam/power requirements. EHL also intends to identify late stage development projects that have gained site control ("land")

4

and are moving through the permitting process. EHL will also seek opportunities within small public and private companies that may contain or represent orphaned assets due to weak management and capital constraints. Our Nominees intend to implement these strategies at MMC if elected.

EHL's management team has identified and is currently exploring several investment opportunities that include:

- Acquisition of a 25MW project nearing mechanical completion. EHL has signed a letter of intent with the owners for this $42 million acquisition.

- EHL has responded to a renewable RFP by a western electric co-operative; EHL's proposal is to develop and construct a 15 MW solid fuel fired power plant using waste wood and tire derived fuel for emission credits.

- EHL has issued an offer letter to the developer of a fully permitted 50MW power project in the Northeast U.S. for the rights to construct a natural gas-powered project to meet power shortages in congested locations on the transmission grid. This project, while outside of the Western region, is reflective of the need for EHL to be flexible and opportunistic.

- EHL is in early stage discussions with two industrial facilities in the Western U.S. with regard to developing a solid fuel power plant to supply electricity.

- EHL is in negotiations to acquire and repower two existing gas fired power plants in the Western U.S. within close proximity of energy intensive industrial facilities.

- EHL is evaluating the potential acquisition and re-commissioning and/or re-powering of two biomass projects in the Western U.S.

- EHL is evaluating the opportunity to develop and construct several natural gas fueled peaker facilities adjacent to identified wind parks in the Tehachapi and Palm Springs areas of California.

- EHL is evaluating multiple development sites available in California, Arizona and Nevada for green field power plant development projects.

Other opportunities pursued by EHL include the following:

- Utilities in the Southwest have issued multiple requests for proposals for all renewable power to satisfy RPS standards. EHL is in the process of responding to various RFPs.

- In discussions to joint venture with other renewable project developers.

These projects are speculative and no financing commitments have been received and due diligence has not been completed for any of the projects. No assurances can be made regarding EHL's ability to complete these projects or their success should they be completed.

We believe that EHL and its management team are well positioned to achieve its objectives over the next several years and to carry that strategy to MMC; however, no assurances can be made as to whether it will achieve those objectives.

## Reduce Operating Expenses

The Nominees will relocate MMC's executive management team to Southern California, providing an efficient execution of its business strategy and allowing close proximity to MMC's existing projects and other targeted energy assets. Our Nominees also plan to close MMC's New York City offices, reducing operating expenses.

## Director Fees

Our Nominees will not accept fees or other cash or equity compensation for their services to the MMC Board of Directors for at least three years. MMC is a micro-cap company and many of our Nominees are "paid in" stockholders whose economic interest is closely tied to MMC's performance and success. This commitment eliminates the fees currently paid by MMC to its five outside directors.

5

## CHRONOLOGY OF EVENTS LEADING UP TO OUR DECISION
## TO REPLACE THE ENTIRE BOARD OF DIRECTORS OF MMC
## AND INITIATE THIS PROXY SOLICITATION

Over the past several months we have grown very concerned about what we perceive as the loss of investor confidence in MMC reflected by the substantial deterioration in stockholder value demonstrated by MMC's severely depressed stock price.

On March 7, 2008 EHL delivered its first letter to the MMC board. EHL advised the MMC board that, in its opinion, the board needed to demonstrate actions in the best interests of its stockholders and that EHL intended to file a Schedule 13D with the Securities and Exchange Commission (the "SEC"). EHL and Messrs. G. William Eason and Karl W. Miller simultaneously filed a Schedule 13D disclosing their beneficial ownership of approximately 9% of MMC's outstanding shares and their intent, among other things, to nominate a slate of directors for MMC at its May 28, 2008 stockholder meeting.

EHL also requested the MMC board move its annual meeting of stockholders to April 2008 so that stockholders could vote on a new slate of directors to lead MMC forward. MMC advised EHL that it would not do so.

On March 11, 2008, MMC conducted an earnings teleconference where management did not discuss fourth quarter 2007 results, and announced that its current CEO would spend time in California. We believe this was in response to EHL's criticism of a lack of a California presence and the unnecessary expense of the New York headquarters because the announcement came shortly after EHL's March 7 letter in which the relocation was suggested. MMC did not announce, however, the closing of the New York office to conserve cash.

On March 20, 2008, EHL and Messrs. Eason and Miller notified MMC, as required by MMC's advance notice Bylaw, that they intended to nominate director candidates and make other proposals at MMC's 2008 Annual Meeting of Stockholders and provided the consents of, and information regarding, the Nominees and filed an Amendment to the Schedule 13D disclosing their Nominees.

On March 21, 2008, MMC's board announced it had retained Merriman, Curhan, Ford & Co. to assist MMC in developing "strategic alternatives" for the company. We believe that, instead of exploring strategic alternatives, MMC should be focusing on completing the existing Chula Vista and Escondido upgrade projects. Additionally, we believe that MMC should be seeking growth opportunities that are accretive to investors.

On March 26, 2008, MMC's board announced a share repurchase program, an action that concerned EHL. While the intent to raise MMC's share price is a goal shared by all investors, we believe that MMC's cash should be used to complete the critical construction projects in process.

In its proxy statement filing with the SEC for its 2008 Annual Meeting, the MMC board recommended a "no" vote on a proposed share buyback plan that was introduced by a stockholder who commented that MMC's share price had fallen by more than 80%. Yet the board had announced only two days earlier that it was proposing a share buyback program. MMC's closing share price has fallen from $9.75 per share on April 20, 2007, the date of MMC's ten for one reverse stock split, to $1.86 per share on March 25, 2008 and was $2.74 per share on April 30, 2008. Although Mr. Miller was Chief Executive Officer of MMC during the period April 20, 2007 through December 9, 2007, when the share price ranged from $9.75 to $3.63, we believe that electing our Nominees, including Mr. Miller, will enhance investor confidence because our Nominees and Mr. Miller will seek to grow and enhance stockholder value by not collecting fees or other cash or equity compensation for MMC Board service for at least three years, committing to use available MMC resources for completing the upgrade of the existing MMC projects and lowering expenses by closing the New York office.

