UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MMC ENERGY, INC.,

                              Plaintiff,

          -against-                               08 Civ. No. 4353 (DAB)

KARL W. MILLER,

                              Defendant.

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT'S MOTION TO DISMISS**

                                                CHADBOURNE & PARKE LLP
                                                Attorneys for Defendant
                                                30 Rockefeller Plaza
                                                New York, New York  10112
                                                (212) 408-5100

Thomas J. Hall
Bernadette K. Galiano

      Of Counsel

# TABLE OF CONTENTS

**Page**

FACTS .................................................................................................................................2

ARGUMENT .......................................................................................................................3

    I.    THE BREACH OF CONTRACT CLAIM SHOULD BE
        DISMISSED............................................................................................3

        A.    The Complaint Fails To State A Claim For
             Breach of Contract .......................................................................3

        B.    The Complaint Fails To Allege Breach
             Of Contract Damages ...................................................................7

    II.   THE FRAUD CLAIM SHOULD BE DISMISSED .................................10

        A.    The Fraud Claim Fails To State A Claim.....................................10

        B.    The Fraud Claim Must Be Dismissed
             Pursuant To Rule 9(b) ..................................................................11

    III.  THE COMPLAINT FAILS TO STATE A CLAIM FOR
        INTERFERENCE WITH CONTRACT OR INTERFERENCE
        WITH ANY ADVANTAGEOUS BUSINESS RELATIONS .................11

        A.    The Complaint Fails To Plead A Claim
             For Interference With Contract.....................................................12

        B.    The Complaint Fails To Plead A Claim For
             Interference With Prospective Business Relations .......................13

    IV.  IF ONLY THE SECOND AND THIRD CAUSES OF ACTION
        ARE DISMISSED, THE AMOUNT IN CONTROVERSY IS
        BELOW $75,000....................................................................................14

CONCLUSION ...................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page**

### CASES

American Preferred Prescription, Inc. v. Health Management, Inc., 252 A.D.2d 414, 678 N.Y.S.2d 1 (1st Dep't 1998) .................................................................. 12

Avile v. Feitell, 07 Civ. 2987, 2008 U.S. Dist. LEXIS 40319 (S.D.N.Y. May 20, 2008) ............................................................................................................... 11

C3 Media & Mktg. Group. LLC v. Firstgate Internet Inc., 419 F. Supp. 2d 419 (S.D.N.Y. 2005) .................................................................................... 5, 10

DiFolco v. MSNBC Cable L.L.C., 06 Civ. 4728, 2007 U.S. Dist. LEXIS 23440 (S.D.N.Y. Mar. 29, 2007) ................................................................................... 13

Fitzgerald v. Title Guar. & Trust Co., 290 N.Y. 376 (1943) ............................................. 8

Fund v. Anderson, 182 Misc. 2d 166, 701 N.Y.S.2d 812 (Kings Co. 1999) ..................... 5

Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988) ..................................................................................................... 7

Gould v. Cayuga County Nat'l Bank, 86 N.Y. 75 (1881) ................................................... 8

Jabbour v. Albany Med. Ctr., 237 A.D.2d 787, 654 N.Y.S.2d 862 (3rd Dep't 1997) ........................................................................................................ 13

Jack L. Inselman & Co. v. FNB Financial Co., 41 N.Y.2d 1078, 396 N.Y.S.2d 347 (1977) ............................................................................................................... 12

Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76 (1986) ........ 12

Levine v. Yokell, 258 A.D.2d 296, 685 N.Y.S.2d 196 (1st Dep't 1999) .......................... 13

Lieberman v. Templar Motor Co., 236 N.Y. 139 (1923) ................................................... 8

Mencher v. Weiss, 306 N.Y. 1 (1953) ................................................................................ 4

Milan Music, Inc. v. Emmel Commc'ns Booking, Inc., 37 A.D.3d 206, 829 N.Y.S.2d 485 (1st Dep't 2007) ...................................................................................7

