UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                    :
MMC ENERGY, INC.,                                   :
                          Plaintiff,                :
                                                    :
                                                    :
      vs.                                           :        08 Civ. 4353 (DAB)
                                                    :
KARL W. MILLER,                                     :
                          Defendant.                :
                                                    :
-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS


KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
Attorneys for Plaintiff

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...............................................................................................3

ARGUMENT ....................................................................................................................5

    I.   THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT .................5

        A.   The Complaint Asserts, in No Uncertain Terms, That Miller
            Violated the Separation Agreement and Disparaged MMC ...................................6

        B.   The Complaint Pleads Legally Cognizable Damages for Breach
            of Contract..........................................................................................................8

    II.  THE COMPLAINT CLEARLY STATES A CLAIM FOR FRAUD ...........................10

        A.   The Fraud And Contract Claims Can Stand Together ...........................................10

        B.   The Complaint Pleads Fraud With Sufficient Particularity ...................................12

    III. THE COMPLAINT STATES A CLAIM FOR TORTIOUS INTERFERENCE
         WITH ADVANTAGEOUS BUSINESS RELATIONS..................................................13

    IV. THE FIRST COUNT OF MMC'S COMPLAINT SATISFIES THE MINIMUM
         AMOUNT IN CONTROVERSY FOR DIVERSITY JURISDICTION .......................14

CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

Avile v. Feitell, 07 Civ. 2987, 2008 U.S. Dist. LEXIS 40319 (S.D.N.Y. May 20, 2008)........... 13

Blank v. Baronowski, 959 F. Supp. 172 (S.D.N.Y. 1997) (Scheindlin, J.)............................... 5, 11

Chase Manhattan Bank v. American National Bank and Trust Co. of Chicago, 93 F.3d 1064
(2d Cir. 1996) ........................................................................................................ 15

Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214 (2d Cir. 2006) ...................... 15

Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989) ........................................................... 13

Courtenay Communs. Corp. v. Hall, 334 F.3d 210 (2d Cir. 2003)................................... 8

CreditSights, Inc. v. Ciasullo, 05 Civ. 9345, 2007 U.S. Dist. LEXIS 25850 (S.D.N.Y. March
26, 2007) (Batts, J.).................................................................................................. 5

First Bank of the Americas v. Motor Car Funding, Inc., 257 A.D.2d 287 N.Y.S.2d 17(1st
Dep't 1999) ........................................................................................................... 10

Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435 N.Y.S.2d 777 (1st Dep't 1988) ............... 9

Graubard Mollen Dannett & Horowitz v. Moskowitz, 86 N.Y.2d 112 N.Y.S.2d 1009 (1995),... 11

Gully v. National Credit Union Administration Board, 341 F.3d 155 (2d Cir. 2003) ................. 11

Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171 (2d Cir. 2007). ................. 10

Milan Music, Inc. v. Emmel Communications Booking, Inc., 37 A.D.3d 206 N.Y.S.2d 485
(1st Dep't 2007)...................................................................................................... 9

Scheuer v. Rhodes, 416 U.S. 232 (1974) ................................................................... 8

Scutti Enterprises LLC v. Park Place Entertainment Corp., 322 F.3d 211 (2d  Cir. 2003). ... 13, 14

Wagner Trading Co., Inc. v. Tony Walker Retail Management Co., Inc., 277 A.D.2d 1012
N.Y.S.2d 673 (4th Dep't 2000)................................................................................ 10

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................................................ 1, 5

Fed. R. Civ. P. 9(b) ............................................................................................... 1, 2, 12

David E. Ross (dross@kasowitz.com)
Brian S. Kaplan (bkaplan@kasowitz.com)
Daniel Turinsky (dturinsky@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

Attorneys for Plaintiff
MMC Energy, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :
MMC ENERGY, INC.,                                               :
                        Plaintiff,                              :
                                                                :
                                                                :
        vs.                                                     :       08 Civ. 4353 (DAB)
                                                                :
KARL W. MILLER,                                                 :
                        Defendant.                              :
                                                                :
----------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff MMC Energy, Inc. ("MMC" or the "Company") respectfully submits this memorandum of law in opposition to Defendant Karl W. Miller's ("Miller") motion to dismiss MMC's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and failure to plead fraud with sufficient particularity under Fed. R. Civ. P. 9(b).

