UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MMC ENERGY, INC.,

                Plaintiff,

      -against-                    08 Civ. No. 4353 (DAB)

KARL W. MILLER,

                Defendant.

# REPLY MEMORANDUM OF LAW IN
# SUPPORT OF DEFENDANT'S MOTION TO DISMISS

CHADBOURNE & PARKE LLP
Attorneys for Defendant
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

Thomas J. Hall
Bernadette K. Galiano

       Of Counsel

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................ 1

    I.    THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED .... 1

        A.    The Complaint Fails To State A Claim For Breach of Contract ..... 1

        B.    The Complaint Fails To Allege Breach Of Contract Damages ...... 2

    II.    THE FRAUD CLAIM SHOULD BE DISMISSED ................................. 4

        A.    The Misrepresentation Claim ......................................................... 4

        B.    The Fraud By Omission Claim ...................................................... 5

    III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS ................................................................................................ 6

        A.    The Complaint Fails To Plead A Contract Not Completed ........... 6

        B.    The Complaint Fails To Plead "Wrongful Means" ........................ 8

CONCLUSION ............................................................................................................. 9

i

# TABLE OF AUTHORITIES

**CASES**                                                                                   **Page**

Aksman v. Mouzouris, Index No. 124655/02, 2005 WL 5960040 (N.Y. Co. Jan. 6, 2005) ...................................................................................................................4

American Soc'y of Mech. Eng'rs. v. Hydrolevel Corp., 456 U.S. 556 (1982) ....................2

Benihana of Tokyo, Inc. v. Benihana, Inc., 906 A.2d 114 (Del. 2006) ..............................6

Bryce v. Wilde, 39 A.D.2d 291, 333 N.Y.S.2d 614 (3d Dep't 1972), aff'd, 31 N.Y.2d 882, 340 N.Y.S.2d 185 (1972) ..................................................................7

Carvel Corp. v. Noonan, 3 N.Y.3d 182, 785 N.Y.S.2d 359 (2004) ...................................8

DiFolco v. MSNBC Cable L.L.C., 06 Civ. 4728, 2007 U.S. Dist. LEXIS 23440 (S.D.N.Y. Mar. 29, 2007) ......................................................................................6

Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988) ............................................................................................................3

Graubard Mollen Dannett & Horowitz v. Moskowitz, 86 N.Y.2d 112, 629 N.Y.S.2d 1009 (1995) ...........................................................................................5

Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980) ........................................................................................6, 8

Jabbour v. Albany Med. Ctr., 237 A.D.2d 787, 654 N.Y.S.2d 862 (3d Dep't 1997) .......6, 7

Kikis v. McRoberts Corp., 225 A.D.2d 455, 639 N.Y.S.2d 346 (1st Dep't 1996) ..............5

Korn v. Princz, 226 A.D.2d 278, 641 N.Y.S.2d 283 (1st Dep't 1996) ...............................7

Loudon v. Archer-Daniels-Midland Co., 700 A.2d 135 (Del. 1997) .................................5

NBT Bank Corp. v. Fleet/Norstar Fin. Group, Inc., 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996) ..............................................................................................................8

News America Mktg, Inc. v. Lepage Bakeries, Inc., 16 A.D.3d 146, 791 N.Y.S.2d
    80 (1st Dep't 2005)........................................................................................................2

Smith v. Chase Manhattan Bank, USA, N.A., 293 A.D.2d 598, 741 N.Y.S. 100
    (2d Dep't 2002) ............................................................................................................2

Vigoda v. DCA Prods. Plus Inc., 293 A.D.2d 265, 741 N.Y.S.2d 20 (1st Dep't
    2002) ............................................................................................................................7

**STATUTES**

8 Del. C. § 144 ..................................................................................................................5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MMC ENERGY, INC.,

                      Plaintiff,

          -against-                        08 Civ. No. 4353 (DAB)

KARL W. MILLER,

                      Defendant.