On April 4, 2008 EHL delivered its second letter to MMC. EHL advised MMC that EHL was very concerned about recent actions of the MMC board including the announcement of a share repurchase program and the retention of Merriman, Curhan, Ford & Co. to develop strategic alternatives.

On April 10, 2008, MMC revealed in a Form 8-K filing that it had bestowed certain senior managers with "change in control" benefits that would cause payments, including tax gross-ups, to be made to them in the event of termination of employment after our Nominees are elected at the Annual Meeting. If our Nominees are elected, a "change in control" will have occurred and payment of the change in control benefits will be triggered in the event

6

of a subsequent termination of employment. This will only make it more expensive for stockholders to remove the current board and management. EHL requested that this matter be put to a vote of stockholders at the annual meeting but MMC did not respond. It is still, nevertheless — even considering the potential "costs" the board has created — even more important to elect our Nominees.

On April 21, 2008, MMC issued a press release stating that it had filed an arbitration claim against Mr. Miller alleging that he had violated provisions of his Separation Agreement with MMC by his participation in this proxy solicitation and by violating restrictive covenants of his Separation Agreement, including a covenant not to compete with MMC. Mr. Miller believes that the claim is without merit and intends to vigorously contest it and counterclaim against MMC. Mr. Miller is not competing with MMC through EHL. Mr. Miller is not a member of EHL, nor is he an officer, employee or consultant of EHL or paid by EHL. As noted earlier, EHL's business activities are being conducted by experienced executives with significant energy industry and other business expertise. Most importantly, EHL and Messrs. Eason and Miller believe that the arbitration claim by MMC is an attempt by MMC to taint Mr. Miller in connection with this proxy contest. On May 6, 2008, Mr. Miller filed with the Supreme Court of the State of New York a petition to stay the arbitration on the grounds that at least some of the claims asserted in the arbitration were not subject to arbitration under the arbitration clause of Mr. Miller's Employment Agreement. On May 8, 2008, MMC commenced a lawsuit against Mr. Miller in federal court in New York asserting against him the same claims arising from the Separation Agreement that MMC previously asserted in the arbitration proceeding.

We urge stockholders to support our Nominees and to reject the status quo.

**PROPOSAL NO. 1**
**ELECTION OF DIRECTORS**

The MMC Board is currently composed of seven directors, each of whom is elected annually. At the MMC 2008 Annual Meeting, seven directors will be elected. We are seeking your support at the Annual Meeting to elect our Nominees in opposition to MMC's director nominees, each to serve until the 2009 Annual Meeting of Stockholders and until his successors are duly elected and qualified or until his earlier death, resignation, or removal.

**The Nominees**

Set forth below are the name, age, business address, present principal occupation and employment history of each of the Nominees for at least the past five years. No Nominee is currently a director of a publicly held company. This information has been furnished by the respective Nominees. Each of the Nominees has consented to serve as a director of MMC and to be named in this Proxy Statement as a nominee. Please see Annex I for additional information about the Nominees, including their beneficial ownership, purchases and sales of Shares.

| Name, Age and Business Address | Principal Occupation or Employment During the Past Five Years |
|---|---|
| **Kevin McConville** (age 51)<br>*Business Address:*<br>9337B Katy Freeway, Suite 313<br>Houston, TX 77024 | From 2004 to the present Mr. McConville has been an independent energy consultant and private investor. Mr. McConville was a co-founder and Managing Partner of Miller McConville & Company, the private company that eventually became MMC Energy, Inc. and its affiliates, from August 2002 to mid-2004. From 2000 to 2002, Mr. McConville was a limited partner in Powersol Trading. From 1998 to 2000, Mr. McConville was the Managing Director of Enron Capital and Trade's global industrial practice, investing debt and equity, supplying natural gas and electricity to energy intensive companies. Prior to 1998, Mr. McConville was a Vice-President of Business Development for Williams Trading, responsible for equity and debt investments in natural gas producing companies. Mr. McConville began his career at Panhandle Eastern Corporation and is trained in finance, regulatory affairs, valuation of natural pipeline and production properties, including the LNG facility. Mr. McConville served as a director of Kafus Industries, an American Stock Exchange listed micro-cap company, from 1998 to 2000. He is the Chief Operating Officer of EHL. Mr. McConville is a graduate of Drake University with a B.A. in Journalism and holds an MBA from the Houston Baptist University. |