O'Brien v. Nat'l Property Analysts Partners, 936 F.2d 674 (2d Cir. 1991) .......................11

Pang v. Allstate Ins. Co., 173 F.3d 845 (2d Cir. 1999) ....................................................14

Payrolls & Tabulating, Inc. v. Sperry Rand Corp., 22 A.D.2d 595, 257 N.Y.S.2d 884 (1st Dep't 1965)....................................................................................................6

Poughkeepsie Savings Bank v. R&G Sloane Mfg. Co., 84 A.D.2d 212, 445 N.Y.S.2d 560 (2d Dep't 1981)..............................................................................12

Remington Prods. Corp. v. American Aerovap, Inc., 97 F. Supp. 644 (S.D.N.Y. 1951) ............................................................................................................................6

Schenkman v. New York College of Health Professionals, 29 A.D.3d 671, 815 N.Y.S.2d 159 (2d Dep't 2006)..................................................................................10

Schuckman Realty, Inc. v. Marine Midland Bank, 244 A.D.2d 400, 664 N.Y.S.2d 73 (2d Dep't 1997) .......................................................................................13

Shomron ex rel. R&I Realty Assocs. v. Fuks, No. 102882/02, 2006 WL 3026299 (N.Y. Co. Sept. 25, 2006)...........................................................................................8

Simon v. Electrospace Corp., 28 N.Y.2d 136, 320 N.Y.S.2d 225 (1971) ..........................8

Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781 (2d Cir. 1994) ...........14

Truong v. Littleman, 06 Civ. 1431, 2006 U.S. Dist. LEXIS 85617 (S.D.N.Y. Nov. 22, 2006) ..................................................................................................................14

Tsilogiannis v. 53-11 90th Street Assocs., Inc., 293 A.D.2d 468, 739 N.Y.S.2d 633 (2d Dep't 2002) .................................................................................................10

White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281 (2d Cir. 2006)........12

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................ 1, 2, 10, 11

Fed. R. Civ. P. 12(b)(1) .......................................................................................................14

Fed. R. Civ. P. 12(b)(6) .........................................................................................................1

**TREATISES**

Louis Loss & Joel Seligman, Securities Regulation, § 6-C-3 (3d ed. 2007) ..................6, 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MMC ENERGY, INC.,

                      Plaintiff,

        -against-                          08 Civ. No. 4353 (DAB)

KARL W. MILLER,

                      Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

Defendant Karl W. Miller ("Miller") respectfully submits this memorandum of law in support of his motion pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint herein of plaintiff MMC Energy, Inc. ("MMC") in its entirety.

MMC's Complaint asserts three causes of action against Miller, breach of contract, fraud and tortious interference with advantageous business relations, all arising from the threshold allegation that Miller violated Paragraph 7 of his Separation Agreement (Hall Dec. Ex. 1)[1] with MMC by "acting through EHL [to] disparage[]

---

[1] References "Hall Dec." are to the Declaration of Thomas J. Hall dated July 23, 2008 submitted herewith.

MMC's business and reputation." Complaint ¶ 17.  As discussed below, the Complaint utterly fails to state any claim.  In addition, the Complaint fails to plead fraud with the specificity required by Rule 9(b).

## FACTS

The Complaint herein alleges that defendant Miller was the former Chief Executive Officer of plaintiff MMC, an energy company.  Complaint ¶ 1.  On February 7, 2008, Miller and MMC entered into a Separation Agreement which ended Miller's affiliation with the company.  Complaint ¶¶ 1, 2.  Paragraph 7 of the Separation Agreement prohibited Miller from making any statements with the intention of disparaging MMC or disrupting its normal business operations.  It is alleged that under the Separation Agreement, MMC paid Miller severance of $1,121,762.  Complaint ¶ 4, p. 11 ¶ A.