## PRELIMINARY STATEMENT

This action arises out of (i) Miller's breach of the non-disparagement provision of the Separation Agreement he entered into with MMC following his removal as MMC's Chief Executive Officer; (ii) Miller's fraudulent conduct in concealing material facts from MMC that he had a duty to disclose as a member of MMC's Board of Directors and a former officer of the

1

Company at the time he entered into the Separation Agreement; and (iii) Miller's tortious

interference with the advantageous business relations between MMC and its shareholders, key

investors, advisors, lenders and/or vendors.

Regrettably, Miller has misled the Court by selectively quoting from MMC's Complaint

in an effort to give the false impression that MMC's claims are legally deficient. Although

Miller deceptively argues that, with one exception, "MMC has failed to allege that any act *by*

*Miller* violated the Separation Agreement," and that "the allegedly 'disparaging' statements were

made in press releases and letters that were authored and disseminated by" an entity called

Energy Holdings Limited LLC ("EHL"), not Miller (Def. Br. at 3), the fact remains that the

Complaint clearly, unambiguously and repeatedly asserts that Miller conducted his campaign of

disparaging MMC and interfering with its business operations through EHL. The Complaint

pleads all of the elements necessary for a breach of contract claim, and, as such, clearly satisfies

the liberal notice pleading requirements of the Federal Rules of Civil Procedure.

As for MMC's claim for fraud, Miller argues that MMC cannot pursue such a claim

because the Complaint merely alleges that Miller did not intend to honor his contractual

obligations. Leaving aside the fact that the fraud claim is not limited to the allegation referenced

by Miller in his motion, as a matter of law, MMC may pursue its fraud claim in addition to its

contract claim because the fraud claim is premised on Miller's legal duties to the Company

separate and apart from his duty to perform under the contract, and because that claim arises

from facts that are collateral or extraneous to the contract.

Miller also makes the baseless argument that the Complaint fails to plead any fraud

separate from the breach of contract claim with sufficient particularity to satisfy Fed. R. Civ. P.

9(b). A plain reading of the Complaint, as opposed to Miller's misrepresentations thereof,

demonstrates that the Complaint pleads fraud with more than sufficient particularity to satisfy the applicable rule.

This is, simply put, a case of delay by means of motion practice. Miller has enlisted the Court's processes to file a motion to dismiss that cannot conceivably succeed solely to put off substantively participating in this litigation. The Court should reject Defendant's attempts to hinder this lawsuit, award MMC its costs and attorneys' fees in opposing this motion, and schedule a Rule 16 conference at the Court's earliest convenience.

## STATEMENT OF FACTS

MMC is an energy company which acquires and manages electric generation and infrastructure-related assets. Complaint ¶ 1. Miller is the former Chief Executive Officer of MMC. Complaint ¶ 1. MMC's Board of Directors (the "MMC Board") removed Miller from his position as CEO in December 2007 because of numerous deficiencies in his performance. Complaint ¶ 2. In lieu of terminating Miller for "cause" however, the MMC Board elected to enter into a Separation Agreement with Miller dated as of February 7, 2008, which provided, among other things, that Miller would not disparage or otherwise impugn MMC, or interfere with, impair or disrupt its normal operations. Complaint ¶¶ 1, 3, 16. In consideration for his obligations and promises under the Separation Agreement, Miller received severance pay and benefits in excess of $1.1 million. Complaint ¶ 4.

Within days after signing the Separation Agreement, and after receiving his lump sum severance payment, Miller breached the Separation Agreement through a planned campaign of publicly and privately disparaging MMC and interfering with its operations via a series of unsolicited communications and press releases circulated to the Company's shareholders, key investors, advisors, lenders and/or vendors. Complaint ¶¶ 5, 6, 18-27. Miller conducted his

campaign of disparagement and interference in part through an entity called Energy Holdings

Limited LLC ("EHL"), which is represented by the same attorney who represents Miller in this

litigation, the same attorney who negotiated the terms of Miller's Separation Agreement, and the

same attorney who represented Miller in connection with his solicitation of proxies to attempt to

replace the MMC Board with a new slate of directors.  Complaint ¶¶ 6, 7, 8.  EHL's managing

member and largest equity holder is a radiologist with no relevant energy industry experience,

and two of EHL's other principal members are real estate developers, one of whom is Miller's

father-in-law.  Complaint ¶ 17.