---

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Karl W. Miller ("Miller") respectfully submits this reply memorandum of law in further support of his motion pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint herein of plaintiff MMC Energy, Inc. ("MMC") in its entirety.

### ARGUMENT

### I

### THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

**A.**    **The Complaint Fails To State A Claim For Breach of Contract**

MMC attempts to salvage its breach of contract claim by pointing to the allegation in its complaint that Miller somehow "acted through" EHL. Complaint ¶ 7. While MMC does not dispute that the applicable press releases and letter at issue were all

issued by EHL, not Miller, MMC asserts that EHL was acting on Miller's behalf in making those statements.

This argument might make some sense if the complaint alleged that EHL was acting as Miller's agent.  It is generally recognized that agents act for their principals and principals can be liable for the acts of their agents.  See News America Mktg, Inc. v. Lepage Bakeries, Inc., 16 A.D.3d 146, 148, 791 N.Y.S.2d 80, 82 (1st Dep't 2005) (citing American Soc'y of Mech. Eng'rs. v. Hydrolevel Corp., 456 U.S. 556 (1982)).  But here, the complaint alleges just the opposite -- that Miller was the agent for EHL, the principal.  Complaint ¶ 8.  MMC has cited to no law whatsoever to support the novel proposition that an agent "acts through" his principal or that an agent can be liable for acts or statements of his principal.  As such, the breach of contract claim should be dismissed.

**B.      The Complaint Fails To Allege Breach Of Contract Damages**

As discussed in the moving brief, damage is an essential element of a breach of contract claim under New York law, and MMC has failed to properly allege this essential element.  The complaint merely alleges in conclusory fashion that "as a result of Miller's breaches, MMC has sustained actual and compensatory damages."  Complaint ¶ 31.  Such vague and conclusory allegations are insufficient to support a cause of action for breach of contract.  See Smith v. Chase Manhattan Bank, USA, N.A., 293 A.D.2d 598, 600, 741 N.Y.S. 100, 103 (2d Dep't 2002) (dismissing breach of contract claim where allegation of contract damages consisted solely of the phrase "all to the damage of the class").

In its opposition brief, MMC argues that its complaint identifies "the disparaging communications that disrupted the relationships with MMC's business partners, resulting in substantial damage." Opposing Br. p. 9. However, the issue is not whether the statements are identified, but whether any damaged business relationships are identified. The complaint utterly fails to identify any specific relationship affected in any way by the alleged disparaging communications. Likewise, the complaint fails to allege that the alleged disparaging communications disrupted MMC's normal business operations, being the acquisition and management of electric generation and infrastructure-related assets.

The case of Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988), is directly on point. In Gordon, the complaint alleged that the defendant's breach of a confidentiality agreement caused the plaintiff $35 million in damages. Id. at 436, 529 N.Y.S.2d at 779. In dismissing the breach of contract claim, the court reasoned:

> "Moreover, the complaint is fatally deficient because it does not demonstrate how the defendant's alleged breach of the confidentiality agreement caused plaintiffs any injury. The complaint contains only boilerplate allegations of damage. In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint, and the pleadings must set forth facts showing the damage upon which the action is based. Since the plaintiff's first cause of action [breach of contract] is deficient in this regard, it must be dismissed."

Id. MMC argues that Gordon is "irrelevant" because the court there found that "the complaint failed to identify any confidential information." Opposing Br. p. 9. However, the court clearly dismissed the complaint for the separate and independent reason that the

plaintiff failed to show how the alleged breach of contract caused $35 million of damage to the plaintiff.  Similarly, MMC has failed to allege *how* Miller's alleged breach of contract resulted in the alleged damages of $1,121,762, the precise amount of Miller's severance payment.  See  also Aksman v. Mouzouris, Index No. 124655/02, 2005 WL 5960040, at *4-6 (N.Y. Co. Jan. 6, 2005) (dismissing breach of contract claim where plaintiff simply stated damages in a specific amount but offered no showing of how the breach damaged him).