7

BBC eBP e54852-i002_a.pdf May 9, 2008 - Page 11 of 24

BBC eBP e54852-002_a.pdf May 9, 2008 - Page 12 of 24

| Name, Age and Business Address | Principal Occupation or Employment During the Past Five Years |
| --- | --- |
| **Ketheesch Aran** (age 55)<br>*Business Address:*<br>10641 West Vassar Place<br>Lakewood, CO 80227 | Mr. Aran is the owner of Castle Enterprises, LLC an independent power plant developer, involved in the development of several projects in the northeast U.S. From 2002 to 2006, Mr. Aran served as Vice President of North American Power Group in charge of power plant acquisitions. From 1998 to 2001, Mr. Aran was a Senior Vice President of El Paso Merchant Energy, a subsidiary of El Paso Corporation, responsible for the acquisition and development of power generation projects. From 1990 to 1998, Mr. Aran was Vice President and Group Head, Project Finance, at Chrysler Capital Corporation in charge of equity investments in independent power projects. Mr. Aran has completed multiple power plant acquisitions in the power generation industry during his career, involving project financing, transaction structuring and turnarounds. Mr. Aran brings in-depth experience in originating, acquiring and re-structuring power generation assets. Mr. Aran is a trained commercial banker including assignments with Bank of America and Bank of Boston. Mr. Aran is the Chief Financial Officer of EHL. Mr. Aran is a graduate of the University of Sri Lanka with a B.S. in Physics and an MBA from Georgia Southern University. |
| **Tony Valentine** (age 46)<br>*Business Address:*<br>432 Island Shores Drive<br>West Palm Beach, FL 33413 | From September 2004 until the present, Mr. Valentine has been a principal in TK Research, Inc., a private placement consulting firm servicing small manufacturing and industrial organizations. From 2002 to September 2004, Mr. Valentine was a principal in Odysseus Energy LLC focused on the acquisition of undervalued power generation assets in the United States. From 1999 to 2001, Mr. Valentine was Chief Financial Officer for Kafus Industries, an American Stock Exchange listed micro-cap company that manufactured medium density fiberboard, where he directed capital raising efforts. From 1995 to 1999, Mr. Valentine was Vice President at Enron Capital and Trade where he focused on making debt and equity investments in energy-intensive industrial companies. From 1993 to 1995, Mr. Valentine was a Vice President at GE Capital where he coordinated the provision of financing services for the construction of power plants, and the acquisition of oil and gas reserves and led the restructuring of a portfolio of at-risk investments. He is the Chief Development Officer of EHL. Mr. Valentine is a graduate of The University of Tennessee with a B.S. in Chemical Engineering and holds an MBA from Harvard Business School. |
| **Karl W. Miller** (age 43)<br>*Business Address:*<br>411 Bradley Creek Point Road<br>Wilmington, North Carolina 28403 | Mr. Miller is a private investor. Mr. Miller served as Chairman and Chief Executive Officer of MMC from May 2006 through March 2007 and as President from March 2007 through December 2007. He also served as a director of MMC from its founding until February 14, 2008. Mr. Miller served as a Managing Partner of MMC Energy North America LLC, the company that eventually became MMC Energy, Inc., and its affiliates beginning in August 2002. From October 2001 through August 2002, Mr. Miller served as Senior Advisor, Europe, to Statkraft SF (Statkraft Energy Europe), an owner and manager of energy assets in Scandinavia and Europe. From January 2001 to October 2001, Mr. Miller was Senior Vice President, Head of Marketing, Business Development and Structured Transactions in North America for PG&E Corporation. Prior to that time, Mr. Miller held various executive operational and financial positions in the energy producing sector including with Electricite de France, El Paso Energy, Enron and Chase Manhattan Bank. Mr. Miller is a graduate of The Catholic University of America with a B.A. in accounting and an M.B.A. in finance from the Kenan-Flagler Business School at the University of North Carolina. |

| Name, Age and Business Address | Principal Occupation or Employment During the Past Five Years |
|---|---|
| **G. William Eason** (age 59)<br>*Business Address:*<br>711 Forest Hills Drive<br>Wilmington, NC 28403 | Dr. Eason is a radiologist and private investor. Dr Eason is the founder of Atlantic Radiology Associates and has been its President for more than the past five years and is the co-founder of Atlantic Diagnostic Imaging Centers and has been its President for more than the past five years. Dr. Eason is also the co-founder of The Urgent Care Centers of the Carolinas, which owns and operates three medical care facilities. Prior thereto, Dr. Eason successfully owned, operated and sold several medical diagnostic imaging companies. Dr. Eason sold Atlantic Diagnostic Imaging Centers to Alliance Imaging in a private transaction. The sale included eight imaging centers and other intellectual property. Dr. Eason is a graduate of Auburn University and The University of Alabama Medical School. Dr. Eason is a founding stockholder of MMC and is the Managing Member of EHL. |
| **Joseph C. Hearne** (age 68)<br>*Business Address:*<br>P.O. Box 22<br>Kure Beach, NC 28449 | Mr. Hearne is a real estate developer and private investor. Mr. Hearne is, and for more than the past five years has been, President of Hearne Properties, Inc., a real estate development construction and sales company located in North Carolina. Prior thereto, Mr. Hearne owned, operated and sold several auto dealerships and car rental businesses in North Carolina. Mr. Hearne is a graduate of Vanderbilt University with a B.A. in Business Administration.  He is a founding stockholder of MMC and is a member of EHL. |
| **Raiford Trask, Jr.** (age 70)<br>*Business Address:*<br>1202 Eastwood Road<br>Wilmington, NC 28403 | Mr. Trask has been a real estate developer, commercial farmer and private investor for more than the past five years. Mr. Trask owns and operates multiple real estate construction and development companies in North Carolina. He graduated from the Citadel with a B.S. in Commerce. Mr. Trask is a founding stockholder of MMC and is a member of EHL. |

Except as indicated above, (i) none of the Nominees has carried on an occupation or employment, during the past five years, with MMC or any corporation or organization which is or was a parent, subsidiary or other affiliate of MMC, and (ii) none of the Nominees has ever served on the board of directors of MMC.

No family relationships exist between any Nominee and any current executive officer or director of MMC.

Except as disclosed in this proxy statement, no Nominee is involved in any material pending legal proceedings with respect to MMC.

Except as otherwise indicated in this proxy statement, there is no other arrangement or understanding between any Nominee and any other person pursuant to which he was or is to be selected as a Nominee or director, except that if the Nominees are elected, they would intend to use their best efforts to elect Messrs. McConville and Miller to executive officer positions, replacing current senior management. There has not yet been any negotiations, or offers or determinations made, about executive compensation arrangements or other terms and conditions of the employment of Messrs. McConville and Miller, including any employment agreements which may be entered into in the future. Our Nominees have committed not to collect fees or other cash or equity compensation for MMC board service or meetings for at least three years.

Messrs. Aran, Eason, Trask and Valentine would qualify as independent directors in accordance with the published listing requirements of the Nasdaq Global Market.

Except as disclosed in this proxy statement (including Annex I attached hereto), none of the Nominees or any of their respective affiliates or associates has any substantial interest, direct or indirect, by security holdings or otherwise, in any matter to be acted upon at the 2008 Annual Meeting discussed in this proxy statement or in MMC's 2008 Annual Meeting proxy statement.

The Nominees are considered to be participants in this proxy solicitation pursuant to SEC rules. Messrs. Clements, Eason, Hearne, Samuels and Trask became participants in this proxy solicitation by reason of being members (Mr. Eason is the Managing Member) of EHL and, in the case of Messrs. Eason, Hearne and Trask, EHL's request

BBC eBP e54852-002_a.pdf  May 9, 2008 - Page: 13 of 24

that they consent to be named as Nominees. The EHL members, who are founding stockholders of MMC, have known Mr. Miller since the founding of MMC several years ago and have requested that he consent to be named a nominee and to participate in this proxy solicitation. EHL has also requested that Mr. McConville, its Chief Operating Officer, Mr. Aran, its Chief Accounting Officer, and Mr. Valentine, its Chief Development Officer, also serve as Nominees because of their experience in the energy industry.