The Complaint asserts that beginning a month later, on March 7, 2008, Miller and a company called Energy Holdings Limited LLC ("EHL") commenced a campaign to solicit proxies form MMC's shareholders in connection with an upcoming election for the MMC's board of directors.  Complaint ¶ 19.  The Complaint alleges that, in connection with that proxy contest, EHL allegedly sent a letter to MMC's board on March 7, 2008 (Complaint ¶19), and issued press releases on March 18, March 20, March 26, March 27, April 1, 2008 (Complaint ¶¶ 20-25), which purportedly contained disparaging statements about MMC.  In addition, the Complaint alleges that on April 16, 2008, EHL and Miller

filed a proxy statement with the U.S. Securities & Exchange Commission which also contained disparaging statements about MMC.  Complaint ¶¶ 26-27.

## ARGUMENT

## I

## THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

### A. The Complaint Fails To State A Claim For Breach of Contract

MMC's first cause of action for breach of contract should be dismissed because, with one exception addressed below, MMC has failed to allege that any act *by Miller* violated the Separation Agreement.  As the Complaint makes clear, the allegedly "disparaging" statements were made in press releases and letters that were authored and disseminated by EHL, not Miller:

- In a March 7, 2008 letter to the MMC Board, "***EHL purported to indicate*** concern that 'cash reserves are being depleted' at the Company."  Complaint ¶ 19.[2]

- In an EHL press release dated March 20, 2008, "***EHL continued*** to malign MMC's management and leadership."  Complaint ¶ 21.

- In an EHL press release dated March 27, 2008, "***EHL expressed*** its purported 'disappointment and dismay' at MMC's 'announcement of a stock repurchase plan'."  Complaint ¶ 23.

---

[2]   Unless otherwise indicated, emphasis is added throughout this brief.

3

- In an EHL press release dated April 1, 2008, "***EHL claimed*** it had 'serious concerns about [MMC's] viability as a going concern,' that 'MMC is in critical condition and there has been no increase in shareholder value,' and 'MMC's share price has deteriorated 80 percent.'"  Complaint ¶ 24.

- In a letter to the MMC Board dated April 4, 2008, "***EHL reiterated*** its desire to interfere with and further impugn the actions of the MMC Board."  Complaint ¶ 25.

- "In addition, ***EHL issued*** another press release on April 4th attaching a copy of the April 4, 2008 letter to the MMC Board."  Complaint ¶ 25.

Indeed, those press releases (Hall Dec. Ex. 2) all provide at the end of each:  "Source: Energy Holdings Limited LLC," and each begins by saying it is an announcement by EHL, not Miller.

      Nowhere does the Complaint allege that EHL, when it issued these documents, was authorized to speak or act on Miller's behalf.  The Complaint does not allege that Miller was an owner of EHL, does not allege that he was a member, manager or employee of EHL, does not allege that EHL was his alter ego, and does not allege that he had any authority to direct EHL's actions.  Nor does the Complaint allege that EHL, in issuing the press releases, acted as Miller's agent.  In fact, the Complaint alleges just the opposite -- that a March 7, 2008 SEC filing announced that Miller was acting as EHL's agent.  Complaint ¶ 8. While an agent's actions and words may be attributable to his principle, the reverse certainly is not true.  See Mencher v. Weiss, 306 N.Y. 1, 4 (1953) ("where there is a disclosed principal-agent relationship and the contract relates to a matter of the agency, the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability

4

for, or to, that of his principal"); Fund v. Anderson, 182 Misc. 2d 166, 168, 701 N.Y.S.2d 812, 814 (Kings Co. 1999) (same). The only alleged connection between EHL and Miller was their joint effort to pursue a proxy contest to elect a new board of directors at MMC, as was their absolute right as MMC shareholders. Nothing in the Separation Agreement prevented Miller from participating in such a proxy contest.