Although Miller ceased acting as CEO in December 2007, he remained a member of the

MMC Board until February 14, 2008, with continuing duties to the Company, including a duty to

disclose material facts to MMC at the time he entered into the Separation Agreement.  Complaint

¶ 35.

Miller breached the terms of the Separation Agreement, and his fiduciary duties to the

Company which were distinct from his obligations to perform under the contract, by making

material misrepresentations to MMC and fraudulently concealing "material facts from MMC at

the time he and MMC entered into the Separation Agreement, including, among others, the facts

that he did not intend to honor his obligations under the Separation Agreement, that he had

commenced or was about to commence a campaign of disparaging MMC, MMC's management

and the MMC Board and that he had intended and planned to interfere with the Company's

management and governance by mounting a proxy fight against MMC within weeks of signing

the Separation Agreement."  Complaint ¶¶ 33, 34, 35.

The Complaint asserts, in connection with Miller's breach of contract, that "[a]s a result

of Miller's breaches, MMC has sustained actual and compensatory damages in an amount to be

determined at trial, but not less than $1,121,762. . . ." Complaint ¶ 31. The Complaint also

seeks, among other things, the return of the severance payments Miller fraudulently extracted

from MMC, as well as punitive damages and damages arising from Miller's tortious interference

with MMC's advantageous business relations. Complaint ¶¶ 11, 37, 38, 44, 45.

## ARGUMENT

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court must

"accept the factual allegations in the complaint as true and . . . make all reasonable inferences in

the plaintiff's favor. . . . A court should grant dismissal only if, after considering plaintiff's

allegations in this most generous light, 'it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief.'" CreditSights, Inc. v.

Ciasullo, 05 Civ. 9345, 2007 U.S. Dist. LEXIS 25850, at *14-*15 (S.D.N.Y. March 26, 2007)

(Batts, J.).

As explained by the court in Blank v. Baronowski, 959 F. Supp. 172, 181 (S.D.N.Y.

1997) (Scheindlin, J.), a case in which certain of the defendants were represented by the very

same counsel representing Miller here, "*Rule 12(b)(6)* can provide a swift and inexpensive

means to terminate nonviable claims before trial. Yet all too often, defendants in civil cases

move under this rule even when confronted with viable claims. Such motions squander judicial

resources, needlessly delay litigation on the merits of the plaintiff's claims, and ultimately defeat

the purpose of *Rule 12(b)(6)*." This is precisely such a case.

## I.   THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT

Miller argues in his motion that MMC's breach of contract claim should be dismissed

because (i) with one exception, the Complaint fails to allege that Miller committed any acts in

violation of the Separation Agreement; and (ii) the Complaint fails to plead that MMC suffered

legally cognizable damages as a result of the breach.  These arguments are frivolous, and should be summarily rejected by the Court.

### A.    The Complaint Asserts, in No Uncertain Terms, That Miller Violated the Separation Agreement and Disparaged MMC

Paragraph 7 of the Separation Agreement provides, in pertinent part, that Miller will not "make, or knowingly cause to be made, any statement or communication, written or oral, with the intention of (a) disparaging or otherwise impugning the business or management of the Company. . ., or any of their respective officers, directors, agents, counsel, representatives or employees, or (b) interfering with, impairing or disrupting the normal operations of the Company. . . ."  In connection with Miller's breach of the Separation Agreement, the Complaint asserts that "Miller, acting through EHL and directly in his filed Proxy Statement, materially breached Paragraphs 7(a) and 7(b) of the Separation Agreement by making disparaging comments about MMC, the Company's business and management and impugning the MMC Board, and by interfering with, impairing and disrupting the normal operations of MMC. . . ."  Complaint ¶ 30.  Among other things, the Complaint alleges that:

- "Miller flagrantly disparaged the business, Board of Directors and management of MMC, and interfered with, impaired and disrupted MMC's normal operations -- and continues to do so -- all in breach of his Separation Agreement. . . ."  Complaint ¶ 1.