## II

## THE FRAUD CLAIM SHOULD BE DISMISSED

A.   **The Misrepresentation Claim**

In its opposing brief, MMC cites numerous cases for the proposition that a fraud claim can exist independent of a breach of contract claim where the defendant has made false representations extraneous to the contract.  Opposing Br. pp. 10-11.  MMC's fraud claim in fact alleges that Miller made "misrepresentations" (Complaint ¶ 33), but entirely fails to allege what the content of those representations were, when and where they were made and to whom they were made.  Indeed, the complaint fails to allege that those unspecified representations were made extraneous to the contract.  In addition to failing to plead such misrepresentations with the specificity required by Rule 9(b), the failure to allege the misrepresentations were made extraneous to the contract requires that the fraud claim be dismissed as duplicative of the contract claim.

**B.     The Fraud By Omission Claim**

MMC also argues that the fraud claim should stand separate and apart from the breach of contract claim because Miller, as a MMC director, had a duty to disclose his alleged intention not to honor his obligations under the Separation Agreement. Opposing Br. pp. 11-12. To that end, the complaint alleges that Miller concealed material facts from MMC. Complaint ¶ 34. This ignores, of course, that the Separation Agreement expressly required Miller to resign as a director (Moving Papers, Ex. 1 ¶ 1), and that the facts allegedly concealed concerned Miller's intended non-performance after such resignation. Complaint ¶ 5.

In any event, because MMC is a Delaware corporation (Complaint ¶ 12), Delaware law[1] governs Miller's disclosure obligations. Kikis v. McRoberts Corp., 225 A.D.2d 455, 455, 639 N.Y.S.2d 346, 346 (1st Dep't 1996) ("issues of corporate governance are determined by the State in which the corporation is chartered"). Under Delaware law, where, like here, a director is involved in an interested transaction with his corporation, his obligation to disclose ends with the disclosure that he has a personal interest in the transaction. See, e.g., Delaware Corporation Law § 144; Loudon v.

---

[1]  MMC relies upon Graubard Mollen Dannett & Horowitz v. Moskowitz, 86 N.Y.2d 112, 629 N.Y.S.2d 1009 (1995). However, that case is clearly distinguishable. For one, that case applied New York law, whereas Miller's disclosure obligations are governed by Delaware law. Moreover, it dealt with partnership law, not corporate law.

5

Archer-Daniels-Midland Co., 700 A.2d 135, 143 (Del. 1997) ("even where material facts must be disclosed, negative inferences or characterizations of misconduct or breach of fiduciary duty need not be articulated"); Benihana of Tokyo, Inc. v. Benihana, Inc., 906 A.2d 114, 120-21 (Del. 2006) (director of plaintiff corporation was not required to disclose that he negotiated agreement for company to acquire stock in plaintiff corporation where he had already disclosed his position as vice-chairman, director and controlling shareholder of the acquiring company).

## III

### THE COMPLAINT FAILS TO STATE A CLAIM FOR INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

MMC's opposing brief indicates that, as its third cause of action, it is asserting a claim for "interference with business relations." As set forth in the moving brief, the more accurate name for that tort under New York law is interference with prospective contractual relations, also known as interference with prospective economic relations. See DiFolco v. MSNBC Cable L.L.C., 06 Civ. 4728, 2007 U.S. Dist. LEXIS 23440, at *24 (S.D.N.Y. Mar. 29, 2007); Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 190-91, 428 N.Y.S.2d 628, 632 (1980); Jabbour v. Albany Med. Ctr., 237 A.D.2d 787, 790, 654 N.Y.S.2d 862, 865 (3d Dep't 1997). This claim fails for multiple reasons.