**WE STRONGLY URGE YOU TO VOTE "FOR" THE ELECTION OF OUR NOMINEES BY MARKING, SIGNING, DATING AND RETURNING THE ENCLOSED BLUE PROXY CARD IN THE POSTAGE PAID ENVELOPE PROVIDED TO YOU WITH THIS PROXY STATEMENT. IF YOU HAVE SIGNED THE BLUE PROXY CARD AND NO MARKING IS MADE, YOU WILL BE DEEMED TO HAVE GIVEN A DIRECTION TO VOTE ALL SHARES REPRESENTED BY THE BLUE PROXY CARD "FOR" THE ELECTION OF OUR NOMINEES NAMED ON THE BLUE PROXY CARD.**

**PROPOSAL NO. 2**
**AMENDMENT TO BYLAWS TO ESTABLISH AGE LIMITATION FOR DIRECTORS**

We are asking stockholders to amend the Bylaws of MMC to establish an age limitation for directors providing that no person shall be eligible to be elected as a director for a term which expires after he or she reaches age 72. The proposed amendment is to amend Section 2.2 of the Bylaws to add the following:

"No person shall be eligible to be elected as a director for a term which expires after he or she reaches age 72."

In MMC's proxy statement for the 2008 Annual Meeting, stockholder John J. Tennant, Jr. has proposed an age 75 mandatory retirement policy for outside directors. We agree with a mandatory retirement age for outside directors for the reasons described by Mr. Tennant. We believe, however, that it is preferable to have the fixed retirement age set forth in the Company's Bylaws and that a person should not be elected as a director for a term expiring after attaining age 72.

While the Bylaws are silent on the ability of stockholders to amend the Bylaws, Section 109 of the Delaware General Corporation Law provides that the conferral of the power to adopt, amend or repeal Bylaws upon the directors or governing body of a corporation, as the case may be, shall not divest the stockholders of such corporation of the power, nor limit their power, to adopt, amend or repeal Bylaws. We therefore do not believe that further action of the MMC Board is required for the effectiveness of Proposal 2 after stockholder approval.

**WE STRONGLY URGE YOU TO VOTE "FOR" THE PROPOSAL TO AMEND THE BYLAWS TO ESTABLISH AGE LIMITATION FOR DIRECTORS ON THE ENCLOSED BLUE PROXY CARD.**

**PROPOSAL NO. 3**
**REPEAL OF ADDITIONAL BYLAWS OR BYLAW AMENDMENTS**

We are asking stockholders to repeal each provision of the Bylaws and any and all amendments to the Bylaws (whether effected by supplement to, deletion from or revision of the Bylaws) adopted since March 7, 2008 and until the conclusion of the Annual Meeting, other than those provisions which were duly adopted by the stockholders of MMC and those provisions which under Delaware law cannot be repealed by the stockholders of MMC.

This Proposal 3 is designed to prevent the current directors of MMC from taking actions to amend the Bylaws to attempt to nullify or delay the ability of stockholders to act under the foregoing Proposals. If Proposal 3 is adopted, it would apply to new Bylaws, or Bylaw amendments, adopted only between March 7, 2008 and the Annual Meeting. Based on publicly available information, the most recent amendment to the Bylaws was adopted on December 19, 2007 and no amendments after that date have been publicly disclosed.

While we are not aware of any Bylaws adopted since March 7, the effect of Proposal 3 would be to repeal any Bylaw adopted by the Board without stockholder approval since March 7 and before the conclusion of the Annual Meeting. Although the intent of the Proposal 3 is to prevent the MMC Board from amending the Bylaws to impede stockholders from voting on the foregoing Proposals, the adoption of Proposal 3 may have unintended consequences. For example, a Bylaw may have been adopted since March 7 and prior to the meeting date which has not

10

been disclosed but may be favorable to stockholders. A Bylaw may also have been adopted that would repeal a Bylaw that does not have the effect of impeding our proxy solicitation. The adoption of Proposal 3 would repeal such Bylaw.

While the Bylaws are silent on the ability of stockholders to amend the Bylaws, Section 109 of the Delaware General Corporation Law provides that the conferral of the power to adopt, amend or repeal Bylaws upon the directors or governing body of a corporation, as the case may be, shall not divest the stockholders of such corporation of the power, nor limit their power, to adopt, amend or repeal Bylaws. We therefore do not believe that further action of the MMC Board is required for the effectiveness of Proposal 3 after stockholder approval.

**WE STRONGLY URGE YOU TO VOTE "FOR" THE PROPOSAL TO REPEAL ADDITIONAL BYLAWS OR BYLAW AMENDMENTS, AS DESCRIBED ABOVE, ON THE ENCLOSED BLUE PROXY CARD.**

## OTHER PROPOSALS

Except as discussed herein and as discussed in the 2008 proxy statement of MMC, we are not aware of any other proposals to be brought before the Annual Meeting. However, we intend to bring before the Annual Meeting such business as we determine may be appropriate, including, without limitation, nominating additional persons for directorships, or making other proposals as may be appropriate to address any action of the MMC Board not publicly disclosed prior to the date of this proxy statement. Should other proposals be brought before the annual meeting, we will vote the **BLUE proxy cards** with respect to such matters in our discretion to the extent permitted.

If you vote your **Blue proxy card**, you will not have the opportunity to vote on Proposal No. 2 (Ratification of Independent Auditors), Proposal No. 3 (Stockholder Proposal to Adopt a Policy which Provides for a Mandatory Retirement Age of 75 for Outside Directors), Proposal No. 4 (Stockholder Proposal to Engage the Services of an Experienced Broker to Market and Sell MMC Energy, Inc.) or Proposal No. 5 (Stockholder Rights to Authorize a Common Stock Repurchase Program) that are described in the 2008 Proxy Statement of MMC and are presented on MMC management's white proxy card. Stockholders who choose to vote the **Blue proxy card** will be disenfranchised as to their ability to vote on those matters.

## QUORUM

The holders of a majority of the number of Shares outstanding and entitled to vote at the Annual Meeting must be present in person or represented by proxy in order to constitute a quorum for the transaction of business. Abstentions and broker non-votes will be included for purposes of determining whether a quorum exists. Broker non-votes occur when brokers do not receive voting instructions from their customers on non-routine matters and consequently have no discretion to vote on those matters. If your Shares are held in the name of a brokerage firm, bank nominee or other institution, you should contact the person responsible for your account and give instructions for a voting instruction card to be issued so that your Shares will be represented and voted at the Annual Meeting.