Further, the Complaint's description of the press releases and letters as "disparaging" and "disrupting the normal operations of MMC" is baseless. First, MMC selectively quotes from these materials to make them appear as attacks on the board members. In fact, those materials simply promoted the qualifications and experience of the new proposed slate for the board. For example, the Complaint alleges that EHL's March 18, 2008 press release "impugned the MMC Board as not being 'focused,' 'driven,' 'energetic,' 'dynamic,' 'execution-oriented' or 'positioned to manage a micro-cap growth company.'" Complaint ¶ 20. That press release[3] actually says nothing of the kind. It reads:

> "As major investors [in MMC], EHL is focused on creating an enterprise that is energetic, dynamic and execution oriented," said Eason. "We will propose a board that is positioned to manage a micro-cap growth company which is dependent upon a highly driven and focused management team." Hall Dec. Ex. 3.

---

[3] In resolving a motion to dismiss for failure to state a claim, the court may consider documents incorporated in the complaint by reference. See C3 Media & Mktg. Group. LLC v. Firstgate Internet Inc., 419 F. Supp. 2d 419, 429 (S.D.N.Y. 2005).

5

This is hardly the "disparaging" attack depicted by MMC in its Complaint.  See, e.g., Payrolls & Tabulating, Inc. v. Sperry Rand Corp., 22 A.D.2d 595, 597, 257 N.Y.S.2d 884, 886 (1st Dep't 1965) (defining "disparagement" as "matter which is intended by its publisher to be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality"); Remington Prods. Corp. v. American Aerovap, Inc., 97 F. Supp. 644, 648 (S.D.N.Y. 1951) (distinguishing between disparagement and mere puffing).

Moreover, a proxy contest held in connection with MMC's annual election of directors simply did not interfere with, impair or disrupt "the normal operations of MMC." Complaint ¶ 30.  MMC's normal operations involve managing the electric power plants that it owns.  Complaint ¶ 1.  While the proxy contest may have disrupted the incumbent directors' hope of being reelected without a challenge, control of MMC's board of directors can simply not be construed as being part of MMC's "operations."  Not surprisingly, the Complaint fails to point to any "of its normal operations" that were in any way affected by the proxy contest.

The only act that the Complaint does directly attribute to Miller is the filing of a *preliminary* Schedule 14A proxy statement with the SEC on April 16, 2008 (Complaint ¶ 6), a copy of which is annexed as Exhibit 4 to the Hall Declaration.  Because the SEC acts as a mediator during a proxy contest, "attempting to obtain the clarification or deletion of questionable statements," the preliminary proxy statement was filed with the SEC pursuant to Rule 14-a.  Louis Loss & Joel Seligman, Securities Regulation, § 6-C-3

(3d ed. 2007). Not only does that filing itself indicate on page one that it is a "Preliminary Proxy Statement" (Hall Dec. Ex. 4 p. 1), but the Complaint itself alleges it was only "preliminary" (Complaint ¶ 6). Notably, not one of the statements that MMC finds so offensive in the preliminary draft proxy statement (Complaint ¶¶ 6, 26, 27) were included in the actual final Proxy Statement approved by the SEC and issued by EHL and Miller on May 8, 2008 to MMC's shareholders. Hall Dec. Ex. 5. Indeed, MMC nowhere alleges that the final proxy statement issued to MMC's shareholders, as opposed to the draft submitted for SEC review and comment, was in any way disparaging.