- Within days after signing the Separation Agreement, . . . Miller willfully and brazenly breached the Separation Agreement, through a planned campaign of public and private statements disparaging the Company's performance, disparaging the MMC Board and Company management, and disparaging and interfering with the Company's operations."  Complaint ¶ 5.

- "Miller attempted to conduct his campaign in part through an entity called Energy Holdings Limited LLC ("EHL")."  Complaint ¶ 7.

- "In connection with Miller's proxy solicitation, Miller, acting through EHL, issued press releases and authored letters in which EHL details its strategy for operating MMC if Miller were to succeed in replacing its existing board of directors."  Complaint ¶ 9.

- "[C]ontrary to the express promises and representations made to MMC upon his

departure, Miller, acting through EHL, disparaged MMC's business and reputation." Complaint ¶ 17.

- "On or about March 7, 2008, Miller, acting through EHL, wrote to the MMC Board, indicating its dissatisfaction with the current directors and business strategy of the Company -- a strategy that Miller himself had a strong hand in developing -- and EHL's intent to solicit proxies to elect nominees for directors." Complaint ¶ 19.

- "On or about March 18, 2008, Miller, acting through EHL, disseminated a disparaging press release to the public. Among other things, the release accused the current MMC Board members of having a failed strategy. . . ." Complaint ¶ 20.

- "On or about March 20, 2008, Miller, acting through EHL, disseminated another disparaging press release to the public. Among other things, the release impugned the existing MMC Board as lacking 'execution capabilities and experience.'" Complaint ¶ 21.

- "On or about March 26, 2008, Miller, acting through EHL, disseminated another disparaging press release to the public. Among other things, the release claimed that MMC's purported 'lack of liquidity will lead investors to question MMC's viability and exacerbate the lack of confidence of shareholders and the investment community in general. . . .'" Complaint ¶ 22.

- On or about March 27, 2008, Miller, acting through EHL, disseminated another disparaging press release to the public. In this press release, EHL expressed its purported 'disappointment and dismay' at MMC's 'announcement of a stock repurchase plan....'" Complaint ¶ 23.

- On or about April 1, 2008, Miller, acting through EHL, disseminated yet another disparaging press release to the public. In this release, EHL claimed that it had 'serious concerns about [MMC's] viability as a going concern,' that 'MMC is in critical condition and there has been no increase in shareholder value,' and 'MMC's share price has deteriorated 80 percent.' By questioning MMC's viability as a going concern, Miller clearly intended to damage MMC's relationships with its vendors and business partners" Complaint ¶ 24.

- On or about April 4, 2008, Miller, acting through EHL, wrote to the MMC Board, claiming that '[t]he MMC Board, in our opinion, has not demonstrated a business strategy in the best interests of its shareholders.' In this letter, EHL reiterated its desire to interfere with and further impugn the actions of the MMC Board." Complaint ¶ 25.

- On or about April 16, 2008, EHL and Miller filed the Proxy Statement with the Securities and Exchange Commission, which is replete with disparaging statements concerning MMC's business, Board of Directors and management." Complaint ¶ 26.

In his motion to dismiss, Miller deceptively omits MMC's repeated allegations noted

above that "Miller acted through EHL" in disparaging, impugning and/or interfering with

MMC's business.  Indeed, in selectively quoting certain paragraphs of MMC's Complaint, Miller

ignores the introductory sentences of those paragraphs, which, in each case, specifically assert

that Miller acted through EHL in disparaging MMC.  See Complaint ¶¶ 19, 21, 23, 24, 35.

Accordingly, when the Complaint is read in its entirety, there can be no question that it pleads a

claim for breach of contract against Miller in connection with his violation of the Separation

Agreement.