A.   **The Complaint Fails To Plead A Contract Not Completed**

MMC's opposing brief cites to the general case law that, to plead a claim for interference with prospective contractual relations, the plaintiff must allege injury to a

6

business relationship.[2]  Opposing Br. p. 13.  However, MMC entirely ignores the well-established body of caselaw applying that element clearly holding that, to establish a claim for interference with prospective contractual relations, a plaintiff must plead that it would have obtained a contract but for the defendant's conduct.  See Vigoda v. DCA Prods. Plus Inc., 293 A.D.2d 265, 266-67, 741 N.Y.S.2d 20, 23 (1st Dep't 2002) ("[t]ortious interference with prospective economic relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendants wrongful conduct"); Jabbour, 237 A.D.2d at 790, 654 N.Y.S.2d at 865 ("[a]long with wrongful means, a plaintiff must also establish that the wrongful acts were the proximate cause of the rejection of the plaintiff's proposed contractual relations"); Korn v. Princz, 226 A.D.2d 278, 279, 641 N.Y.S.2d 283, 283 (1st Dep't 1996) (complaint did not state a claim for tortious interference because there was "no allegation that plaintiff was actually and wrongfully prevented from entering into or continuing in a specific business relationship"); Bryce v. Wilde, 39 A.D.2d 291, 293, 333 N.Y.S.2d 614, 616 (3d Dep't 1972), aff'd, 31 N.Y.2d 882, 340 N.Y.S.2d 185 (1972) ("courts have required more than a showing of qualified probability that the contract would have been completed but for the

---

[2]  In fact, the complaint even fails to allege an injury to any such relationship.  While the complaint does allege that Miller interfered with these undisclosed relationships (Complaint ¶ 42), alleging that he interfered with relationships is not the same as an allegation that any such relationship was injured.  Likewise, MMC vaguely asserts that it has been damaged (Complaint ¶ 44).  Alleging it has been damaged in some unspecified way is not the same thing as alleging that a business relationship has been injured.

tortious interference. Plaintiff must show that but for the unlawful actions of the defendant he would have received contract"). For this reason alone, the third cause of action should be dismissed.

**B.    The Complaint Fails To Plead "Wrongful Means"**

In addition, the third cause of action fails to allege that Miller used "wrongful means" to prevent MMC from realizing a contractual relationship. As the New York Court of Appeals has explained, "as a general rule, the defendant's conduct must amount to a crime or an independent tort." Carvel Corp. v. Noonan, 3 N.Y.3d 182, 191, 785 N.Y.S.2d 359, 363 (2004); see NBT Bank Corp. v. Fleet/Norstar Fin. Group, Inc., 87 N.Y.2d 614, 624, 641 N.Y.S.2d 581, 586 (1996) ("wrongful means" includes "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degree of economic pressure . . . ."); Guard-Life Corp., 50 N.Y.2d at 191, 428 N.Y.S.2d at 632.

Here, the wrongful means alleged consists solely of making disparaging statements "through EHL." Complaint ¶ 42. Nowhere in the complaint is there any allegation that such conduct rose to the level of criminal activity or tort; it is not alleged that the statements were tortious or defamatory. The only tort alleged in the complaint, outside the tortious interference claim itself, is for fraud. But the alleged fraud could not have been the wrongful means by which Miller allegedly interfered with MMC's prospective contractual relationship as the fraud allegedly occurred at or before the time Miller signed the February 7, 2007 Separation Agreement (Complaint ¶ 34), and the alleged interference allegedly occurred thereafter. Complaint ¶ 42. Moreover, the

alleged disparaging statements are simply alleged to constitute a breach of contract, not a tort. Complaint ¶ 30. MMC has cited no law for the proposition that a breach of contract satisfies the wrongful means test for the tort of interference with prospective contractual relations.

## CONCLUSION

For all the foregoing reasons, defendant respectfully requests that his motion to dismiss be granted in its entirety, with an award of attorneys' fees and costs to defendant.

Respectfully submitted,

CHADBOURNE & PARKE LLP

By /s/ Thomas J. Hall
Thomas J. Hall  (TH 3398)
A Member of the Firm
Attorneys for Defendant
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Thomas J. Hall
Bernadette K. Galiano
    Of Counsel

August 18, 2008

9