Rule 452 of the New York Stock Exchange permits a broker member to vote on certain routine, uncontested matters without specific instructions from the beneficial owners so long as the broker has transmitted proxy material to the beneficial owner at least 15 days prior to the annual meeting of stockholders. It is our view that, to the extent that we distribute material to the brokers for forwarding on to beneficial owners, the election of directors would become a contested item and therefore the brokers will not issue a "routine" vote on behalf of the beneficial owners that have not instructed the brokers as to how they wish to vote on the election of directors. If a beneficial owner wishes to vote, such owner must provide the broker with specific instruction to vote.

## REQUIRED VOTE

According to the most recent proxy statement filed by MMC with the Securities and Exchange Commission, directors are elected (Proposal 1 described above) by a plurality of the votes cast, either in person or by proxy, at the Annual Meeting. That means that the director nominees with the most votes for available board seats will be elected.

11

BBC eBP e54852-l002_a.pdf May 9, 2008 - Page 15 of 24

Only votes FOR count. Brokers do not have discretionary voting power with respect to this election of directors. Accordingly, broker non-votes will have no effect on the outcome of the election of directors.

Proposals 2 and 3 (described above) must be approved by the affirmative vote of a majority of the Shares entitled to vote on the proposal and present in person or represented by proxy at the Annual Meeting. With respect to the matters other than the election of directors, broker non-votes will not be considered to be Shares present, but abstentions will be considered to be Shares present and, therefore, abstentions will have the effect of votes against Proposals 2 and 3.

### RECORD DATE AND VOTING PROCEDURES

According to MMC's proxy statement, as of March 31, 2008, MMC had issued and outstanding 14,144,347 Shares entitled to be voted at the Annual Meeting. Each Share is entitled to one vote on each matter submitted to a vote of stockholders. The MMC Charter denies cumulative voting rights. Only stockholders of record at the close of business on March 31, 2008 ("Record Date") will be entitled to vote at the Annual Meeting. If your Shares are registered as of the Record Date directly in your name with MMC's transfer agent, Continental Stock Transfer & Trust Company, you are considered with respect to those Shares the stockholder of record, and these proxy materials are being sent directly to you. As the stockholder of record, you have the right to submit your voting proxy directly to EHL using the enclosed **BLUE proxy card** or to vote in person at the Annual Meeting.

If your Shares are held in a stock brokerage account or by a bank or other nominee, you are considered the beneficial owner of Shares held in "street name." These proxy materials are being forwarded to you by your broker who is considered, with respect to those Shares, the stockholder of record. As the beneficial owner, you have the right to direct your broker to vote your Shares, and your broker or nominee has enclosed a voting instruction card for you to use. If your Shares are held as of the Record Date by a broker or nominee, please return your voting instruction card as early as possible to ensure that your Shares will be voted in accordance with your instructions. You are also invited to attend the Annual Meeting; however, since you are not the stockholder of record, you may not vote these Shares in person at the meeting unless you comply with the procedure described below.

If your Shares are held in the name of a custodian and you want to vote in person at the Annual Meeting, you may specially request a document called a "legal proxy" from the custodian and bring it to the Annual Meeting.

Stockholders of record may appoint proxies to vote their Shares by signing, dating and mailing the **BLUE proxy card** in the envelope provided. Whether or not you are able to attend the Annual Meeting, you are urged to complete the accompanying **BLUE proxy card** and return it in the enclosed self-addressed, prepaid envelope. All valid proxies received prior to the meeting will be voted. If you specify a choice with respect to any item by marking the appropriate box on the **BLUE proxy card**, the Shares will be voted in accordance with that specification. Shares represented by properly executed, but unmarked, **BLUE proxy cards** will be voted at the Annual Meeting FOR the election of our Nominees to the MMC Board and FOR our other Proposals described herein, and in the discretion of the persons named as proxies on all other matters as may properly come before the Annual Meeting to the extent permitted.

You are being asked to elect the Nominees and to approve the other Proposals described herein. The enclosed **BLUE proxy card** may only be voted for the Nominees and does not confer voting power with respect to the Company's nominees. Accordingly, the **BLUE proxy card** will not provide you with the opportunity to vote for any of the Company's nominees. You can only vote for the Company's nominees by signing and returning a proxy card provided by the Company. Stockholders should refer to the Company's proxy statement for the names, backgrounds, qualifications and other information concerning the Company's nominees. The participants in this solicitation intend to vote all of their Shares in favor of our Nominees and our other Proposals described herein. If you have any questions or require any assistance in executing your proxy, please contact us as follows:

**Energy Holdings Limited LLC**
**P.O. Box 97**
**Wilmington, NC 28402**

**Call Toll-Free: 1-888-353-1113**

12

## REVOCATION OF PROXIES

Stockholders of MMC may revoke their proxies at any time prior to the time such proxies are voted by attending the Annual Meeting and voting in person (although attendance at the Annual Meeting will not in and of itself constitute revocation of a proxy) or by delivering a written notice of revocation. The delivery of a subsequently dated proxy which is properly completed will also constitute a revocation of any earlier proxy. The revocation may be delivered either to Energy Holdings Limited LLC at P.O. Box 97, Wilmington, NC 28402 or to the Corporate Secretary of MMC at the address provided by MMC in MMC's Proxy Statement.

Although a revocation is effective if delivered to MMC, we ask that you also mail to us either the original or photostatic copies of all revocations at P.O. Box 97, Wilmington, NC 28402 so that we will be aware of all revocations and can more accurately determine the number of proxies we receive. Additionally, we may use this information to contact stockholders who have revoked their proxies in order to solicit later dated proxies for the election of the Nominees and approval of our other Proposals described herein.