B.  **The Complaint Fails To Allege Breach Of Contract Damages**

The breach of contract claim should be dismissed for the additional reason that the Complaint fails to plead that MMC suffered any legally cognizable damage as a result of the alleged breach. Damage is an essential element of a claim for breach of contract. See Milan Music, Inc. v. Emmel Commc'ns Booking, Inc., 37 A.D.3d 206, 207, 829 N.Y.S.2d 485, 486 (1st Dep't 2007) ("without a clear demonstration of damages, there can be no claim for breach of contract"); Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 436, 529 N.Y.S.2d 777, 779 (1st Dep't 1988) (dismissing breach of contract claim where plaintiff failed to allege any facts showing damage). Instead, MMC asserts it was damaged by, and seeks the recovery of, the severance payment and medical insurance premiums it paid Miller under the Separation Agreement. Complaint ¶ 31. But those payments to which MMC bound itself by signing the Separation Agreement on February 7, 2008, well before the alleged breach, could not have been caused by the

alleged subsequent breach. The law is clear that compensatory damages for breach of contract are measured "by the loss sustained or gain prevented *at the time and place of breach*." Simon v. Electrospace Corp., 28 N.Y.2d 136, 145, 320 N.Y.S.2d 225, 232 (1971); see Lieberman v. Templar Motor Co., 236 N.Y. 139, 148-49 (1923).[4]

The damages MMC seeks would be available only if it plead a claim for rescission of the Separation Agreement. But the Complaint does not seek rescission, a sleight of hand that is perhaps understandable. MMC does not want rescission as rescission would obligate MMC to return to Miller all of the consideration it received from him under the Separation Agreement. See Fitzgerald v. Title Guar. & Trust Co., 290 N.Y. 376, 378-79 (1943) (to maintain an action for rescission, plaintiff must "restore or offer to restore whatever he had received"); Gould v. Cayuga County Nat'l Bank, 86 N.Y. 75, 79 (1881) (plaintiff seeking rescission "cannot retain any thing he received under the contract and yet proceed in disaffirmance thereof"); Shomron ex rel. R&I Realty Assocs. v. Fuks, No. 102882/02, 2006 WL 3026299, at * 4 (N.Y. Co. Sept. 25, 2006) ("It is well settled that a party induced by fraud to enter a contract may rescind the contract *and return the consideration*."). In addition to Miller's release of claims that he had against MMC and other benefits Miller conveyed to MMC thereunder, pursuant to

---

[4] Paragraph 18 of the Separation Agreement provides that it is governed by New York law.

Paragraph 4 of the Separation Agreement, Miller conveyed valuable intellectual property to MMC:

> "In consideration of the premises and covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, you [Miller] hereby assign, convey, or otherwise transfer to the Company, all rights, title, and interest in any and all **Intellectual Property Rights**, acquired, obtained, created or maintained in connection with your employment by or association with the Company, including, without limitation, **Intellectual Property Rights** obtained or created prior to the formation of the Company and subsequently used by the Company."  Ex. 1 ¶ 4.

The term "Intellectual Property Rights" as used above is defined to include (1) any U.S. and foreign patents, utility models and industrial designs, and applications; (2) any copyrights and copyrighted works of any country, including website content; (3) any U.S. or foreign trademarks, maskworks, trade dress, trade names, business names, service marks, brands, mark slogans, Internet domain names, including but not limited to MMC Energy, Inc. and MMC Energy LLC, as well as other uses specifically directed to the use of the name MMC Energy, icons, logos, and all goodwill associated with the foregoing; (4) any protectible or proprietary interest in know-how, trade secrets, database rights, invention disclosures and applications, software, operating manufacturing procedures, designs, specifications; (5) protectible or proprietary interest in any similar intangible asset of a technical, scientific or creative nature; and (6) any protectible or proprietary interests in or to any documents or other tangible media containing any of the foregoing. Ex. 1 ¶ 4.

As a matter of law, MMC is not entitled to recover the amounts it paid Miller under the Separation Agreement without asserting a claim for rescission, prevailing on that claim and returning the Intellectual Property Rights and other consideration to Miller.