     Moreover, Miller's other arguments questioning whether the statements at issue are in

fact disparaging or interfered with MMC's business operations would require the Court to

engage in fact-finding, which is obviously inappropriate on a motion to dismiss.  See Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint,

before the reception of any evidence either by affidavit or admissions, its task is necessarily a

limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant

is entitled to offer evidence to support the claims"); Courtenay Communs. Corp. v. Hall, 334

F.3d 210, 213-214 (2d Cir. 2003) (holding that courts must "refrain from engaging in fact-

finding when considering a motion to dismiss," given that a "complaint need only meet the

requirements of our 'simplified notice pleading standard [which] relies on liberal discovery rules

and summary judgment motions to define disputed facts and issues and to dispose of

unmeritorious claims'") (citations omitted).

    **B.**    **The Complaint Pleads Legally Cognizable Damages for Breach**
           **of Contract**

     Miller claims that MMC's breach of contract claim should be dismissed because the

Complaint fails to plead that MMC suffered any legally cognizable damages.  To the contrary,

the Complaint alleges that Miller's continuing breaches of the Separation Agreement caused

severe damage to MMC, and that by disseminating disparaging press releases to the public in violation of the terms of his Separation Agreement, "Miller clearly intended to damage MMC's relationships with its vendors and business partners."  Complaint ¶ 24.  The Complaint further asserts that "MMC has sustained actual and compensatory damages in an amount to be determined at trial, but not less than $1,121,762. . . ."  Complaint ¶ 31.

Because MMC's alleged damages are not limited to the severance payments provided to Miller, but are instead based on the damaged relationships caused by Miller's conduct in interfering with MMC's business relationships, Miller's arguments concerning rescission and the date upon which a breach of contract is measured are not relevant.  Similarly irrelevant are the cases relied upon by Miller in support of his motion to dismiss the contract claim.  In Milan Music, Inc. v. Emmel Communications Booking, Inc., 37 A.D.3d 206, 829 N.Y.S.2d 485 (1st Dep't 2007), for example, the court affirmed the dismissal of a contract claim at summary judgment, which of course involves a very different standard than applicable on this motion to dismiss.  Moreover, in Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988), another case cited by Miller, the court found that the pleadings did not set forth any allegations of fact demonstrating how the breach of a confidentiality agreement caused any damage where the complaint failed to identify any confidential information.  Here, unlike in Gordon, MMC's Complaint specifically identifies the disparaging communications that disrupted the relationships with MMC's business partners, resulting in substantial damage.

Accordingly, contrary to Miller's strained contentions, MMC has plead legally cognizable damages for Miller's breach of contract.

## II.  THE COMPLAINT CLEARLY STATES A CLAIM FOR FRAUD

### A.  The Fraud And Contract Claims Can Stand Together

In his motion to dismiss, Miller notes that an action for breach of contract may not be converted into one for fraud merely by asserting that the contracting party never intended to meet his contractual obligation.  What Miller ignores, however, is binding Second Circuit precedent that "parallel fraud and contract claims may be brought if the plaintiff (i) demonstrates a legal duty separate from the duty to perform under the contract; (ii) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (iii) seeks special damages that are unrecoverable as contract damages." Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007) (emphasis added).

Where a party pleads facts sufficient to satisfy any of the factors set forth above, as is the case here, New York law provides that "[a] contractual promise made with the undisclosed intention not to perform it constitutes fraud." Wagner Trading Co., Inc. v. Tony Walker Retail Management Co., Inc., 277 A.D.2d 1012, 715 N.Y.S.2d 673 (4th Dep't 2000) (affirming denial of motion to dismiss cause of action for fraud, holding that "Plaintiff sufficiently alleged that defendants made false promises with the undisclosed intention not to perform them, thereby inducing plaintiff to enter into the contractual relationship"); see also Allegheny Energy, 500 F.3d at 184 (holding that "[a] misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty") (citations omitted); First Bank of the Americas v. Motor Car Funding, Inc., 257 A.D.2d 287, 291-292, 690 N.Y.S.2d 17, 20-21 (1st Dep't 1999) (holding that the trial court erroneously dismissed the plaintiff's claim for fraud, noting that a "cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach

of the contract," and "if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim"); Baronowski, 959 F. Supp. at 180 (denying motion to dismiss claim for fraud where the alleged false representations were extraneous to the contract, explaining that "the same acts may independently give rise to actions for both fraud and breach of contract").