**IF YOU WISH TO VOTE "FOR" THE ELECTION OF OUR NOMINEES TO THE MMC BOARD AND/OR "FOR" OUR OTHER PROPOSALS DESCRIBED IN THIS PROXY STATEMENT, PLEASE MARK, SIGN, DATE AND RETURN PROMPTLY THE ENCLOSED BLUE PROXY CARD IN THE POSTAGE-PAID ENVELOPE PROVIDED.**

## RIGHTS OF APPRAISAL OR DISSENTERS' RIGHTS

Stockholders of MMC do not have rights of appraisal or dissenters' rights with respect to the matters described in this proxy statement.

## SOLICITATION OF PROXIES; EXPENSES

We intend to deliver this proxy statement and a form of proxy to holders of at least the percentage of Shares required under applicable law to elect the Nominees and to approve the Proposals.

In connection with the solicitation of proxies for use at the Annual Meeting, we may solicit proxies in person, by mail, courier services, internet, advertisement, telephone, facsimile and by electronic mail. Proxies will be solicited from individuals, brokers, banks, bank nominees and other institutional holders. We will request banks, brokerage houses and other custodians, nominees and fiduciaries to forward all solicitation materials to the beneficial owners of the Shares they hold of record. We will reimburse these record holders for their reasonable out-of-pocket expenses in so doing. Solicitation of proxies will be made by us and any of the other Nominees, none of whom will receive additional compensation for such solicitation.

We are bearing the entire expense of this proxy solicitation. Costs related to this solicitation of proxies, including expenditures for attorneys, accountants, printing, transportation, postage and related expenses incidental to this solicitation, are currently anticipated to be approximately $450,000. We estimate that, through the date hereof, our expenses in connection with this solicitation are approximately $275,000.

## OTHER NOMINEE AND PARTICIPANT INFORMATION

In addition to EHL, each of the Nominees and each of the members of EHL are deemed to be "participants" in this proxy solicitation as such term is defined under Regulation 14A of the Exchange Act. The members of EHL are Messrs. G. William Eason, Joseph Hearne and Raiford Trask, Jr., who are Nominees, and Messrs. Robert Clements and Robert Samuels. The names and business addresses of, and the present principal occupation or employment and the name, principal business and address of any corporation or other organization in which employment is carried out by, each of the Nominees is set forth above under "PROPOSAL NO. 1–ELECTION OF DIRECTORS–The Nominees." Mr. Samuels is President and Chief Executive Officer of the following companies: Provident Jewelry Palm Beach, Provident Jewelry Naples and Provident Jewelry Jupiter. Mr. Samuels's business address is 8230 Steeplechase Drive, Palm Beach Gardens, FL 33418. Mr. Clements is a general contractor. Mr. Clements' business address is PO Box 15341, Wilmington, NC 28408.

BBC eBP e54852-l002_a.pdf May 9, 2008 - Page: 17 of 24

On February 7, 2008, MMC and Mr. Miller entered into a Separation Agreement with respect to the termination of his services for MMC. Under the Separation Agreement, MMC paid Mr. Miller severance pay in the aggregate amount of $1,121,762 (gross), and is obligated to pay the cost of Mr. Miller's COBRA continuation coverage in MMC's medical plan for eighteen (18) months. Such amounts are in lieu of and in full satisfaction of any amounts that might otherwise be payable to Mr. Miller under any contract, plan or policy including but not limited to his employment agreement dated May 15, 2006 (the "Employment Agreement"). In consideration of the above payments, MMC and Mr. Miller agreed, among other things, that Mr. Miller would (i) release MMC from any and all claims and liability of whatever kind arising prior to February 7, 2008, including but not limited to certain claims relating to the Employment Agreement; (ii) transfer certain intellectual property rights acquired, created or maintained in connection with Mr. Miller's employment by or association with MMC; and (iii) abide by certain non-competition, non-disparagement and non-solicitation provisions set forth in the Employment Agreement. Under the Separation Agreement, MMC also agreed to release Mr. Miller from any and all claims and liability of whatever kind arising prior to February 7, 2008, with certain exceptions, and abide by a non-disparagement agreement with respect to Mr. Miller. Also pursuant to the Separation Agreement, Mr. Miller was required to resign from the Board of Directors of MMC effective as of February 15, 2008.

During 2007, Mr. Miller earned salary from MMC in capacities as its Chairman, Chief Executive Officer and President of $341,196 and a bonus of $120,000. Mr. Miller's compensation for 2006 is reported in MMC's proxy materials related to the 2008 Annual Meeting and such compensation disclosure is incorporated by reference herein.

Mr. Hearne is the father-in-law of Karl W. Miller.

Except as indicated in this Proxy Statement, none of the Nominees has carried on an occupation or employment, during the past five years, with MMC or any corporation or organization which is or was a parent, subsidiary or other affiliate of MMC, and none of the Nominees has ever served on the Board of Directors of MMC. Except as previously indicated in this Proxy Statement with respect to Mr. Miller, no Nominee is involved in any pending legal proceeding with respect to MMC.

Except as set forth in this Proxy Statement (including Annex I hereto),

(i) during the past ten years, no participant in this solicitation has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

(ii) no participant in this solicitation directly or indirectly beneficially owns any securities of MMC.

(iii) no participant in this solicitation owns any securities of MMC which are owned of record but not beneficially.

(iv) no part of the purchase price or market value of the securities of MMC purchased or sold within the past two years by any participant in this solicitation is represented by funds borrowed or otherwise obtained for the purpose of acquiring or holding such securities.

(v) no participant in this solicitation is, or within the past year was, a party to any contract, arrangement or understanding with any person with respect to any securities of MMC, including, but not limited to joint ventures, loan or option arrangements, puts or calls, guarantees against loss or guarantees of profit, division of losses or profits, or the giving or withholding of proxies, provided that participants in this solicitation who were the record owner of Shares provided proxies for the voting of their Shares at the October 17, 2007 Annual Meeting of Stockholders of MMC.

(vi) no associate of any participant in this solicitation owns beneficially, directly or indirectly, any securities of MMC.

(vii) no participant in this solicitation owns beneficially, directly or indirectly, any securities of any parent or subsidiary of MMC.

(viii) no participant in this solicitation or any of his associates or immediate family members had a direct or indirect material interest in any transaction, or series of similar transactions, since the beginning of MMC's last fiscal year, or has a direct or indirect material interest in any currently proposed transaction, or series of similar transactions, to which MMC or any of its subsidiaries was or is to be a participant, in which the amount involved exceeds $120,000.