## II

## THE FRAUD CLAIM SHOULD BE DISMISSED

### A.   The Fraud Claim Fails To State A Claim

MMC's second cause of action alleges that Miller committed fraud by entering into the Separation Agreement when "he did not intend to honor his obligations." Complaint ¶¶ 33-34.  This claim fails to state a claim and must be dismissed because it is duplicative of the breach of contract claim.  "It is well settled under New York law that a party cannot maintain a claim for fraud predicated on a breach of contract merely by alleging that the breaching party never intended to perform."  C3 Media & Mktg. Group LLC, 419 F. Supp. 2d 419, 430 (S.D.N.Y. 2005) (dismissing fraud claim as redundant of plaintiff's claim for breach of contract); see Schenkman v. New York College of Health Professionals, 29 A.D.3d 671, 672, 815 N.Y.S.2d 159, 161 (2d Dep't 2006) ("Moreover, the plaintiffs did not plead any viable fraud-based claim, since the only fraud charged related to a breach of contract."); Tsilogiannis v. 53-11 90th Street Assocs., Inc., 293 A.D.2d 468, 469, 739 N.Y.S.2d 633, 633 (2d Dep't 2002) ("A cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract.").

B.     **The Fraud Claim Must Be Dismissed  Pursuant To Rule 9(b)**

In addition, the fraud claim must be dismissed pursuant to Rule 9(b) of the Federal Rules of Civil Procedure which requires a party to plead fraud allegations with particularity.  See O'Brien v. Nat'l Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991) ("The purpose of Rule 9(b) is threefold – it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit.").  The fraud claim fails to plead any fraud separate from the breach of contract claim with the requisite particularity to satisfy Rule 9(b).  See Avile v. Feitell, 07 Civ. 2987, 2008 U.S. Dist. LEXIS 40319, at * 6 (S.D.N.Y. May 20, 2008) (dismissing fraud claim that "alleges neither any specific misleading statements, nor any circumstances raising an inference of [defendant's] intent to defraud").  For example, while the Complaint alleges that Miller misrepresented that he intended to honor his obligations under the Separation Agreement (Complaint ¶ 33), it fails to specify any such misrepresentation outside of the words in the Separation Agreement.

### III

### THE COMPLAINT FAILS TO STATE A CLAIM FOR INTERFERENCE WITH CONTRACT OR INTERFERENCE WITH ANY ADVANTAGEOUS BUSINESS RELATIONS

As its third cause of action, MMC alleges that "Miller intentionally, maliciously and improperly interfered with MMCs relationship with its shareholders, key investors, advisors, lenders *and/or* vendors."  Complaint ¶ 42.  The unique phrasing of

this claim makes it unclear whether it is alleging tortious interference with contractual relations or tortious interferences with existing or prospective business relations. Indeed, MMC's use of "and/or" in the foregoing allegation make clear that MMC itself does not know what it is alleging. Regardless of which tort is intended to be pleaded, the claim must be dismissed for failure to state a claim.

### A.     The Complaint Fails To Plead A Claim For Interference With Contract

To establish a claim for tortious interference with an existing contract, a plaintiff must allege (1) the existence of a valid contract between plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procuring of the breach, and (4) damages. See White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 285 (2d Cir. 2006); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1986); American Preferred Prescription, Inc. v. Health Management, Inc., 252 A.D.2d 414, 417, 678 N.Y.S.2d 1, 4 (1st Dep't 1998); Poughkeepsie Savings Bank v. R&G Sloane Mfg. Co., 84 A.D.2d 212, 217, 445 N.Y.S.2d 560, 564 (2d Dep't 1981) (per curiam). As the Complaint fails to allege the existence of any valid contract with a third party that was breached, or that such breach was intentionally procured by Miller, the Complaint fails to state a claim for tortious interference with an existing contract. See Lama Holding Co., 88 N.Y.2d at 425, 646 N.Y.S.2d at 82 (dismissal affirmed where no allegation of either intentional procurement of breach or actual breach); Jack L. Inselman & Co. v. FNB Financial Co., 41 N.Y.2d

1078, 1080, 396 N.Y.S.2d 347, 349 (1977) (mem.) (dismissal affirmed where no allegation of breach); Levine v. Yokell, 258 A.D.2d 296, 685 N.Y.S.2d 196, 196 (1st Dep't 1999) (tortious interference with contract claim dismissed because pleading did not allege that defendant intentionally procured an actual breach of contract without economic justification); Schuckman Realty, Inc. v. Marine Midland Bank, 244 A.D.2d 400, 401, 664 N.Y.S.2d 73, 75 (2d Dep't 1997) (mem.).