In Graubard Mollen Dannett & Horowitz v. Moskowitz, 86 N.Y.2d 112, 122, 629 N.Y.S.2d 1009, 1014 (1995), for example, the New York Court of Appeals held that "[a] false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties." In that case, a former law firm partner with fiduciary duties to the firm independent of any contractual obligation, allegedly made false representations to the partnership in connection with a retirement agreement with no intention of complying with those representations. As a result of those alleged falsehoods by a partner with legal duties to the firm, the plaintiff stated a claim for fraud against the former partner in addition to a claim for breach of contract. Id.

In this case, as in Moskowitz and the above-cited cases, MMC's Complaint states a claim for fraud as well as breach of contract because Miller, as a member of MMC's Board of Directors and former CEO, had a legal duty to the Company not to misrepresent or conceal material facts in connection with the negotiation of his Separation Agreement. Such a duty was separate and apart from any contractual obligation. See Gully v. National Credit Union Administration Board, 341 F.3d 155, 165 (2d Cir. 2003) ("Under New York law, a director or officer of a corporation owes a fiduciary duty to the corporation," and is held "to a standard stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive,

is . . . the standard of behavior") (citations omitted).

Here, the Complaint alleges that "Miller fraudulently concealed material facts from MMC at the time he and MMC entered into the Separation Agreement, including, among others, the facts that he did not intend to honor his obligations under the Separation Agreement, that he had commenced or was about to commence a campaign of disparaging MMC . . . and that he had intended and planned to interfere with the Company's management and governance by mounting a proxy fight against MMC within weeks of signing the Separation Agreement," and that "Miller had a duty to disclose such facts to MMC because, among other things, he was a member of the Board of Directors of MMC through February 14, 2008 and a former officer with continuing duties to the Company."  Complaint ¶¶ 34-35.

Moreover, the Complaint also asserts at least one misrepresentation of a present fact which is therefore collateral or extraneous to the contract.  See Complaint ¶ 34 (Miller fraudulently concealed the material fact "that he had commenced" a campaign of disparaging MMC at the time he and MMC entered into the Separation Agreement).

Accordingly, MMC's Complaint clearly states an independent claim for fraud under New York law.

### B.    The Complaint Pleads Fraud With Sufficient Particularity

Miller claims that the cause of action for fraud should be dismissed pursuant to Fed. R. Civ. P. 9(b) because it fails to plead fraud with the requisite degree of particularity.  Once again, Miller ignores the substance of MMC's Complaint in making this argument.

"To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends that statements were fraudulent, state when and where the statements

were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8,

11 (2d Cir. 1989). Here, MMC's Complaint unquestionably satisfies each of these requirements,

identifying the false and disparaging statements at issue, specifying when and where such

statements were made, and by whom. Complaint ¶¶ 17-27. The Complaint clearly also

describes the particulars as to the manner in which the statements made by Miller were

fraudulent.[1]

Accordingly, for the reasons set forth herein, Miller's motion to dismiss the claim for

fraud should be denied.

### III.    THE COMPLAINT STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

Miller asserts that the Complaint fails to allege the elements necessary to establish a

claim for tortious interference with advantageous business relations. Because the Complaint

alleges each of the elements required to establish such a claim, the motion to dismiss this

allegation must also be denied.[2]

To state a claim for tortious interference with business relations, the following four

conditions must be met: "(i) the plaintiff had business relations with a third party; (ii) the

defendants interfered with those business relations; (iii) the defendants acted for a wrongful

purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the

relationship." Scutti Enterprises LLC v. Park Place Entertainment Corp., 322 F.3d 211, 215 (2d

Cir. 2003).