BBC eBP e54852-l002_a.pdf May 9, 2008 - Page 18 of 24

(ix) no participant in this solicitation or any of his associates has any arrangement or understanding with any person with respect to any future employment by MMC or its affiliates, or with respect to any future transactions to which MMC or any of its affiliates will or may be a party.

(x) no person, including any member of EHL, who is a party to an arrangement or understanding pursuant to which the Nominees are proposed to be elected, has a substantial interest, direct or indirect, by security holdings or otherwise in any matter to be acted on at the Annual Meeting.

(xi) no participant in this solicitation or any of his associates is party to any material proceedings adverse to MMC or any of its subsidiaries or has a material interest adverse to MMC or any of its subsidiaries.

(xii) no participant in this solicitation has held positions or offices with MMC and there is no arrangement or understanding between any participant in this solicitation and any other person(s) pursuant to which such participant in this solicitation was or is to be selected as a director or participant in this solicitation.

(xiii) there is no family relationship between any participant in this solicitation and any current director or executive officer of MMC.

(xiv) no participant in this solicitation was involved during the past five years in any of the legal proceedings of the type set forth in Item 401 (f) of Regulation S-K of the SEC Rules.

(xv) no participant in this solicitation failed to file on a timely basis reports required by section 16(a) of the Securities and Exchange Act with respect to MMC.

(xvi) no compensation was awarded to, earned by, or paid to any participant in this solicitation during MMC's last completed fiscal year that would have had to be disclosed under Item 402 of Regulation S-K of the SEC Rules if such participant in this solicitation had been nominated, or intended to be nominated, by the Board of Directors of MMC.

Annex I attached hereto sets forth, as to each participant in this solicitation, all purchases and sales of securities of MMC effected during the past two years and their beneficial ownership of Shares of MMC.

## ADDITIONAL INFORMATION

This proxy statement omits certain disclosure required by applicable law to be included in MMC's proxy statement. This disclosure includes, among other things, the securities of MMC held by MMC's directors, director nominees, management and 5% stockholders, biographical information on MMC's current directors and executive officers, information concerning executive and director compensation, and certain other information regarding the 2008 Annual Meeting. Stockholders should refer to MMC's proxy statement in order to review this disclosure. MMC's proxy statement also contains information relating to the deadline for submitting stockholder proposals for inclusion in MMC's proxy statement for MMC's 2009 Annual Meeting and the deadline for stockholders to propose business for consideration at the 2009 Annual Meeting. Accordingly, reference is made to MMC's proxy statement for such information.

Except as otherwise noted herein, the information concerning MMC has been taken from or is based upon documents and records on file with the SEC and other publicly available information. Accordingly, we do not take any responsibility for the accuracy or completeness of statements and other information taken from MMC's proxy statement or other public documents, or for any failure by MMC to disclose any events that may affect the significance or accuracy of such information.

WE URGE YOU TO SIGN, DATE AND RETURN THE BLUE PROXY CARD IN FAVOR OF THE ELECTION OF OUR NOMINEES AND OUR OTHER PROPOSALS DESCRIBED IN THIS PROXY STATEMENT.

Dated: May 8, 2008

### IMPORTANT

Please review this document and the enclosed materials carefully. YOUR VOTE IS VERY IMPORTANT, no matter how many or how few Shares you own.

1. If your Shares are registered in your own name, please mark, sign, date and return the enclosed **BLUE proxy card** to EHL in the postage-paid envelope provided today.

2. If you have previously signed and returned a White proxy card to MMC, you have every right to change your vote to a vote FOR the election of our Nominees. You may revoke any White proxy card already sent to MMC by marking, signing, dating and returning the enclosed **BLUE proxy card** in the postage-paid envelope provided. Any proxy may be revoked at any time prior to the 2008 Annual Meeting by delivering a written notice of revocation or a later dated proxy for the 2008 Annual Meeting to us or by voting in person at the 2008 Annual Meeting. ONLY YOUR LATEST DATED PROXY FOR THE ANNUAL MEETING WILL BE COUNTED AT THE ANNUAL MEETING.

3. If your Shares are held in the name of a brokerage firm, bank nominee or other institution, **only it can sign a BLUE proxy card with respect to your Shares** and only after receiving your specific instructions. Accordingly, please vote your Shares according to the enclosed voting instruction form or contact the person responsible for your account and instruct that person to execute the **BLUE proxy card** representing your Shares. We urge you to confirm in writing your instructions to Energy Holdings Limited LLC at the address provided below so that we will be aware of your instructions and can take steps to ensure that your instructions are followed.

4. After signing the enclosed **BLUE proxy card**, we urge you not to sign or return the White proxy card, even as a sign of protest.

**If you have any questions, require assistance in executing your BLUE proxy card, or need additional copies of these proxy materials, please contact us as follows:**

**Energy Holdings Limited LLC**
**P.O. Box 97**
**Wilmington, NC 28402**

**Call Toll-Free: 1-888-353-1113**

BBC eBP e54852-002_a.pdf  May 9, 2008 - Page 20 of 24

## SECURITY OWNERSHIP OF NOMINEES, EHL AND MESSRS. CLEMENTS AND SAMUELS

| Nominee | Title of Class | Number of Shares Beneficially Owned | Percent of Class* |
|---|---|---|---|
| EHL . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Common Stock | 539,386 | 4.0 |
| Ketheesch Aran . . . . . . . . . . . . . . . . . . . . . | Common Stock | 0 | — |
| G. William Eason** . . . . . . . . . . . . . . . . . | Common Stock | 567,447 | 4.0 |
| Robert Clements . . . . . . . . . . . . . . . . . . . . | Common Stock | 0 | — |
| Joseph C. Hearne . . . . . . . . . . . . . . . . . . . . | Common Stock | 0 | — |
| Kevin McConville . . . . . . . . . . . . . . . . . . . . | Common Stock | 0 | — |
| Karl W. Miller . . . . . . . . . . . . . . . . . . . . . . | Common Stock | 714,828 | 5.0 |
| Robert Samuels . . . . . . . . . . . . . . . . . . . . . | Common Stock | 0 | — |
| Raiford Trask, Jr. . . . . . . . . . . . . . . . . . . . | Common Stock | 0 | — |
| Tony A. Valentine . . . . . . . . . . . . . . . . . . . | Common Stock | 0 | — |

\*     These percentages have been calculated based on the 14,144,347 Shares stated to be outstanding as of March 31, 2008 according to the 2008 Annual Meeting proxy statement of MMC.