### B. The Complaint Fails To Plead A Claim For Interference With Prospective Business Relations

To establish a claim for interference with prospective business relations, a plaintiff must plead (1) the plaintiff had business relations with a third party, (2) the defendant interfered with those business relations, (3) the defendant used wrongful acts such as physical violence, fraud or economic pressures, not simply persuasion, and (4) the defendant's acts injured the relationship. See DiFolco v. MSNBC Cable L.L.C., 06 Civ. 4728, 2007 U.S. Dist. LEXIS 23440, at *24 (S.D.N.Y. Mar. 29, 2007); Jabbour v. Albany Med. Ctr., 237 A.D.2d 787, 790, 654 N.Y.S.2d 862, 865 (3rd Dep't 1997). "Along with demonstrating wrongful means, a plaintiff must also establish that the wrongful acts were the proximate cause of the rejection of the plaintiff's proposed contractual relations." DiFolco, 2007 U.S. Dist. LEXIS 23440, at *24. Again, the Complaint fails to allege these essential elements, most notably any MMC business relationship that was lost or injured as a result of Miller's alleged wrongful acts. Moreover, the Complaint specifically asserts that any alleged interference was caused by

13

EHL's issuance of the press releases. Complaint ¶ 42. As alleged in paragraphs 20-25 of the Complaint, and as discussed above, those press releases were issued by EHL, not Miller. Accordingly, the Complaint fails to state a claim for tortious interference with prospective business relations.

IV

**IF ONLY THE SECOND AND THIRD CAUSES OF ACTION ARE DISMISSED, THE AMOUNT IN CONTROVERSY IS BELOW $75,000**

In the event the second and third causes of action are dismissed, but the first count for breach of contract is not, this Court must consider dismissing this action for lack of subject matter jurisdiction, which is premised on diversity jurisdiction. Complaint ¶ 14. As noted above, the only damages sought on the breach of contract count -- return of payments MMC made to seller under the Separation Agreement -- are not recoverable absent a successful rescission claim which has not been plead. As such, the $75,000 amount in dispute threshold cannot be satisfied on the breach of contract claim, and the Complaint therefore should be dismissed pursuant to Rule 12(b)(1). See Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (if it appears to a legal certainty that the plaintiff cannot recover the amount claimed, the suit should be dismissed for lack of subject matter jurisdiction); Pang v. Allstate Ins. Co., 173 F.3d 845 (2d Cir. 1999) (lack of subject matter jurisdiction where plaintiff could not in good faith allege amount in controversy over $75,000 based on the allegations in his complaint); Truong v. Littleman, 06 Civ. 1431, 2006 U.S. Dist. LEXIS 85617, at * 14 (S.D.N.Y.

Nov. 22, 2006) (dismissing complaint for lack of subject matter jurisdiction where damages amount fell below the jurisdictional amount after several causes of action were dismissed).

## CONCLUSION

  For all the foregoing reasons, defendant respectfully requests that his motion to dismiss be granted in its entirety, with an award of attorneys' fees and costs to defendant.

            Respectfully submitted,

            CHADBOURNE & PARKE LLP


            By   /s/ Thomas J. Hall
               Thomas J. Hall  (TH 3398)
               A Member of the Firm
            Attorneys for Defendant
            30 Rockefeller Plaza
            New York, New York  10112
            (212) 408-5100


Thomas J. Hall
Bernadette K. Galiano
   Of Counsel

July 23, 2008