---

[1] Avile v. Feitell, 07 Civ. 2987, 2008 U.S. Dist. LEXIS 40319 (S.D.N.Y. May 20, 2008), the case cited by Miller in support of his motion to dismiss the fraud claim pursuant to Rule 9(b), is completely inapposite. In that case, a *pro se* plaintiff filed a claim for, among other things, fraud, in connection with his court-appointed counsel's refusal to file a motion in a criminal matter that he believed to be frivolous. Id. at *1-*2. The court dismissed the fraud claim because it did not allege any specific misleading statements or any circumstances raising an inference of the defendant's intent to defraud. Id. at *6. In this case, unlike in Feitell, MMC's Complaint clearly asserts the specific misleading statements at issue and circumstances raising an inference of Miller's intent to defraud MMC.
[2] This memorandum of law does not address Miller's arguments concerning a purported claim for tortious interference with contract, because the Complaint does not assert such a claim.

In this case, the Complaint alleges that (i) MMC developed and maintained business relations with its shareholders, key investors, advisors, lenders and/or vendors; (ii) Miller knew or should have known of such relationships; (iii) Miller intentionally, maliciously and improperly interfered with these relationships by, among other things, issuing false, defamatory and/or disparaging press releases questioning the solvency of MMC and maligning the competence, experience and qualifications of MMC's management and the MMC Board, for the benefit of himself and EHL; (iv) there was no privilege or justification for Miller's conduct; and (v) as a result of Miller's wrongdoing, MMC has been damaged in an amount to be determined at trial of not less than $1 million. Complaint ¶¶ 40-44. For purposes of satisfying the liberal pleading requirements under the Federal Rules of Civil Procedure, the allegations set forth in MMC's Complaint are clearly sufficient to state a claim. See Park Place Entertainment Corp., 322 F.3d at 215-217 (reversing dismissal of claim for tortious interference with business relations, explaining that "[c]omplaints alleging torts are held to the less stringent notice requirements of *Rule 8(a)(2)* . . . [which] is fashioned in the interest of fair and reasonable notice, not technicality. . . . More extensive pleading of fact is not required because the Federal Rules of Civil Procedure provide other devices besides pleadings that will serve to define the facts and issues and to dispose of unmeritorious claims") (citations omitted).

## IV.    THE FIRST COUNT OF MMC'S COMPLAINT SATISFIES THE MINIMUM AMOUNT IN CONTROVERSY FOR DIVERSITY JURISDICTION

Miller argues that if the second and third causes of action are dismissed, the Court should disregard the amount of damages sought in the Complaint for breach of contract, and determine, based on nothing other than Miller's unsupported assertions, that the damages that could potentially be recovered for breach of contract fall below the jurisdictional minimum of $75,000.

This argument is entirely irrelevant because the second and third causes of action should not be dismissed for the reasons set forth above.

Moreover, even if the second and third causes of action were dismissed (and they should not be), the Second Circuit Court of Appeals has recognized "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.  In order to rebut this presumption, the defendant must show that the complaint 'was so patently deficient as to reflect to a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'" Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006) (citations omitted); see also Chase Manhattan Bank v. American National Bank and Trust Co. of Chicago, 93 F.3d 1064, 1070 (2d Cir. 1996) (holding that in order to dismiss a claim for lack of subject matter jurisdiction based upon an insufficient amount in controversy, "the legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim.  If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff").

Here, the Complaint asserts damages for breach of contract in excess of $1 million. Because Miller cannot defeat the presumption of MMC's good faith in asserting the claim, or show to a legal certainty that MMC cannot recover the amount alleged, there is no question that Count I of MMC's Complaint satisfies the $75,000 minimum for diversity jurisdiction.

## CONCLUSION

For the foregoing reasons, Miller's motion to dismiss should be denied in its entirety, the Court should award MMC its costs and fees in responding to this groundless motion, and a Rule 16 conference should be held at the Court's earliest convenience.

15

Dated: New York, New York
      August 6, 2008

                              Respectfully submitted,

                              KASOWITZ, BENSON, TORRES
                                & FRIEDMAN LLP

                              By _____
                                    David E. Ross
                                    dross@kasowitz.com
                                    Brian S. Kaplan
                                    bkaplan@kasowitz.com
                                    Daniel Turinsky
                                    dturinsky@kasowitz.com
                                    1633 Broadway
                                    New York, NY 10019
                                    (212) 506-1700

                              Attorneys for Plaintiff MMC Energy, Inc.