\*\*   Mr. Eason owns directly 8,061 Shares. These Shares were acquired with personal funds. Mr. Eason has sole power with respect to the voting and disposition of these Shares. Mr. Eason also beneficially owns 559,386 Shares which represent the aggregate number of Shares beneficially owned by Energy Holdings Limited LLC ("EHL"). Pursuant to the EHL LLC Agreement, Mr. Eason, as the managing member of EHL, has sole voting power with respect to all of the Shares held by EHL. Mr. Eason expressly disclaims any beneficial ownership of such Shares.

### BENEFICIAL OWNERSHIP

The Nominees, EHL and Messrs. Clements and Samuels are deemed to beneficially own (as such term is defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended), in the aggregate, 1,278,775 Shares, representing approximately 9% of the issued and outstanding Shares, based upon the amount of Shares reported to be issued and outstanding in the 2008 proxy statement of MMC.

Pursuant to the Amended and Restated Limited Liability Company Agreement of EHL, dated as of April 3, 2008 (the "EHL LLC Agreement"), by and among the Company, William Eason, Joseph C. Hearne, Raiford G. Trask, Jr., Trustee under the Raiford G. Trask, Jr. Revocable Trust Agreement dated May 23, 2006, Robert Clements and Robert Samuels (the "Members"), each of the Members (of whom three, Messrs. Eason, Hearne and Trask, are Nominees) have contributed shares of common stock of MMC to the capital of EHL in exchange for membership interests in EHL. Although the members of EHL have sent their MMC Shares to MMC's transfer agent for recordation of transfer, EHL still has not yet received from MMC its MMC Shares registered in its name.

Mr. Aran does not currently own Shares.

Mr. Clements does not currently own Shares.

Mr. Eason owns directly 8,061 Shares. These Shares were acquired with personal funds. Mr. Eason has sole power with respect to the voting and disposition of these Shares. Mr. Eason also beneficially owns 559,386 Shares which represent the aggregate number of Shares beneficially owned by EHL. Pursuant to the EHL LLC Agreement, Mr. Eason, as the managing member of EHL, has sole voting power with respect to all of the Shares held by EHL. Mr. Eason expressly disclaims any beneficial ownership of such Shares.

Mr. Hearne does not currently own Shares.

Mr. McConville does not currently own Shares.

17

BBC eBP e54852-i002_a.pdf May 9, 2008 - Page 21 of 24

Mr. Miller owns directly 714,828 Shares. These Shares were acquired with personal funds. Mr. Miller has sole power with respect to the voting and disposition of the Shares beneficially owned by him.

Mr. Samuels does not currently own Shares.

Mr. Trask does not currently own Shares.

Mr. Valentine does not currently own Shares.

### Purchase and Sales of Securities of MMC

All purchases and sales of securities of MMC effected during the past two years, the dates on which they were purchased or sold and the amount purchased or sold on each such date by the Nominees and EHL are listed below.

Ketheesch Aran — None.

Robert Clements — Mr. Clements contributed 77,994 Shares to EHL in connection with the formation of EHL in March 7, 2008.

G. William Eason — Mr. Eason contributed 160,235 Shares to EHL in connection with the formation of EHL on March 7, 2008. Mr. Eason remains the record owner of 8,061 Shares. As the Managing Member of EHL, Mr. Eason beneficially owns 559,386 Shares held by EHL because he has sole voting power with respect to those Shares.

Joseph C. Hearne — Mr. Hearne contributed 156,734 Shares to EHL in connection with the formation of EHL on March 7, 2008.

Kevin McConville — None.

Karl W. Miller — The table below sets forth all purchases and sales of securities of MMC effected during the past two years, the dates on which they were purchased or sold and the amount purchased or sold on each such date by Karl W. Miller. As of the close of business on April 17, 2008, Mr. Miller beneficially owned 714,828 shares of common stock of MMC.

BBC eBP e54852-002_a.pdf May 9, 2008 - Page 22 of 24

18

BBC eBP e54852-l002_a.pdf May 9, 2008 - Page: 23 of 24

| Date of Transaction | Shares Purchased |
|---|---|
| 8/16/2007 | 12,000 |
| 8/17/2007 | 3,000 |
| 8/20/2007 | 5,000 |
| 8/21/2007 | 100 |
| 8/23/2007 | 4,880 |
| 8/24/2007 | 10,000 |
| 8/30/2007 | 25,700 |
| 11/16/2007 | 11,000 |
| 11/19/2007 | 4,00 |
| 11/27/2007 | 32,753 |
| 2/29/2008 | 200 |
| 3/03/2008 | 1,200 |
| 3/04/2008 | 119 |
| 3/05/2008 | 500 |
| 3/05/2008 | 310 |
| 3/06/2008 | 1,500 |
| 3/10/2008 | 900 |
| 3/11/2008 | 2,400 |
| 3/11/2008 | 2,500 |
| 3/11/2008 | 400 |
| 3/12/2008 | 3,500 |
| 3/13/2008 | 500 |
| 3/14/2008 | 36,000 |
| 3/14/2008 | 7,042 |
| 4/14/2008 | 10,000 |
| 4/17/2008 | 3,500 |

Robert Samuels — Mr. Samuels contributed 14,750 Shares to EHL in connection with the formation of EHL on March 7, 2008,

Raiford G. Trask, Jr., Trustee under the Raiford G. Trask, Jr. Revocable Trust Agreement dated May 23, 2006 — Mr. Trask contributed 156,734 Shares to EHL in connection with the formation of EHL on March 7, 2008.

Tony Valentine — None.

EHL — Pursuant to the EHL LLC Agreement, each of the Members of EHL have contributed shares of common stock of MMC to the capital of EHL in exchange for membership interests in EHL.

The interests that the founding stockholders of MMC, including Mr. Miller, held in MMC Energy North America LLC were converted into Shares on May 15, 2006.

19

BBC eBP e54852-002_a.pdf May 9, 2008 - Page 24 of 24